## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Minnesota Voters Alliance, R & J Real Estate, Well Maintained Apartments, Garfield Court Partnership, LLP;  Marissa Skaja, and Charles Halverson, | Court File No. _____ |
| Plaintiffs, | |
| vs. | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| The City of Saint Paul, Minnesota, a Minnesota municipality, and the City of Minneapolis, a Minnesota municipality, | |
| Defendants. | |

## INTRODUCTION

Minneapolis and Saint Paul violate a landlord's right not to speak when the cities, as a matter of policy and ideology, require the landlord to inform and provide information to tenants regarding where to register to vote or to otherwise exercise that right.  By their respective city codes, Minneapolis and Saint Paul may impose penalties, including criminal prosecution, upon landlords if they do not convey the cities' ideological messages about registering to vote to tenants.

It is compelled speech to engage landlords to act as couriers of the respective municipalities' ideological messages to prospective tenants.

Registering to vote is irrelevant to a tenant's decision to enter into a lease agreement with a landlord.

The First Amendment protects an individual's right to refrain from speaking just as much as it protects the right to speak freely. Where Minneapolis and Saint Paul interests are to disseminate an ideology or policy relating to voting, no matter how acceptable to some, those interests cannot outweigh the First Amendment right to avoid being the courier of the government's message. Therefore, Minneapolis and Saint Paul City Codes are unconstitutional and have violated the landlord's First Amendment right to free speech, violative of 42 U.S.C.§ 1983. Not only are the plaintiff landlords entitled to at least nominal damages, but also permanent injunctive relief enjoining the cities from enforcing any provision of the city codes at issue.

## PARTIES

### Plaintiff Saint Paul Owner-Landlords

1.     Plaintiff Minnesota Voters Alliance is a Minnesota 501(c)(3) nonprofit organization with members formed with the primary purpose of educating and empowering the electorate, with interests inclusive of the integrity of the election process and of the rights of individuals related to the election process. It is non-partisan. It is not affiliated with any political party or organization. It does not endorse candidates seeking elected or appointed

2

offices.  Minnesota Voters Alliance does have members who are landlords located both in Minneapolis and Saint Paul, Minnesota.

2.    Plaintiff G & J Real Estate is an owner-landlord—acting through agents, representatives, or employees—renting four dwelling units to tenants in Saint Paul, Minnesota.  G & J Real Estate considers itself a professional company.  G & J Real Estate is also a member of the Minnesota Voters Alliance.

3.    Plaintiff Well Maintained Apartments considers itself a professional company which through agents, representatives, or employees, is an owner-landlord renting dwelling units to tenants.  It has 300 rental units located in Saint Paul, Minnesota.  Well Maintained Apartments is also a member of the Minnesota Voters Alliance.

### Plaintiff Minneapolis Licensed Landlords

4.    Plaintiff Garfield Court Partnership, LLP owns property in Minneapolis renting dwelling units to tenants through Kleinman Realty Co. acting as a professional company through its agents, representatives, or employees.  Kleinman Realty manages 110 units in Minneapolis, Minnesota for Garfield Court.  Robert Kleinman has a Minneapolis rental license.  Garfield Court, through Robert Kleinman is also a member of the Minnesota Voters Alliance.

5.    Plaintiff Marissa Skaja is a landlord.  She rents a condominium in Minneapolis, Minnesota.  She considers renting her property her profession.  Skaja has a Minneapolis rental license.  She is also a member of the Minnesota Voters Alliance.

6.    Charles Halverson is a landlord.  He rents a dwelling unit in Minneapolis, Minnesota.  He considers renting his property his profession. Halverson has a Minneapolis rental license.  He is also a member of the Minnesota Voters Alliance.

## Defendant Cities of Minneapolis and Saint Paul

7.    The City of Minneapolis is a Minnesota municipality located in Hennepin County, Minnesota.

8.    The City of Saint Paul is a Minnesota municipality located in Ramsey County, Minnesota.

## JURISDICTION

9.    This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343 (1)-(4) and 42 U.S.C. §§ 1983, 1985(2), (3) and § 1988 (civil rights statutes) and the First Amendment of the United States Constitution.

10.    This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, Federal Rules of Civil Procedure 57 and 65, and has general legal and equitable powers.

11.    Venue is proper in this Court under 28 U.S.C. § 1391.  Plaintiffs further invoke the pendent jurisdiction of this Court to consider claims arising under state law.

## Constitutional and City Code Provisions at Issue

12.    The First Amendment of the United States Constitution states that "Congress shall make no law…abridging the freedom of speech, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

13.    Minneapolis City Code (Minn.) § 244.2000 (f):

Every holder of a rental dwelling license or provisional license shall:

* * *

> (f). Beginning March 1, 2016, and continuing thereafter, the owner of any dwelling which is required to be licensed by this chapter shall provide information about how a voter may register in the State of Minnesota, in a manner approved by the city, to all tenants aged eighteen (18) or older at the time of first occupancy.

14.    Saint Paul City Code (Minn.) § 48.02(a):

> Obligation to inform. An owner of a residential property that lets for occupancy any dwelling unit or rooming unit for a period of more than thirty (30) days, at the time of lease signing (or at the time of first occupancy if there is no formal lease), provide information to all tenant(s) who are eighteen (18) years of age or older of the tenant(s) right to register to vote in the state of Minnesota and provide information on how to register to vote.

## FACTS

**Minnesota Voters Alliance member landlords are professionals with an interest in renting units to individuals and not serving as governmental couriers for an ideological or policy message.**

### A. Saint Paul criminally prosecutes landlords for failing to provide tenants with information regarding how and where to register to vote.

15.    Plaintiffs Minnesota Voters Alliance, R & J Real Estate, Well Maintained Apartments, Garfield Court Partnership, LLP, Marissa Skaja, and Charles Halverson, are landlords or owners of property that lets for occupancy.  They are also members of the Minnesota Voters Alliance ("MVA member landlords").

16.    MVA member landlords are professionals.

17.    A landlord is defined as "an owner of real property, a contract for deed vendee, receiver, executor, trustee, lessee, agent, or other person directly or indirectly in control of rental property."  Minn. Stat. §504B.001.

18.    Saint Paul's city code identifies an "owner" as "the person, firm, corporation or other entity listed in the records on file in the recorder's office as holding fee title to the building."  Saint Paul (Minn.) Code § 48.01 (2018).

19.    Saint Paul code provisions require owner-landlords to provide certain information to potential tenants or tenants specifically related to the

dwelling unit and building.  For example, under Saint Paul's City Code 7 192.04:

> (a) An owner of a building with two or less dwelling units must perform an evaluation report and have it available in the unit for examination by a prospective tenant.  Saint Paul (Minn.) Code § 192.04(a) and (b) (1991).
>
> (b) An owner and tenant are to each sign an acknowledgement of a completed walkthrough inspection of the unit showing the tenant reviewed the report and a copy of the report made available to the tenant. *Id.* § 192.04(c).
>
> (c) An owner of a building with three or more dwelling units must disclose in writing to the tenant the status of the certificate of occupancy for the building and make available any outstanding city work orders for examination by prospective tenants. *Id.* § 192.04(e).

20.    MVA members and Plaintiffs G & J Real Estate and Well Maintained Apartments are owner-landlords that rent dwelling units to individuals in Saint Paul, Minnesota.

21.    Owners of a building in Saint Paul who "permit, provide, or offer possession or occupancy of a dwelling, dwelling unit, rooming unit, building, premise or structure by a person who is or is not the legal owner of record thereof, pursuant to a written or unwritten lease, agreement or license whether or not for compensation" are identified in this Complaint as "owner-landlords."  Saint Paul (Minn.) Code § 48.01 (2018).

22.     Saint Paul's city code requires owner-landlords, "at the time of lease signing (or at the time of first occupancy if there is no formal lease)" to "provide information to all tenant(s) who are eighteen (18) years of age or older of the tenant(s) right to register to vote in the state of Minnesota and provide information on how to register to vote."  Saint Paul (Minn.) Code § 48.02(a) (2018).

23.     Saint Paul has codified that failure to provide information to tenants regarding where and how to register to vote is subject to criminal prosecution:

> Failure to comply with the requirements of this chapter shall be a petty misdemeanor.

Saint Paul (Minn.) Code § 48.03 (2018).

24.     Saint Paul officials have provided MVA owner-landlords with documents to give to prospective tenants or tenants with voter registration information.  **Exhibit 1.**

### B. Minneapolis criminally prosecutes landlords for failing to provide tenants with information regarding how and where to register to vote.

25.     Minneapolis, under Minneapolis City Code (Minn.) § 244.2000 (f) (2015), requires holders of rental licenses—to provide information to all tenants at the time of first occupancy about how to register to vote:

> Every holder of a rental dwelling license or provisional license shall:
>
> * * *
>
> (f). Beginning March 1, 2016, and continuing thereafter, the owner of any dwelling which is required to be licensed by this chapter shall provide information about how a voter may register in the State of Minnesota, in a manner approved by the city, to all tenants aged eighteen (18) or older at the time of first occupancy.

26.    Failure to comply with providing first time occupancy tenants with information about registering to vote, leads to criminal prosecution as found under Minneapolis City Code (Minn.) § 244.1990 (1990):

> The remedies provided in this article are not exclusive. They are in addition to, and do not supersede or preempt, other remedies such as condemnation, written violation orders and warnings, *criminal charges* for violation of substantive provisions of any city or state code relating to housing maintenance, fire safety, building codes, zoning, health, *and the like*. Further, the remedies in this article do not supersede or affect the legal rights and remedies of tenants provided under state law or this Code.

(Emphasis added).

27.    Minneapolis officials have provided MVA Minneapolis member property owners or landlords who have rental licenses with documents about voter registration to give to first time occupancy tenants **Exhibit 2**.

28.     MVA member landlords Garfield Court Partnership, LLP, Marissa Skaja, and Charles Halverson rent dwelling units to individuals in Minneapolis, Minnesota.

29.     MVA member landlords or property owners Garfield Court Partnership, LLP, Marissa Skaja, and Charles Halverson have Minneapolis rental licenses to rent dwelling units to individuals.

## COUNT I

### Violation of Civil Rights under 42 U.S.C. § 1983, declaratory, and permanent injunctive relief against the City of Saint Paul

> **Saint Paul's adopted policy and ideology requiring landlords to provide information about voter registration to prospective tenants and tenants is the moving force of the constitutional violation of MVA owner-landlords' protected First Amendment rights not to speak.**

30.     The Plaintiffs adopt and incorporate by reference all previous paragraphs as if fully restated in support of the further allegations asserted under Count I.

31.     The First Amendment of the United States Constitution protects the right to free speech.

32.     The First Amendment of the United States Constitution protects an individual's right to refrain from speaking.

33.     Under 42 U.S.C. § 1983, the statute provisions provide persons a federal cause of action based on state violations of federal law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

34.    The Court has statutory authority under 28 U.S.C. § 2201 to issue declaratory judgments.

35.    Saint Paul's city code requires owner-landlords, "at the time of lease signing (or at the time of first occupancy if there is no formal lease)" to "provide information to all tenant(s) who are eighteen (18) years of age or older of the tenant(s) right to register to vote in the state of Minnesota and provide information on how to register to vote."  Saint Paul (Minn.) Code § 48.02(a) (2018).

36.    MVA member owner-landlords in Saint Paul, by threat of criminal prosecution, are required to carry Saint Paul's policy and ideological message to prospective tenants or tenants.

37.    Saint Paul has codified that failure to provide information to tenants regarding where and how to register to vote is subject to criminal prosecution:

> Failure to comply with the requirements of this chapter shall be a petty misdemeanor.

11

Saint Paul (Minn.) Code § 48.03 (2018).

38.    MVA member owner-landlords, fearful of prosecution, have complied with Saint Paul's City Code § 48.02 or are able to provide prospective tenants and tenants with documents regarding where and how to register to vote for fear of prosecution as required under the Code's provision.

39.    Saint Paul's expressed legislative policy for passing Chapter 48 requiring owner-landlords to provide voter registration materials to prospective tenants or tenants is an ideological belief of the government. According to Council member Dai Thao of Ward 1, the ordinance, 18–42 (creating Chapter 48 of the City Code), would show tenants that the "landlord is part of this City's vision."  (St. Paul Council Mtg, Aug. 8, 2018).

40.    Because of a low voter turnout, Saint Paul's policy and ideological belief is further identified as the City's "charge and responsibility to increase those numbers…" to "enfranchise voters."    (Council President Amy Brendmoen, Ward 5, St. Paul Council Mtg., Aug. 1, 2018).  "The more [the City] can encourage people to be turning out and not just for voting—voting is a gateway for all the other positive forms of social engagement that we encourage people to take part on in the city."  (Council member Rebecca Noecker, Ward 2, St. Paul Council Mtg., Aug. 1, 2018).

41.    The passage of City Ordinance 18-42 (creating Chapter 48 of the City Code) was also done to help Ramsey County regarding its identified

12

issue that "parts of the community … in Saint Paul are chronically under-registered and do not participate at the same level that others in the community do…." (Joe Mansky, Ramsey County Election Manager, St. Paul Council Mtg., Aug. 1, 2018).

42.    Joe Mansky, Ramsey County Election Manager, testified before the Saint Paul City Council seeking "help to get information to people as they move into a new place of residence…[and] getting people preregistered…[would be] extraordinary useful to us." (Joe Mansky, Ramsey County Election Manager, St. Paul Council Mtg., Aug. 1, 2018).

43.    Saint Paul's policy and ideology—its charge and responsibility—in part, is to get more people registered to vote, assist Ramsey County with preregistration, and to encourage people to participate in government, through landlords.  Landlords, according to the City, are part of the City's vision to carry to tenants the City's policy and ideological message.  *See* Dai Thao, Ward 1, St. Paul Council Mtg., Aug. 8, 2018; Council President Amy Brendmoen, Ward 5, St. Paul Council Mtg., Aug. 1, 2018; Council member Rebecca Noecker, Ward 2, St. Paul Council Mtg., Aug. 1, 2018; Joe Mansky, Ramsey County Election Manager, St. Paul Council Mtg, Aug. 1, 2018.

44.    Saint Paul's policy and ideology requiring MVA member owner-landlords to provide documents regarding where and how to register to vote to prospective tenants and tenants is compelled speech.

45.    Saint Paul's City Code Chapter 48, specifically § 48.02, requiring MVA member owner-landlords to provide documents regarding where and how to register to vote to prospective tenants and tenants is compelled speech

46.    Requiring MVA member owner-landlords to provide documents regarding where and how to register to vote to prospective tenants and tenants is to make landlords couriers of governmental ideology as embodied within the policy underlying §48.02 of Saint Paul's City Code and is compelled speech.

47.    Increasing registered voters is Saint Paul's expressed policy and ideology.

48.    Increasing registered voters is not the charge or responsibility of MVA owner-landlords renting dwelling units in Saint Paul.

49.    Assisting Ramsey County with preregistration of potential voters is part of Saint Paul's expressed policy and ideology underlying § 48.02 of Saint Paul's City Code.

50.    Assisting Ramsey County with preregistration of potential voters is not the charge or responsibility of MVA member owner-landlords renting units in Saint Paul.

51.    Saint Paul's expressed policy and ideology is to have MVA member owner-landlords be the couriers of Saint Paul's message as found within § 48.02.

14

52.    Part of Saint Paul's expressed policy and ideology is to have MVA member owner-landlords be agents of the City's vision under § 48.02.

53.    MVA member owner-landlords have not expressed a desire to be or are necessarily part of Saint Paul's vision to carry messages to prospective tenants or tenants regarding where and how to register to vote as required under § 48.02.

54.    MVA member owner-landlords did not agree, implicitly or expressly, to be governmental messengers for Saint Paul's policy and ideology under § 48.02.

55.    Whether a prospective tenant or tenant chooses to explore registering to vote is an individual's decision unrelated to entering into a lease agreement.

56.    Whether an owner-landlord agrees to enter into a lease agreement with a tenant is unrelated to that person deciding to explore registering to vote.

57.    Increasing registered voters is unrelated to renting dwelling units to prospective tenants or tenants.

58.    Registering to vote is unrelated to renting dwelling units.

59.    Providing information as required under Saint Paul's Chapter 48 about where and how to register to vote is not relevant to a tenant's decision

15

to enter into a lease agreement for a dwelling unit with an owner-landlord in Saint Paul.

60.    Providing information as required under Saint Paul's Chapter 48 about where and how to register to vote is not relevant to a prospective tenant or tenant being fully informed to make a decision whether to rent a dwelling unit with an owner-landlord in Saint Paul.

61.    Providing information as required under Saint Paul's Chapter 48 about where and how to register to vote is not relevant to any resulting consequences of a prospective tenant's or tenant's decision whether to enter into a lease agreement with an owner-landlord in Saint Paul for a dwelling unit.

62.    Providing information as required under Saint Paul's Chapter 48 about where and how to register to vote is not relevant in the context of procedures involving a prospective tenant's or tenant's decision whether to rent with a particular owner-landlord in Saint Paul for a dwelling unit.

63.    Determining whether to rent a dwelling unit to a prospective tenant is also at the discretion of the owner-landlord based upon disclosed criteria upon which the individual might be judged generally, before accepting a rental application or application fee. *See* Saint Paul (Minn.) Code § 54.03(a) (2007).

64.     Whether a prospective tenant is a registered voter or is eligible to register to vote is not a prerequisite to entering into a lease agreement.

65.      Whether a prospective person is a registered voter or is eligible to register is not a determinative factor and has no consequence for either the prospective tenant or owner-landlord to entering into the lease agreement.

66.     Providing a prospective or new tenant with information as required under Saint Paul's Chapter 48 regarding where or how to register to vote is not a health issue as it relates to the tenant-landlord relationship concerning the rental of a dwelling unit.

67.     Providing a prospective or new tenant with information as required under Saint Paul's Chapter 48 regarding where or how to register to vote is not related to morals—societal or otherwise—in the prospective tenant's decision whether to enter into a lease agreement with an owner-landlord.

68.     Providing a prospective or new tenant with information as required under Saint Paul's Chapter 48 regarding where or how to register to vote is not a welfare issue as it relates to the tenant-owner-landlord relationship concerning the rental of a dwelling unit.

69.     Providing a prospective or new tenant with information regarding where or how to register to vote is not a safety issue as it relates to the tenant-landlord relationship concerning the rental of a dwelling unit.

70.     Saint Paul's Chapter 48, specifically § 48.02, is unconstitutional because it is compelled speech.

71.     Saint Paul's Chapter 48, specifically § 48.02, is facially unconstitutional because it is compelled speech.

72.     Saint Paul's Chapter 48, specifically § 48.02, as applied to Saint Paul landlords is unconstitutional because it is compelled speech.

73.     MVA member owner-landlords have a First Amendment right to refrain from speaking.

74.     MVA member owner-landlords have a First Amendment right to avoid becoming the courier of Saint Paul's policy and ideology message.

75.     Saint Paul's policy and ideology embodied within Chapter 48 of the City's Code, specifically § 48.02, violates the First Amendment rights of MVA member owner-landlords in Saint Paul.

76.     Saint Paul's policy and ideology as expressed under Chapter 48 of the City's Code, specifically § 48.02, is defective and is the moving force behind the violations of MVA member owner-landlords protected First Amendment rights.

77.     Saint Paul has acted either intentionally, recklessly, or with callous indifference to the constitutionally protected First Amendment rights not to speak, have threatened MVA member owner-landlords with penalties

and criminal prosecution if they fail to be couriers of the City's policy or ideological message under Chapter 48 to prospective tenants or tenants.

78.    Saint Paul's policy and ideology is violative of the First Amendment and, thus, is defective and is the moving force behind the constitutional challenge to § 48.02.

79.    An actual controversy exists between the MVA member owner-landlords and the City of Saint Paul in which the parties have genuine and opposing interests that are direct and substantial which requires a judicial determination to be final and conclusive regarding the rights asserted by the owner-landlords and the policy or ideology of the City.

80.    Because Saint Paul's policy and ideology is the moving force behind the violations of MVA member owner-landlords protected First Amendment rights to free speech, Saint Paul has violated the owner-landlords' civil rights under 42 U.S.C. § 1983.

81.    MVA member owner-landlords request this Court to adjudicate that Saint Paul's policy and ideology, as found under Chapter 48, specifically, § 48.02, violates their protected First Amendment rights to free speech under 42 U.S.C. § 1983.

82.    Section 48.02 fails strict scrutiny because it is not narrowly tailored to meet a compelling state interest.  Section 48.02 is fatally under-

inclusive because it does not require everyone to provide voter registration information to everyone else.

83.     Because Saint Paul has violated the civil rights of MVA member owner-landlords, they are entitled to nominal damages or other monetary damages to be determined at the time of trial.

84.     Because Saint Paul has violated the civil rights of MVA member owner-landlords under 42 U.S.C. § 1983, they are entitled to attorney fees, costs, and disbursements.

85.     This Court should declare § 48.02(a) as unconstitutional.

86.     This Court should declare § 48.02(a) facially unconstitutional or in the alternative declare § 48.02(a) unconstitutional as applied.

87.     Furthermore, MVA member owner-landlords, Ryan and Nedroski, request this Court to issue declaratory and permanent injunctive relief directing the City of Saint Paul to cease and prevent any further City conduct under Chapter 48 of the City Code, and all other relief this Court may deem just under the circumstances.

## COUNT II

**Violation of Civil Rights under 42 U.S.C. § 1983, declaratory, and permanent injunctive relief against the City of Minneapolis**

> **Minneapolis's adopted policy and ideology requiring landlords to provide information about voter registration to first time tenants is the moving force of the constitutional violation of MVA owner-landlords' protected First Amendment right not to speak.**

88.    The Plaintiffs adopt and incorporate by reference all previous paragraphs as if fully restated in support of the further allegations asserted under Count II.

89.    Plaintiffs, MVA member landlords or property owners Garfield Court Partnership, LLP, Marissa Skaja and Charles Halverson have Minneapolis rental licenses. ("MVA member licensed landlords").

90.    The First Amendment of the United States Constitution protects the right to free speech.

91.    The First Amendment of the United States Constitution protects an individual's right to refrain from speaking.

92.    Under 42 U.S.C. § 1983, the statute provisions provide persons a federal cause of action based on state violations of federal law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

> jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

93.    The Court has inherent or statutory authority to issue declaratory judgments.

94.    Minneapolis, under Minneapolis City Code (Minn.) § 244.2000 (f) (2015), requires licensed landlords to provide information to all tenants at the time of first occupancy about how to register to vote:

> Every holder of a rental dwelling license or provisional license shall:
> * * *
> (f). Beginning March 1, 2016, and continuing thereafter, the owner of any dwelling which is required to be licensed by this chapter shall provide information about how a voter may register in the State of Minnesota, in a manner approved by the city, to all tenants aged eighteen (18) or older at the time of first occupancy.

95.    Failure to comply with providing first time occupancy tenants with information about registering to vote, leads to criminal prosecution as found under Minneapolis City Code (Minn.) § 244.1990 (1990):

> The remedies provided in this article are not exclusive. They are in addition to, and do not supersede or preempt, other remedies such as condemnation, written violation orders and warnings, *criminal charges* for violation of substantive provisions of any city or state code relating to housing maintenance, fire safety,

> building codes, zoning, health, *and the like*.
> Further, the remedies in this article do not
> supersede or affect the legal rights and
> remedies of tenants provided under state law or
> this Code.

(Emphasis added).

96.    The Minneapolis City Council's policy objective and ideology in the passing of its ordinance to amend Title 12, Chapter 244 of the City's Code, was "to ensure that eligible individuals who are renting a primary residence in the city are informed of their voting rights and provided an opportunity to register." City of Mpls. Request for Comm. Action (Sept. 15, 2015).

97.    The policy and ideology are based upon a finding that "registrations are not portable and do not move with the voter. As a consequence, voters who change residency risk being prevented from voting if the mandatory first step—registration—is incomplete or inaccurate." *Id.*

98.    The City further referenced a Harvard study that "noted fully one-third of unregistered voters were those who had failed to re-register at a new residence after moving. Thus, the negative impact for highly-mobile populations can be especially significant." *Id.*

99.    Minneapolis believed that the Harvard study raised a concern for the city because "more than half its population is composed of renters." *Id.*

100.   Fearful of prosecution, MVA member licensed landlords have complied with or are willing to comply with Minneapolis City Code (Minn.) § 244.2000 (f).

101.   Minneapolis's expressed legislative policy for passing § 244.2000(f) to provide registration materials to first-time tenants is an ideological belief of the government.

102.   Minneapolis's policy and ideology under § 244.2000(f) requiring MVA member licensed landlords to provide documents regarding how a tenant may register to vote is compelled speech.

103.   Requiring MVA member licensed landlords to provide documents regarding how to register to vote to first-time tenants is to make landlords couriers of governmental ideology and policy as embodied under Minneapolis City Code § 244.2000(f) and is compelled speech.

104.   Informing people of their voting rights and providing them an opportunity to register is the expressed policy and ideology of the City of Minneapolis.

105.   Informing first-time tenants of their voting rights and providing them an opportunity to register is not the charge, responsibility, policy, or ideology of MVA member licensed landlords.

106. MVA member licensed landlords did not agree, implicitly or expressly, to be governmental messengers for Minneapolis's policy or ideology under § 244.2000(f).

107. Whether a first-time tenant chooses to explore registering to vote is that individual's decision and is unrelated to entering into a lease agreement.

108. Whether a licensed landlord agrees to enter into a lease agreement with a first-time tenant is unrelated to that person's right to vote or decision related to registering to vote.

109. Registering to vote is unrelated to renting dwelling units.

110. Providing information as required under Minneapolis's § 244.2000(f) about how to register to vote is not relevant to a tenant's decision whether to enter into a lease agreement for a dwelling unit with a licensed landlord in Minneapolis.

111. Providing information as required under Minneapolis's § 244.2000(f) about how to register to vote is not relevant to a first-time tenant being fully informed to make a decision whether to rent a dwelling unit with a licensed landlord in Minneapolis.

112. Providing information as required under Minneapolis's § 244.2000(f) about how to register to vote is not relevant to any resulting

25

consequence(s) of a first-time tenant's decision whether to enter into a lease agreement with a licensed landlord in Minneapolis for a dwelling unit.

113.  Providing  information  as  required  under  Minneapolis's  § 244.2000(f) about how to register to vote is not relevant in the context of procedures involving a first-time tenant's decision whether to rent with a particular licensed landlord in Minneapolis for a dwelling unit.

114.  Determining  whether  to  rent  a  dwelling  unit  to  a  first-time tenant is also at the discretion of the licensed and unrelated to the first-time tenant's decision whether to register to vote or eligibility to vote.

115.  Whether a first-time tenant is a registered voter or is eligible to register to vote is not a prerequisite to entering into a lease agreement.

116.   Whether a prospective person is a registered voter or is eligible to register is not a determinative factor and has no consequence for either the first-time tenant or owner-landlord to entering into the lease agreement.

117.  Providing a first-time tenant  with information as required under Minneapolis's § 244.2000(f)  regarding how to register to vote is not a health issue as it relates to the tenant-landlord relationship concerning the rental of a dwelling unit.

118.  Providing a first-time tenant with information as required under Minneapolis's § 244.2000(f) regarding how to register to vote is not related to

morals—societal or otherwise—in the first-time tenant's decision whether to enter into a lease agreement with an owner-landlord.

119.   Providing a first-time tenant with information as required under Minneapolis's § 244.2000(f) regarding how to register to vote is not a welfare issue as it relates to the tenant–licensed-landlord relationship concerning the rental of a dwelling unit.

120.   Providing a first-time tenant with information regarding where or how to register to vote is not a safety issue as it relates to the tenant–landlord relationship concerning the rental of a dwelling unit.

121.   Minneapolis's § 244.2000(f) is unconstitutional because it is compelled speech.

122.   Minneapolis's § 244.2000(f) is facially unconstitutional because it is compelled speech.

123.   Minneapolis's § 244.2000(f) as applied to Minneapolis landlords is unconstitutional because it is compelled speech.

124.   MVA member licensed landlords have a First Amendment right to refrain from speaking.

125.   MVA member licensed landlords have a First Amendment right to avoid becoming the courier of Minneapolis's policy or ideology message.

126.   Minneapolis's policy and ideology embodied within § 244.2000(f) violates the First Amendment rights of MVA member licensed landlords in Minneapolis.

127.   Minneapolis's policy and ideology or both as expressed under § 244.2000(f) of the City's Code is defective and is the moving force behind the violations of MVA member licensed landlords' protected First Amendment rights.

128.   Minneapolis has acted either intentionally, recklessly, or with callous indifference to the constitutionally protected First Amendment rights not to speak, have threatened MVA member licensed landlords with penalties and criminal prosecution if they fail to be couriers of the City's policy or ideology message under § 244.2000(f) to first-time tenants.

129.   Minneapolis's policy or ideology or both, is violative of the First Amendment and, thus, is defective and is the moving force behind the constitutional challenge to § 244.2000(f).

130.   An actual controversy exists between the MVA member licensed landlords and the City of Minneapolis in which the parties have genuine and opposing interests that are direct and substantial which requires a judicial determination to be final and conclusive regarding the rights asserted by the licensed-landlords and the policy or ideology of the City.

131.   Because Minneapolis's policy and ideology is the moving force behind the violations of MVA member licensed landlords protected First Amendment rights to free speech, Minneapolis has violated the licensed landlords' civil rights under 42 U.S.C. § 1983.

132.   MVA member licensed landlords request this Court to adjudicate that Minneapolis's policy or ideology, or both, as found under § 244.2000(f) violates their protected First Amendment rights to free speech under 42 U.S.C. § 1983.

133.   Section 244.2000(f) fails strict scrutiny because it is not narrowly tailored to meet a compelling state interest.  Section § 244.2000(f) is fatally under-inclusive because it does not require everyone to provide voter registration information to everyone else.

134.   Because Minneapolis has violated the civil rights of MVA member licensed landlords, they are entitled to at least nominal damages or other monetary damages to be determined at the time of trial.

135.   Because Minneapolis has violated the civil rights of MVA member licensed landlords under 42 U.S.C. § 1983, they are entitled to attorney fees, costs, and disbursements.

136.   This Court should declare § 244.2000(f) as unconstitutional.

137.   This Court should declare § 244.2000(f) facially unconstitutional or in the alternative declare § 244.2000(f) unconstitutional as applied.

138.   Furthermore, MVA member licensed landlords, Garfield Court Partnership, Skaja, and Halverson request this Court to issue declaratory and permanent injunctive relief directing the Minneapolis to cease and prevent any further City conduct under § 244.2000(f) of the City Code, and all other relief this Court may deem just under the circumstances.

## JURY TRIAL DEMANDED

139.   Plaintiffs demand a jury trial regarding the allegations asserted in the instant Complaint.

## RELIEF REQUESTED

**WHEREFORE,** the Plaintiffs request that this Court:

A.   Declare Saint Paul City Code (Minn.) Chapter 48, specifically, § 48.02(a), facially unconstitutional or in the alternative unconstitutional as applied;

B.   Declare Minneapolis City Code (Minn.) § 244.2000(f) facially unconstitutional or in the alternative unconstitutional as applied;

C.   Declare that the City of Saint Paul, by Saint Paul City Code (Minn.) Chapter 48, specifically, § 48.02(a), violated the Minnesota Voters Alliance member owner-landlords protected right of free speech under the First Amendment;

D.    Declare that the City of Minneapolis, by Minneapolis City Code (Minn.) § 244.2000(f)  violated the Minnesota Voters Alliance member rental license holders   protected right of free speech under the First Amendment;

E.    Declare that that the City of Saint Paul, by Saint Paul City Code (Minn.) Chapter 48, specifically, § 48.02(a), violated the Minnesota Voters Alliance member owner-landlords civil rights under 42 U.S.C. § 1983;

F.    Declare that the City of Minneapolis, by Minneapolis City Code (Minn.) § 244.2000(f) violated the Minnesota Voters Alliance member rental licensed landlords' civil rights under 42 U.S.C. § 1983;

G.    Grant    permanent    injunctive    relief    against    the implementation or enforcement of Saint Paul City Code (Minn.) Chapter 42;

H.    Grant    permanent    injunctive    relief    against    the implementation or enforcement of Minneapolis City Code (Minn.) § 244.2000(f);

I.    Award nominal damages against the City of Saint Paul;

J.    Award any compensatory damages or punitive damages against the City of Saint Paul, if warranted;

K.    Award nominal damages against the City of Minneapolis;

L.    Award any compensatory damages or punitive damages against the City of Minneapolis, if warranted;

31

M.    Award Minnesota Voters Alliance and its owner-landlords in Saint Paul, their reasonable attorney fees, litigation expenses, and costs as allowed under 42 U.S.C. § 1988, and all other applicable laws, and grant such other relief as this Court deems just to the Plaintiffs and their attorneys; and

N.    Award Minnesota Voters Alliance and its rental licenseholders in Minneapolis, their reasonable attorney fees, litigation expenses, and costs as allowed under 42 U.S.C. § 1988, and all other applicable laws, and grant such other relief as this Court deems just to the Plaintiffs and their attorneys.

O.    Any and all other relief, monetary or otherwise, this Court deems just or reasonable under the circumstances alleged in this Complaint.

Dated: February 13, 2019        /s/Erick G. Kaardal
                                Erick G. Kaardal, 229647
                                Mohrman, Kaardal & Erickson, P.A.
                                150 South Fifth Street, Suite 3100
                                Minneapolis, Minnesota 55402
                                Telephone:  612-341-1074
                                Facsimile:  612-341-1076
                                Email: kaardal@mklaw.com

                                *Attorneys for the Plaintiffs*