CASE 0:19-cv-00358-WMW-HB    Doc. 49-4    Filed 05/18/20    Page 1 of 22
Owner Operator Independent Drivers Ass'n, Inc. V...., Not Reported in...
2012 WL 6760098

2012 WL 6760098
Only the Westlaw citation is currently available.
United States District Court,
D. Minnesota.

OWNER–OPERATOR INDEPENDENT
DRIVERS ASSOCIATION, INC.;
Joseph Rajkovacz, individually and on
behalf of all others similarly situated,
Carl Schaefer, individually and on
behalf of all others similarly situated;
and Carl Schaefer LLC, Plaintiffs,
v.
SUPERVALU, INC., a Delaware
corporation, Defendant.

Civil No. 05–2809 (JRT/
JJG).    |    Sept. 30, 2012.

**Attorneys and Law Firms**

Paul D. Cullen, Jr., Paul D. Cullen, Sr., and
Randall Herrick–Stare, The Cullen Law Firm, PLLC,
Washington, D.C., Andrew J. Morrison, Koll Morrison
Charpentier & Hagstrom, Saint Paul, MN, and Michael
B. Healey, Michael Healey Law, LLC, Saint Paul, MN,
for plaintiffs.

Steven J. Wells and Glenn M. Salvo, Dorsey &
Whitney, LLP, Minneapolis, MN, for defendant.

**MEMORANDUM OPINION AND ORDER
ON ATTORNEYS' FEES AND COSTS**

JOHN R. TUNHEIM, District Judge.

**\*1** Plaintiffs Owner–Operator Independent Drivers
Association, Inc., Joseph Rajkovacz, Carl Schaefer,
and Carl Schaefer LLC (collectively "OOIDA") filed
a complaint against Supervalu, Inc. ("Supervalu")
on December 6, 2005. After a series of orders
from this Court, the parties reached a settlement.
The settlement determined that OOIDA could seek
attorneys' fees after the exhaustion of its appeals.
(Docket No. 318.)The Court entered an order granting
final approval of the class settlement and entry of final
judgment on September 30, 2009. (*Id.*) OOIDA lost on
appeal and now seeks attorneys' fees of $1,402,155,

plus costs. (Decl. of Paul D. Cullen, Sr., Jan. 27,
2012, Docket No. 361.)Supervalu objects to OOIDA's
requests on numerous grounds. The Court will grant
OOIDA $258,082.54 in attorneys' fees and $11,625.98
in costs. But the Court will not grant OOIDA's full
request for fees because, among other considerations,
OOIDA failed to succeed on many of its claims and
rejected a settlement offer from Supervalu that was
substantially equivalent to the final settlement. The
Court will also award some but not all of OOIDA's
claimed costs because some costs are not authorized
by statute.

**BACKGROUND**

The Court will first outline the procedural background
of this action, next discuss OOIDA's request for
attorneys' fees, and finally address OOIDA's requests
for costs.

**I. OOIDA'S COMPLAINT AND THIS COURT'S
ORDERS**

OOIDA is a non-profit trade association of
professional truck drivers who own and operate heavy-
duty trucks. (Am. Compl. ¶ 7, Nov. 29, 2006, Docket
No. 134.)OOIDA brought this action—originally in
December 2005 (Compl., Docket No. 1)—in response
to an insurance coverage requirement that Supervalu
implemented in March 2005 for drivers who wished to
unload their own vehicles at Supervalu's distribution
centers. (Am.Compl.¶ 21.) Supervalu required the
drivers to show proof of aggregate annual general
liability insurance of $3 million, $1 million per
"occurrence," and automobile liability insurance in
the amount of $1 million combined single limit
coverage. (*Id.;* Ans. to Am. Compl. ¶ 21, Dec.
18, 2006, Docket No. 152.)This insurance coverage
requirement went beyond the statutory minimum
under 49 U.S.C. § 31139(b),[1] which requires those
who transport property by commercial motor vehicle
to carry insurance of at least $750,000.

---

[1]    In August 2005, Supervalu reduced the insurance
coverage requirement to $1 million aggregate and
$1 million per occurrence. (Ans. to Am. Compl.
¶ 2 1.)

EXHIBIT 4 - MOHRMAN DECLARATION

CASE 0:19-cv-00358-WMW-HB    Doc. 49-4    Filed 05/18/20    Page 2 of 22

Owner Operator Independent Drivers Ass'n, Inc. V...., Not Reported in...

2012 WL 6760098

OOIDA claimed that Supervalu's insurance requirement violated 49 U.S.C. § 14103(a) and (b). (Am.Compl.¶ 1.) Section 14103(a) mandates that whenever a shipper or receiver of property requires a trucker to be assisted in the loading or unloading of a truck, the shipper or receiver is responsible for providing such assistance or compensating the owner or operator of the truck for all costs associated with securing it. Section 14103(b) makes it unlawful to coerce or attempt to coerce a trucker to load or unload property on or off a truck or to employ or pay one or more persons to load or unload property from the truck. OOIDA claimed that Supervalu violated these statutes by requiring others to employ other persons, called "lumpers," to assist in unloading its trucks, without Supervalu paying for those services. (Id.) In essence, OOIDA argued that because Supervalu's insurance requirement was too expensive for truckers to afford, truckers were functionally compelled to hire "lumpers" contrary to federal law. (Id.) OOIDA sought declaratory relief for the violations of §§ 14103(a), (b), an injunction stopping Supervalu from further violations, an order that Supervalu disgorge the amount that it had unjustly enriched itself by shifting unloading costs to drivers, and an award of attorneys' fees and costs. (Id. ¶ 3.)

**\*2** Shortly after OOIDA filed the original complaint on December 6, 2005, Supervalu lowered its insurance requirement to the federal minimum. (Order ¶ 16, Sept. 30, 2009, Docket No. 318.)Since December 21, 2005, Supervalu has only required drivers to show that they are covered by a $750,000 combined single unit of automobile liability insurance, as required by § 31139(b). (See id.)

The parties filed a variety of motions, including summary judgment motions, that the Court addressed on May 31, 2007 and March 24, 2009. *Owner–Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc. (OOIDA I),* 2007 WL 1576120 (D.Minn. May 31, 2007); *Owner–Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc. (OOIDA III),* 2009 WL 799614 (D.Minn. March 24, 2009). The Court ultimately dismissed OOIDA's claims under § 14103(a) because OOIDA failed to establish that neither a receiver nor a shipper had paid truck drivers for lumping service costs. *OOIDA III,* 2009 WL 799614, at \*3–4.In other words, the Court found that, even if Supervalu had

essentially forced truckers to pay for lumping services through its insurance requirement, Supervalu did not violate the law because the evidence suggested that truckers were reimbursed by shippers or receivers for the cost of the lumping services. *Id.* Relying on the legislative history of § 14103(a), the Eighth Circuit upheld this ruling. *Owner–Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc. (OOIDA IV),* 651 F.3d 857, 867–77 (8th Cir.2011).

The Court dismissed some of OOIDA's theories under § 14103(b), as well. First, the Court held that OOIDA was not entitled to restitution under § 14103 because the statute did not provide for such relief. *OOIDA I,* 2007 WL 1576120, at \*4–5.Second, the Court dismissed OOIDA's claim that Supervalu's election to receive goods on palletized freight, without providing the necessary equipment to unload such freight, constituted coercion or an attempt to coerce individual plaintiffs [2] to hire lumping services. *OOIDA III,* 2009 WL 799614, at \*9.

[2]    This claim was not certified as a class, and thus the Court only considered it with respect to Plaintiffs Rajkovacz and Schaefer.

The Court found some genuine issues of material or fact under § 14103(b), however. *Id.* at \*6–8.The Court certified a class as to whether Supervalu's institution of its company-wide insurance requirement constituted an "attempt to coerce" drivers to hire lumpers, in violation of § 14103(b).*Owner–Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc. (OOIDA II),* 2008 WL 706600, at \*4 (D.Minn.2008). Even though OOIDA could not seek restitution, the Court allowed the § 14103(b) claim to continue because OOIDA had properly sought injunctive and declaratory relief. *OOIDA III,* 2009 WL 799614, at \*6–8.The case settled before the Court ruled on the issue of attorneys' fees and costs. [3]

[3]    Supervalu abandoned its counterclaims for declaratory relief on May 4, 2009. (Docket No. 272.)

## II. SETTLEMENT OFFERS

### A. Pre–Litigation Offer

EXHIBIT 4 MOHRMAN DECLARATION

CASE 0:19-cv-00358-WMW-HB   Doc. 49-4   Filed 05/18/20   Page 3 of 22

Owner Operator Independent Drivers Ass'n, Inc. V...., Not Reported in...
2012 WL 6760098

Supervalu claims that, prior to OOIDA filing this action, Supervalu offered to change its insurance requirement. In October 2005, Randall S. Herrick–Stare, OOIDA's lead attorney, told Kim J. Myrdahl, Supervalu's Vice President of Litigation, Regulatory and Compliance, that OOIDA planned to file this action. (First Decl. of Kim Myrdahl ¶ 3, Jan. 6, 2012, Docket No. 358.) [4] Myrdahl claims that she told Herrick–Stare on October 26, 2005, that Supervalu would change its then-existing policy by reducing the required insurance types and levels to the minimum requirements of federal law in order to resolve the dispute and avoid litigation. (*Id.*) According to Myrdahl, Herrick–Stare responded that Supervalu would not be able to resolve this dispute without a substantial monetary payment to OOIDA. (*Id.*) OOIDA counters that Myrdahl never offered that Supervalu would permanently, unconditionally, and enforceably abandon its insurance requirement. There appears to be no pre-litigation writing by or on behalf of Supervalu setting forth any settlement proposal.

[4]     On October 6, 2005, Herrick–Stare sent a letter to Supervalu's Senior Corporate Counsel, stating:
        As a matter of efficiency in negotiations, neither OOIDA, the plaintiffs, nor The Cullen Law Firm wants to spend time discussing abstract generalities. We prefer to present and to consider concrete proposals, if not offers. We therefore invite Supervalu to set forth what it is prepared to do to avoid litigation.
        (Second Aff. of Herrick–Stare, Ex. 1, Jan. 26, 2012, Docket No. 359.)

**B. September 2007 Settlement Offers**

 **\*3** On August 14, 2007, the Magistrate Judge filed a notice that a settlement conference would be held on September 10, 2007. (Docket No. 196.)The same day, OOIDA made a settlement demand that included a $15,000,000 payment to the class (even though the Court had already held monetary relief was unavailable), entry of a **consent decree** stipulating, among other things, that Supervalu unload, separate, and stage all carrier loads itself or at its expense, and the payment of OOIDA's attorneys' fees and costs. (First Decl. of Steven J. Wells ¶ 4, Ex. B, Jan. 6, 2012, Docket No. 357.)Two weeks later, on August 30, 2007, Supervalu offered to settle on terms that allowed

it to require insurance **above** the statutorily-required minimum. (Second Herrick–Stare Aff., Ex. 4.)

At the September 10, 2007 settlement conference, the parties reached what the Magistrate Judge characterized as a "framework for settlement agreement." The Magistrate Judge outlined the framework as possessing the following elements:

• OOIDA would dismiss all claims and waive all claims and class claims.

• The parties would agree to a consent decree that would require Supervalu to mandate proof of insurance no greater than what is federally mandated by statute.

• The Magistrate Judge stated that there had been discussions of either (1) a three-year time limit on this requirement, or (2) no time limit but an agreement that Supervalu could modify its insurance requirements "upon a showing of, for example, a significantly changed circumstance."

• The Magistrate Judge noted that Steven Wells, counsel for Supervalu, would attempt to draft a proposed agreement so the parties could decide which option they preferred.

• Supervalu would provide manual non-motorized hand jacks to drivers that choose to unload their trucks themselves. Enough hand jacks would be required to accommodate drivers at all distribution centers.

• Supervalu would pay reasonable costs and fees to OOIDA. OOIDA would respond to Supervalu's offer of $100,000 in fees.

(First Wells Decl., Ex. C.)

After this meeting, Wells drafted a proposed settlement agreement dated September 17, 2007, generally consistent with the terms outlined by the Magistrate Judge. (*See id.*, Ex. D.) The proposal stated that Supervalu could adjust its insurance requirement either after three years or when a "material change" occurred. A "material change" was defined as occurring when:

(i) Supervalu obtains knowledge or becomes aware of a claim against or loss by a receiver of goods ....

**EXHIBIT 4 - MOHRMAN DECLARATION**

CASE 0:19-cv-00358-WMW-HB   Doc. 49-4   Filed 05/18/20   Page 4 of 22

Owner Operator Independent Drivers Ass'n, Inc. V...., Not Reported in...

2012 WL 6760098

in an amount in excess of the Federally Mandated Minimum Insurance resulting from, connected with, or caused by a person delivering unloading or sorting or segregating goods to the receiver; or

(ii) An existing or potential lender, financial institution, or insurer requires that Supervalu obtain from a person delivering, unloading, or sorting or segregating goods to proof of types and/or levels of insurance that exceed the Federally Mandated Minimum Insurance.

**\*4** (*Id.*) Supervalu offered $100,000 in attorneys' fees. (*Id.*)

OOIDA rejected Supervalu's offer and returned one of its own. OOIDA's proposal did not include the three-year limit and contained a different version of the "material change" requirement. (*Id.,* Ex. E.) OOIDA defined "material change" as occurring when:

> Supervalu is judged to be liable on a claim against it, or suffers a loss which arises from an occurrence at one of the Distribution Centers listed in Exhibits A, B, or C, and either is not covered by, or is in an amount in excess of, the Federally Mandated Minimum Insurance....

(*Id.*)On October 4, 2007, Supervalu rejected OOIDA's proposed definition of "material change." (*Id.,* Ex. F.) Supervalu agreed, however, to abandon the three-year limitation and instead adopt the "material change" limitation it had initially proposed. (*Id.*) OOIDA also requested $500,000 in attorneys' fees, which Supervalu rejected in its October 4 offer, instead proposing that attorneys' fees would become a "Magistrate Judge Graham issue." (*Id.,* Exs.E, F.)

After receiving Supervalu's second proposed stipulation agreement, OOIDA refused to tender a responsive proposal. (*Id.,* Ex. G.) OOIDA wrote a letter to the Magistrate Judge on November 5, 2007, indicating why it did not think another settlement conference was necessary; specifically, it stated that there were key issues where resolution did not appear possible, including:

• Supervalu's requirement of a broad release with no appeal rights for OOIDA

• A troubling definition of "material change"

• Issues with the hand jack requirements

• Attorneys' fees

(Second Herrick–Stare Aff., Ex. 6.) This letter did not reflect any concern on OOIDA's part that Supervalu offered a "consent decree" rather than an "injunction."

**C. Subsequent Settlement Offers**

The Court scheduled another settlement conference for January 7, 2008. (Docket No. 207.)[5] After this settlement conference, Supervalu sent a proposed stipulation dated February 1, 2008, to the Magistrate Judge, which deleted Supervalu's prior definition of a "material change" allowing Supervalu to change its insurance requirements under certain circumstances and instead simply stated that "Supervalu retains and does not waive any rights it otherwise would have to seek a modification of this Stipulated Order and Judgment had the terms of this provision been ordered by a Court without Supervalu's agreement."(First Wells Decl., Ex. I.) Supervalu also offered to provide manual hand jacks to accommodate drivers in unloading their trucks and to submit the issue of attorneys' fees to the Magistrate Judge for decision. (*Id.*) It appears that the February 1, 2008, settlement offer was only sent to the Magistrate Judge and never forwarded to OOIDA. (*See* Second Herrick–Stare Aff. ¶ 10; Letter from Steven J. Wells, Ex. 10–12, June 8, 2012, Docket No. 374.)

[5]   Supervalu claims that, at the January 7 settlement conference, it again offered to allow the Court to enter an "injunction" regarding its insurance requirement and offered to permit OOIDA to petition the Court for fees and costs, without a cap. (First Wells Decl. ¶ 8.)

**\*5** On June 5, 2008, the Magistrate Judge sent a proposed stipulation of her own drafting to Supervalu and OOIDA, which included much of the language that Supervalu suggested on February 1, including the language that "Supervalu retains and does not waive any rights it otherwise would have to seek a

EXHIBIT 4 MOHRMAN DECLARATION

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

CASE 0:19-cv-00358-WMW-HB    Doc. 49-4    Filed 05/18/20    Page 5 of 22

modification of this Stipulated Order and Judgment had the terms of this provision been ordered by a Court without Supervalu's agreement."(Wells Letter, Ex. 14.) However, the Magistrate Judge's proposal did not indicate that this language was proposed by Supervalu. (*See id.*)OOIDA states that the first it learned that Supervalu had proposed these new limitations on when it could change its insurance requirement was on July 1, 2008, when the next settlement conference took place. (Third Aff. of Randall S. Herrick–Stare, July 16, 2012, Docket No. 378.)

### D. Rule 68 Offer
On May 4, 2009, Supervalu served Plaintiffs with a formal Rule 68 offer of judgment. (First Wells Decl. ¶ 10, Ex. J.) This offer included the following proposed language:

> Supervalu is enjoined, as follows: Supervalu shall not, without prior approval of the Court, require a driver who wishes to unload his truck without assistance at a Supervalu-owned facility to have, or display proof of, insurance coverage in excess of the types and amounts required by law for drivers of commercial trucks operating in interstate commerce....

(*Id.*)It also stated that OOIDA would be awarded reasonable attorneys' fees. (*Id.*) Supervalu conditioned acceptance of its offer on OOIDA's abandonment of rights to appeal the dismissal of the § 14013(a) claims. OOIDA did not accept Supervalu's Rule 68 offer but shortly thereafter agreed to settle the case. (*See* J. Mot. for Approval of Settlement, Sept. 15, 2009, Docket No. 315.)

### E. Settlement
The parties signed a Stipulated Order and Judgment on May 11, 2009. (*See* Order at 1, Sept. 30, 2009, Docket No. 318.)The Court entered its order granting final approval of the class settlement and entry of final judgment on September 30, 2009. (*Id.* ¶¶ 20–

26.)Regarding the insurance requirement, the final judgment stated,

> Without prior approval of Court, Supervalu is hereby enjoined from requiring owners or operators of motor-vehicles used to deliver "carrier loads" to Supervalu's distribution centers, who wish to unload their truck without assistance at a Supervalu distribution center, to have, or display proof of, insurance coverage in excess of the types and amounts required by law for carriers operating in interstate commerce....

(*Id.* ¶ 21.) The agreement dismissed some of OOIDA's claims with prejudice but acknowledged that OOIDA retained the right to appeal the Court's rulings dismissing the 49 U.S.C. § 14103(a) claims. [6] (*Id.* ¶ 8.) It stated that OOIDA could make an application for attorneys' fees after resolution of the appeal, without affecting the finality of the final order and judgment. (*Id.* ¶ 25) The settlement did not include any provisions regarding hand jacks or Supervalu providing other assistance relating to the receipt of palletized goods. [7]

[6] As stated above, OOIDA lost on appeal. *OOIDA IV,* 651 F.3d at 867–77.

[7] In the Court's approval of the settlement, the Court found that "this case presented complex issues[.]" (*Id.* ¶ 6.) It also found that the stipulation was "both reasonable and a fair approximation of the best result Plaintiffs could reasonably have expected to receive upon a successful trial of their claim under 49 U.S.C. § 14103(b)." (*Id.* ¶ 12.) Finally, the Court found that "[t]he outcome of any appeal may have a bearing on the question of whether Plaintiffs were successful and thus affect the analysis of whether an award of attorney fees is appropriate, and, if so, the amount."(*Id.* ¶ 15.)

### ANALYSIS

### I. STANDARD OF REVIEW FOR ATTORNEYS' FEES

EXHIBIT 4 - MOHRMAN DECLARATION

CASE 0:19-cv-00358-WMW-HB   Doc. 49-4   Filed 05/18/20   Page 6 of 22

Owner Operator Independent Drivers Ass'n, Inc. V...., Not Reported in...

2012 WL 6760098

**\*6** OOIDA seeks attorneys' fees available under 49 U.S.C. § 14704(e). [8] Pursuant to Section 14704(e), "The district court **shall** award a **reasonable** attorney's fee [and] ... shall tax and collect that fee as part of the costs of the action."*Id* . (emphases added). In determining a reasonable award of attorneys' fees, the Court begins with the "lodestar" amount, obtained by calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."*See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) (interpreting 42 U.S.C. § 1988); *Fair Isaac Corp. v. Experian Info. Solutions Inc.,* 711 F.Supp.2d 991, 1008–09 (D.Minn.2010) (using the *Hensley* lodestar method to assess a fee request submitted pursuant to contractual language)."[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."*Hensley,* 461 U.S. at 437.The party seeking an award of attorneys' fees must submit adequate evidence to demonstrate the hours worked and rates claimed. *Id.* at 433."When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates."*Hanig v. Lee,* 415 F.3d 822, 825 (8th Cir.2005). The Court must exclude claimed hours that were not "reasonably expended[,]" such as hours that are "excessive, redundant, or otherwise unnecessary...." *Hensley,* 461 U.S. at 434.In determining a reasonable fee, the Court may account for numerous other factors, including "the [party's] overall success; the necessity and usefulness of the [party's] activity in the particular matter for which fees are requested; and the efficiency with which the [party's] attorneys conducted that activity."*Jenkins ex. rel. Jenkins v. Missouri,* 127 F.3d 709, 718 (8th Cir.1997). [9] The Court may also consider substantial settlement offers as a factor in determining an award of reasonable attorney's fees. *Parke v. First Reliance Standard Life Ins. Co.,* 368 F.3d 999, 1012 (8th Cir.2004) (quoting *Moriarty v. Svec,* 233 F.3d 955, 967 (7th Cir.2000))."The most critical factor in assessing

fees is the degree of success obtained."*Fish v. St. Cloud State Univ.,* 295 F.3d 849, 852 (8th Cir.2002).

[8]   49 U.S.C. § 14704(a)(1) allows a plaintiff to seek injunctive relief for a violation of 49 U.S.C. § 14103. OOIDA seeks attorneys' fees available under 49 U.S.C. § 14704(e) because it obtained injunctive relief under § 14103. *See Owner–Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.,* 398 F.3d 1067, 1071 (8th Cir.2005) (§ 14704(e) is designed to benefit injured plaintiffs through attorneys' fees).

[9]   *See also Lewis v. Heartland Inns of Am., L.L.C.,* 764 F.Supp.2d 1037, 1044 (S.D.Iowa 2011) (citing *Zoll v. E. Allamakee Cmty. Sch. Dist.,* 588 F.2d 246, 252 n.11 (8th Cir.1978)) (holding that courts should consider numerous factors in calculating a reasonable fee, including: (1) the time and labor required; (2) the novelty or difficulty of the issues; (3) the skill required of the attorney to properly perform legal services; (4) the preclusion of other employment due to acceptance of the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the experience, reputation, and ability of the attorney; (9) the undesirability of the case; (10) the nature and length of the attorney's professional relationship with the client; and (11) awards in similar cases).

**II. REASONABLENESS OF HOURLY RATE**

The Court will first determine if the hourly rates OOIDA requests are reasonable. A fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."*Schaub v. Cnty. of Olmsted,* No. 06–2725, 2011 WL 3664565 at *2 (D.Minn. Aug. 19, 2011) (citing *Blum v. Stenson,* 465 U.S. 886, 896 n.11 (1984)). OOIDA seeks attorneys' fees at the following hourly rates:

| | |
|---|---|
| Paul D. Cullen, Sr. | $495 (attorney with 46 years of experience) |
| Randall Herrick–Stare | $495 (attorney with 35 years of experience) |

EXHIBIT 4 MOHRMAN DECLARATION

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...
2012 WL 6760098

| | |
|---|---|
| Joseph Black | $495 (attorney with 24 years of experience) |
| David Cohen | $495 (attorney with 23 years of experience) |
| Paul D. Cullen, Jr. | $435 (attorney with 12 years of experience) |
| Vanessa Ellerman | $435 (attorney with 13 years of experience) |
| Amy Lloyd | $350 (attorney with 10 years of experience) |
| Kelli Vail | $285 (attorney with 6 years of experience) |
| Paralegals | $140 |

**\*7** (OOIDA's Mem. in Support of OOIDA's Mot. for Award of Att'y Fees and Expenses at 15, Dec. 2, 2011, Docket No. 346.)The rates sought by OOIDA are current billing rates, not the rates its attorneys would have billed at the time the charges were incurred. (*Id.* at 17–18.)

In support of the reasonableness of its fees, OOIDA submitted an affidavit from Timothy R. Schupp, a member of the Minnesota bar and attorney at Gaskins Bennett Birrell & Schupp. (Aff. of Timothy R. Schupp, Dec. 2, 2011, Docket No. 349.)Schupp stated that the rates OOIDA seeks are "reasonable hourly rates in the Minneapolis/St. Paul legal community for lawyers and paralegals of similar levels of talent and experience handling a complex lawsuit."(*Id.* ¶ 12.) Schupp is qualified to opine on the reasonableness of OOIDA's fees, and the Court gives his opinion substantial weight. Moreover, rates as high as $600 per hour for senior, experienced attorneys have recently been approved by the courts of Minnesota. *See Schaub,* 2011 WL 3664565, at *3 (citing *Madison v. Willis,* No. 09–930, 2011 WL 851479, at *1 & n.4 (D.Minn. Mar. 9, 2011)) (approving rates ranging from $180–$600 per hour); *see also King v.. Turner,* No. 05–388, 2007 WL 1219308, at *2 (D.Minn. Apr. 24, 2007) (approving rate of $500 per hour). The Court finds that the rates sought by OOIDA are reasonable in this community, particularly because the case involved an issue of first impression and because many of OOIDA's attorneys have significant experience. Further, the Court finds that billing for current rates

is appropriate "to account for delay in payment."*See Schaub,* 2011 WL 3664565, at *2 (citing *Missouri v. Jenkins,* 491 U.S. 274, 283 (1989)).

### III. SETTLEMENT OFFERS

The Court must next determine if it is appropriate to cut off OOIDA's attorneys' fees due to Supervalu's settlement offers. A district court may reduce attorneys' fees because of a substantial settlement offer rejected by the party requesting fees. *Parke,* 368 F.3d at 1012–13."[A]n offer is substantial if ... the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party."*Id.* (quoting *Moriarty,* 233 F.3d at 967). A district court should not automatically deny fees incurred after a settlement offer. *Cole v. Wodziak,* 169 F.3d 486, 487 (7th Cir.1999). But the Court may consider the rejection of a substantial settlement offer in determining the reasonableness of fees. *See, e.g., id.;Moriarty,* 233 F.3d at 967 ("Substantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney's fees, even where Rule 68 does not apply"); *Sheppard v. Riverview Nursing Ctr., Inc.,* 88 F.3d 1332, 1337 (4th Cir.1996); *Owner–Operator Indep. Drivers Assoc. v. Mayflower Transit, Inc.,* 659 F.Supp.2d 1016, 1021 (S.D.Ind.2009).

### A. Pre–Litigation Offers

Supervalu claims that OOIDA should recover no fees because Supervalu made an offer to stop its

EXHIBIT 4 MOHRMAN DECLARATION

CASE 0:19-cv-00358-WMW-HB   Doc. 49-4   Filed 05/18/20   Page 8 of 22

Owner Operator Independent Drivers Ass'n, Inc. V...., Not Reported in...

2012 WL 6760098

allegedly offending practices before OOIDA filed its complaint. OOIDA denies that Supervalu made such an offer. The Court will not reduce OOIDA's award on this basis because the record contains no documentation about the content or even the existence of this offer. Particularly because Supervalu's August 2007 offer (well after OOIDA brought suit) did not contemplate reducing Supervalu's insurance requirements to the same level as federally-mandated insurance requirements, the Court finds there is insufficient evidence to conclude that Supervalu made an offer to do so prior to the filing of the complaint. Accordingly, the Court will not reduce OOIDA's attorneys' fees due to this alleged offer.

**B. September 2007 Settlement Offers**

**\*8** Supervalu also contends that the Court should not award attorneys' fees in view of its September 2007 settlement offers, which Supervalu contends were substantially similar to the final settlement. In these offers, Supervalu offered to accept a consent decree, with no expiration date. This consent decree would have obligated Supervalu, with some exceptions, not to require more than the federally-mandated insurance amount. Although these offers were similar to the final settlement, the Court finds that they were not "substantial" settlement offers. Most importantly, unlike the final settlement, they contained specific escape clauses allowing Supervalu to change its insurance requirement when, for example, one of Supervalu's insurers required it to do so. The final judgment, in contrast, only allowed Supervalu to change these requirements with prior approval of the Court and provided no specifically-enumerated instances when Supervalu is allowed to change its insurance requirements. [10] The final judgment is thus of greater benefit to OOIDA than the September 2007 offers because it gives OOIDA the ability to challenge **any** suggested modification of the injunction and because OOIDA was concerned that the exceptions outlined in the September offers were likely to occur . [11] Furthermore, in the September 2007 offers, Supervalu did not offer the same conditions for attorneys' fees and appeal rights that existed in the final settlement: Supervalu offered only $100,000 in attorneys' fees or to leave the fees unresolved as a "Magistrate Judge Graham issue." [12] The Court finds that Supervalu's September 2007 offers were thus not

roughly equal to or more than the relief that OOIDA ultimately received, *see Parke,* 368 F.3d at 1012–13, and a reduction in fees is not warranted on this basis.

[10]   Here, the parties agreed to the entry of judgment and there are no specific standards set forth in the agreement for the modification of the judgment. The Court finds that the injunction, as a final judgment, could be lifted pursuant to Federal Rule of Civil Procedure 60(b)(5).*See, e.g., Horne v. Flores,* 557 U.S. 433, 447 (2009) (outlining standards for modifying injunctions).

[11]   For example, OOIDA was concerned that Supervalu's insurers were likely to request that Supervalu increase its insurance requirements.

[12]   It is unclear what it meant to leave this matter as a "Magistrate Judge Graham issue."

**C. January 2008, February 2008, and June 2008 Settlement Offers**

Supervalu next maintains that the Court should not allow attorneys' fees accruing after the January and February 2008 settlement offers. The Court disagrees. There is no contemporaneous documentation of Supervalu's offers at the settlement conference in January 2008. Furthermore, there is no evidence that Supervalu or the Magistrate Judge sent the February 2008 settlement offer to OOIDA. The Court also declines to cut off OOIDA's fees after the June 2008 settlement proposal that Magistrate Judge Graham drafted because there is no evidence to suggest that OOIDA knew which portions of the settlement proposal were acceptable to Supervalu. It would be inequitable to reduce OOIDA's fees because of a settlement proposal that Supervalu did not make.

**D. July 1, 2008 Offer**

The Court **will** cut off OOIDA's fees after July 1, 2008, because the substance of Supervalu's February 1, 2008, settlement letter—in particular, Supervalu's offer regarding its insurance requirements—was communicated to OOIDA on that date [13] and was substantially the same as the final settlement. The letter indicates Supervalu was prepared to offer a settlement to OOIDA that included virtually all of the elements in the final settlement. Supervalu's proposal offered to keep Supervalu's insurance requirements at the federally-mandated minimums—unless conditions

CASE 0:19-cv-00358-WMW-HB    Doc. 49-4    Filed 05/18/20    Page 9 of 22

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

existed that would allow Supervalu to seek a modification of the agreement had its terms been entered by a Court—and offered to submit the attorneys' fees issue to the Court. The settlement offer also provided for manual hand jacks to accommodate drivers in unloading their trucks, a significant benefit not included in the final settlement. [14] In short, the July 1, 2008, offer was a substantial settlement offer that the Court finds warrants a reduction in fees. There might be cases where the legal and factual issues were close enough that continuing litigation was beneficial to the prevailing party, or where other factors might weigh against a reduction in fees, but the Court finds that this is not such a case. Attorneys' fees accumulating after the rejection of this substantial offer provided "minimal benefit" to OOIDA, *see Moriarty,* 233 F.3d at 967, and the Court thus concludes that declining to award fees after July 1 is appropriate.

[13]    OOIDA admitted that it learned of Supervalu's February 1 offer regarding its insurance requirements on July 1, 2008. Although there is no transcript of the July 1 hearing, based on the evidence before it, the Court finds that Supervalu's offer to submit attorneys' fees to the Court and to provide hand jacks was also communicated to OOIDA on July 1. (*See* Wells Letter, Ex. 14 at 6–7 (the Magistrate Judge's proposal including these elements).)

[14]    As noted above, the Court had previously dismissed OOIDA's claims regarding Supervalu's failure to provide adequate unloading equipment. *OOIDA III,* 2009 WL 799614, at *9.

**\*9** OOIDA claims that the ultimate settlement was preferable to this July 2008 offer because it included a right to appeal. But the Court finds the appeal rights of limited benefit considering the overall circumstances, including that OODIA had a limited chance of success on appeal, as its loss before the Eighth Circuit demonstrated. Furthermore, the slight benefit of the inclusion of appeal rights is outweighed by what was lost in the final settlement, namely Supervalu's offer to include hand jacks to assist drivers in unloading.

OOIDA also argues that Supervalu's settlement offer was not "substantial" because it offered the entry of a consent decree and not an injunction. The Court finds no merit in this argument for two reasons. First,

a consent decree is often functionally akin to—and often explicitly includes—an injunction. [15] Second, the record does not suggest that Supervalu's offer of a consent decree was a barrier to settlement. OOIDA did not mention this issue when sending updates on settlement discussions to the Magistrate Judge, and, on August 14, 2007, OOIDA itself suggested the entry of a consent decree. Accordingly, the offer of a consent decree was substantially similar to the ultimate settlement.

[15]    *See, e.g., United States v. City of Hialeah,* 140 F.3d 968, 974 (11th Cir.1998) (observing that refusal to enter a Title VII consent decree has the practical effect of refusing an injunction); *Hurley v. Coughlin,* 158 F.R.D. 22, 29 (S.D.N.Y.1993) ("A consent decree is no more than a settlement that contains an injunction."); Fredric C. Tausend & David H. Binney, *Consent Judgments, Generally,*5 Bus. & Com. Litig. Fed. Cts. § 50:20 (3d ed. 2011) ("A consent judgment, or a 'consent decree' entered as judgment, is a settlement agreement between litigants taking the form of a judgment of the court, sometimes for money but often for injunctive relief.").

OOIDA also claims, for the first time in its sur-sur-reply brief, that Supervalu's offers were not true "offers" because of the nature of class action litigation. [16] The Court finds no merit in this argument. OOIDA has identified no cases holding that a defendant cannot "offer" a settlement simply because a case involves claims that have been or could be certified as a class. *See Parke,* 368 F.3d at 1012–13 (contemplating that a settlement of a class action claim could occur prior to the certification of the class). Furthermore, it is apparent from the record that OOIDA was willing to settle before and during litigation and that the barrier was the **terms** of settlement Supervalu offered and not Supervalu's lack of authority to tender a true offer. Accordingly, the Court finds that the July 1, 2008, settlement offer was substantial and declines to award fees after that date.

[16]    Specifically, OOIDA claims that, until a class was certified, OOIDA did not have the authority or capacity to make a contract. Further, OOIDA argues that, after the class was certified, OOIDA had the authority to negotiate but still could not

EXHIBIT 4 MOHRMAN DECLARATION

CASE 0:19-cv-00358-WMW-HB   Doc. 49-4   Filed 05/18/20   Page 10 of 22
Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

make a contract because it needed the Court's approval to do so.

## IV. DEGREE OF SUCCESS

The Court must next determine the amount of attorneys' fees that are reasonable to award OOIDA. The two issues here are the relatedness of the claims and the plaintiff's overall success. "The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole."*Jenkins,* 127 F.3d at 716.First, the Court must analyze the relatedness of claims. In cases where a plaintiff loses claims that are unrelated to those the plaintiff has won, the Court must treat the unrelated claims as if they were separate cases and cannot award fees based upon them. *Id.* However, if all of the claims "involve a common core of facts or are based on related legal theories[,]"*Emery v. Hunt,* 272 F.3d 1042, 1046 (8th Cir.2001) (internal quotation marks and citation omitted), the district court should not view the action as a series of discrete claims but "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation [,]"*Hensley,* 461 U.S. at 435.

**\*10** If claims are related, then, the Court must determine the overall success of those claims and, if there was some lack of success, the reduction in fees that is warranted as a result. Although a Court may reduce fees where a plaintiff has limited success, "[w]here a plaintiff ... has won substantial relief [, he] should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."*Id.* at 440.Still,

> If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the

case with devotion and skill. Again, **the most critical factor is the degree of success obtained.**

*Id.* at 436 (emphasis added). If it is appropriate for the court to reduce fees due to limited success, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."*Id.* at 436–37.

### A. Related Claims

The Court must first determine if OOIDA's complaint included multiple unrelated "claims." [17] As stated above, "[c]laims are related, and hence deserving of compensation, if they involve a common core of facts or are based on related legal theories."*Emery,* 272 F.3d at 1046 (internal quotation marks omitted)."In assessing whether claims are so related that the fees cannot practicably be severed, one consideration is whether the types of relief requested under the various claims are similar or have differing purposes."*Kennedy Bldg. Assocs. v. Viacom, Inc.,* 375 F.3d 731, 748 (8th Cir.2004) (internal quotation marks omitted) . [18] Another consideration is whether the claims seek relief for "essentially the same course of conduct."*Zabkowicz v. W. Bend, Co.,* 789 F.2d 540, 551 (7th Cir.1986) (internal quotation marks omitted). [19]

[17]   Although ascertaining whether a particular action presents one or more "claims" is often difficult, *see Gen. Acquisition, Inc. v. GenCorp, Inc.,* 23 F.3d 1022, 1028 (6th Cir.1994), because the parties agree that this case involves more than one "claim," the Court will move directly to consider whether the claims are related.

[18]   The Eighth Circuit has held, for example, that claims of assault and battery, outrage, negligent retention, and Title VII violations were related for the purposes of attorneys' fees where they shared a common core of facts and all arose out of alleged sexual harassment of the plaintiff. *Wal–Mart Stores, Inc. v. Barton,* 223 F.3d 770, 773 (8th Cir.2000).

[19]   As a preliminary matter, OOIDA admits that its claim regarding Supervalu's requirement

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

CASE 0:19-cv-00358-WMW-HB    Doc. 49-4    Filed 05/18/20    Page 11 of 22

2012 WL 6760098

that drivers use palletized goods, (see Am. Compl. ¶ 3(a)-(f)), was separate and unsuccessful and that time slips regarding this claim were inappropriately included in the billing records submitted to the court. OOIDA has submitted a supplementary affidavit identifying six records erroneously submitted, for a total of 4.3 hours of time with a value of $2,128.50. (Decl. of Paul D. Cullen, Sr., Jan. 27, 2012, Docket No. 361.)Because the parties agree that the Court should exclude this time, the Court will do so.

Supervalu argues that OOIDA may not recover for time spent on unsuccessful § 14103(a) claims because these claims were unrelated to OOIDA's § 14103(b) claims. The Court disagrees. OOIDA's claim that Supervalu's insurance requirement was an unlawful attempt to coerce drivers to use lumpers under § 14103(b) was closely related to the § 14103(a) question of whether Supervalu's insurance requirements were appropriate and reasonable. The evidence and facts for these claims were similar. Also, OOIDA sought declaratory and injunctive relief for both claims. Thus, these claims are related. See Schaub, 2011 WL 3664565, at *4 (considering claims to be related that involve similar factual circumstances and legal theories).

Supervalu also contends that OOIDA cannot recover fees for time spent pursuing restitution for its § 14103 claims. However, "a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time."Hensley, 461 U.S. at 435 n.11;see Sturgill v. United Parcel Serv., Inc., 512 F.3d 1024, 1036 (8th Cir.2008) (holding that attorneys' fees were appropriate even though plaintiff did not obtain punitive damages or injunction, in light of other substantial relief received). The Court finds that OOIDA can recover for the time spent pursuing its request for restitution under § 14103 because that claim arose out of the same factual circumstances and was a related legal theory to its claims for other relief.

*11 In addition, the Court notes that the two counts in the complaint—for violations of § 14103 and unjust enrichment—both alleged that Supervalu violated § 14103 through forcing drivers to hire lumpers. All of OOIDA's theories and requests for relief challenged Supervalu's alleged attempts to force

truckers to hire lumpers. In sum, then, all of OOIDA's claims are related. [20] See Shrader v. OMC Aluminum Boat Grp., Inc., 128 F.3d 1218, 1221 (8th Cir.1997) (finding claims interrelated where there were "closely related issues of fact"). Because OOIDA's claims were premised upon a common core of facts and related legal theories, the Court finds that they are related claims. As explained below, however, the Court will reduce OOIDA's fees because of its lack of success.

[20]     As noted above, however, the Court will assume without deciding that the six records identified by OOIDA regarding palletized goods addressed a separate claim, given the agreement of the parties on this issue. The Court has excluded from the fee award amounts associated with those claims. Supervalu hypothesizes that OOIDA did not properly document all of the time spent on the palletized goods issue and thus requests a further reduction. However, (1) the Court finds no evidence that this improper documentation occurred, (2) to the extent that some of OOIDA's records may not have documented time spent on the palletized goods issue, Supervalu has not shown that this issue was unrelated and based on a separate nucleus of operative facts from OOIDA's other claims, and (3) even if improper documentation occurred, no further reduction in fees is warranted on this basis because the Court has substantially reduced OOIDA's overall fees for other reasons. (See Part IV.B, infra.)

**B. Level of Success**

If a plaintiff has only partial or limited success, a reduction in fees may be appropriate, Hensley, 461 U.S. at 436, and if a plaintiff is not successful, the Court may award no fees. To determine the amount of fees due, the Court must ask whether OOIDA achieved "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]"Id. at 434;see also Wal–Mart Stores, Inc. v. Barton, 223 F.3d 770, 772 (8th Cir.2000).

The Court finds that OOIDA had limited success in this action. [21] Many of OOIDA's theories and requests for relief were unsuccessful, including two important goals of OOIDA: its requests for restitution and its theory that § 14103(a) was immediately violated when a shipper required drivers to use lumpers and refused to pay for it. The importance of these issues

EXHIBIT 4 - MOHRMAN DECLARATION

CASE 0:19-cv-00358-WMW-HB    Doc. 49-4    Filed 05/18/20    Page 12 of 22

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

is demonstrated by OOIDA's settlement demands and litigation strategy, which prioritized them, and Herrick–Stare's statements to the press after the filing of this action. (See First Wells Decl., Ex. A.) That the ultimate settlement was conditioned on OOIDA's right to appeal this Court's adverse rulings regarding § 14103(a) and the right to restitution further demonstrates the centrality of these issues. When the case settled, OOIDA was left with only declaratory and injunctive class claims under § 14103(b). Still, OOIDA **was** successful in obtaining a judicially enforceable injunction against Supervalu, with limited opportunity for the injunction to be lifted, and obtained the right to seek attorneys' fees without a cap. The Court finds that, while OOIDA's success warrants a fee award, it was only partial or limited success given that OOIDA did not prevail on some of the largest and most intensely-disputed aspects of the litigation.[22]

[21]    Although the Court stated at the time of settlement that "the class could not reasonably have expected to receive significantly more injunctive relief from the court after a trial than the Proposed Injunction would provide[,]" this was only because the Court had already dismissed many of OOIDA's claims. (See Order ¶ 16, Sept. 30, 2009, Docket No. 318.)

[22]    Supervalu also claims that the Court should deny OOIDA recovery of fees for the time it spent pursuing monetary relief because the applicable fee-shifting statute provides only for the award of "a reasonable attorney's fee under this section."49 U.S .C. § 14704(e). And "this section," 49 U.S.C. § 14704, does not specifically authorize a claim for monetary relief against a receiver like Supervalu. The Court is not convinced by this argument because of the near impossibility in many instances of separating out fees for different types of recovery under the same claim. Even if the Court accepted this argument, however, the Court finds that its reduction of OOIDA's fees by seventy-five percent adequately addresses the issue by accounting for a lack of success regarding OOIDA's request for monetary relief.

Given the many unsuccessful aspects of OOIDA's claims, the Court finds that a significant fee reduction is warranted for a lack of success on certain issues, causing the hours extended to be unreasonable in relation to the results obtained. The Court finds an hour-by-hour reduction to be impractical because of the long history of the case, the number of hours billed, and the interrelatedness of the legal theories and requests for relief. Accordingly, the Court will make the equitable judgment to "reduce the award to account for limited success" rather than "attempt to identify specific hours that should be eliminated[.]"See *Schultz v. Amick,* 955 F.Supp. 1087, 1113 n.16 (N.D.Iowa 1997) (quoting *Hensley,* 461 U.S. at 436–37). The Court will exercise its discretion to reduce OOIDA's overall fee award by **seventy-five percent.**

## V. OTHER CHALLENGES TO ATTORNEYS' FEES

**\*12**  Supervalu has raised numerous other challenges to OOIDA's requests for attorneys' fees, addressed in turn below.

### A. Staffing and Delegation

Supervalu claims that OOIDA has overstaffed and "overlawyered" this matter by relying on eight different attorneys and ten paralegals in Washington, D.C. A prevailing party must exercise "billing judgment" in the context of a fee request, making "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."*Hensley,* 461 U.S. at 434.The mere use of a large number of attorneys or paralegals, however, does not in itself establish that hours are excessive. See, e.g., *I–Systems., Inc. v. Softwares, Inc.,* Civ. No. 02–1951, 2005 WL 1430323, at *12 (D.Minn. Mar. 7, 2005) (awarding fees to plaintiffs who had nine attorneys and six support staff work on an action). Rather, it must be apparent that the use of the number of staff is unreasonable.

Supervalu points specifically to OOIDA's class certification motion as involving an unreasonable number of staff because seven lawyers and three paralegals billed time related to this motion. But Supervalu does not point to specific time entries that it holds out as duplicative or unnecessary, and the Court finds none. In fact, OOIDA's records show that the amount of lawyers involved in the class certification might have saved fees because junior attorneys performed tasks such as research.[23]

EXHIBIT 4 - MOHRMAN DECLARATION

**CASE 0:19-cv-00358-WMW-HB**  Doc. 49-4  Filed 05/18/20  Page 13 of 22

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

23    For two examples, see OOIDA's billing records category "Class Certification" in which Kelly Vail, who billed at $285 per hour, performed legal research on April 10, 2006 and on August, 11, 2006. (OOIDA's Time R. by Category at 3–6, Dec. 30, 2011, Docket No. 355–1 .)

Supervalu also argues that Herrick–Stare's 1,562 hours spent on this matter demonstrates that he failed to delegate work properly. Specifically, Supervalu argues that Herrick–Stare ought not to have performed tasks such as legal research, which could have been performed by junior attorneys.[24] The Court finds that none of these hours was redundant or unnecessary for several reasons. First, an attorney cannot practice without performing legal research. Even attorneys with years of experience must review case law. *See U.S. ex rel. Thompson v. Walgreen Co.,* 621 F.Supp.2d 710, 715 (D.Minn.2009); *see also Am. Broad. Cos. v. Ritchie,* Civ. No. 08–5285, 2011 WL 665858, at *9 (D.Minn. Feb. 14, 2011) (allowing an award of attorneys' fees for "time-consuming" legal research). Second, Herrick–Stare performed less research than the attorneys and paralegals working under him on this matter (54.5 hours compared with a total of 125.9 hours of legal research before July 1, 2008). Further, OOIDA's time entries do not show duplication of effort in legal research. *See Rural Water Sys. No. 1 v. City of Sioux Ctr., Iowa,* 38 F.Supp.2d 1057, 1066 (N.D.Iowa 1999), *aff'd sub nom.Rural Water Sys. No. 1 v. City of Sioux Ctr .,* 202 F.3d 1035 (8th Cir.2000) (reducing the award for hours billed for performing legal research where the hours billed were duplicative). Instead, the time entries show delegation. For example, on the class certification motion, HerrickStare met with junior attorney Kelly Vail to discuss her research.[25] Therefore, the Court finds that the hours spent conducting legal research do not merit reduction solely because a senior attorney performed the research.[26]

24    Supervalu cites as an example a time entry from June 29, 2006, where Herrick–Stare spent 2.2 hours researching case law and billed at $405 per hour. The Court has reviewed the 262 pages of billing records, and finds that, in total, before July 1, 2008, The Cullen Law Firm billed approximately 125.9 hours for legal research. (*See* OOIDA's Time R. By Category,

Docket No. 355–1 at 106–15.)Records include: "1/4/2007: Confer at length with Amy Lloyd re whether restitution requires damages, i.e. is a driver who was reimbursed properly part of the class? Research re Restatement of Restitution and Minnesota case law re collateral source rule. Draft email to Amy Lloyd re research results, $1,039.50," (OOIDA's Time R. at 14), and "1/25/2008: Research re concept of "right" in 8th Cir. Jurisprudence, $247.50,"(*id.* at 114). Herrick–Stare spent approximately 54.5 hours performing legal research during that period and billed each of those hours at $495.

25    See "Class Certification" in which Herrick–Stare conferred with Vail about her research on July 18, 2006. (OOIDA's Time R. at 4.) Vail, not Herrick–Stare, performed six hours of research about case law on July 18, 2006. (*Id.* at 5.)

26    Supervalu similarly argues that OOIDA performed redundant work in researching local rules regarding electronic filing procedures. It argues that the local counsel of Koll Morrison Charpentier & Hagstrom retained by The Cullen Law Firm knew these rules and thus the research was unnecessary. (Supervalu cites one instance of an attorney spending .3 hours reviewing local rules and one instance of a paralegal spending 1.2 hours researching local rules, (Supervalu's Mem. in Opp'n to OOIDA's Mot. for Award of Att'y Fees and Expenses at 39, Jan. 6, 2012, Docket No. 356).) Because local counsel may have very well needed to research these rules, the Court finds that these time entries are not duplicative.

**\*13** Finally, Supervalu contends that the amount of time OOIDA spent on its opposition to Supervalu's motion to compel and on a letter for reconsideration was excessive. Once again, though, Supervalu points to no specific examples of redundant or excessive time entries on these issues. The Court finds that OOIDA's hours spent on all aspects of this action before July, 1, 2008, including the motion to compel and the letter for reconsideration, were appropriate. The Court's overall reduction in attorneys' fees reflects OOIDA's limited success in this matter, but the Court will not reduce the award further for unnecessary hours.

**B. Discovery**
The Court must decide if OOIDA can recover fees associated with discovery. Supervalu argues that

EXHIBIT 4 - MOHRMAN DECLARATION

CASE 0:19-cv-00358-WMW-HB    Doc. 49-4    Filed 05/18/20    Page 14 of 22

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...
2012 WL 6760098

OOIDA's tactics during discovery increased the fees of both parties, while OOIDA contends just the opposite. (Supervalu's Mem. in Opp'n at 35; OOIDA's Mem. in Support of OOIDA's Mot. for Award of Att'y Fees and Expenses at 14, Dec. 2, 2011, Docket No. 346.)Specifically, Supervalu states that because OOIDA opposed a stay of discovery on November 26, 2007 (*see* OOIDA's Time R. at 196), OOIDA should not be able to recover fees for discovery after that point (Supervalu's Mem. in Opp'n at 35). Because the settlement offer that OOIDA eventually accepted was not on the table as of November 26, hours expended in preparing for trial and conducting discovery after that date were reasonable. Therefore, the hours OOIDA expended in opposition to a stay of discovery are compensable.

**C. Trial Preparation**

Like the amount requested for time spent on discovery, the amount requested for trial preparation is reasonable. Supervalu argues that OOIDA's trial preparation, which began on January 25, 2008 (OOIDA's Time R. at 244), was unnecessary in light of a proposed settlement. As explained above, however, the Court finds that Supervalu did not offer a substantial settlement until July 1, 2008. Therefore, OOIDA can recover for hours billed under the category of "Trial Preparation" up until July 1 as it was reasonable for OOIDA to prepare for trial until that date.

**D. Hours Billed for Traveling**

The Court must determine if hours billed for travel are compensable. A court may reduce fees for travel

time if the Court determines that full compensation would be unreasonable under the facts of the case. *See McDonald v. Armontrout,* 860 F.2d 1456, 1463 (8th Cir.1988). Supervalu contends that idle travel time is not typically billed to a client in the Minneapolis legal market. (First Wells Decl. ¶ 15.) In contrast, OOIDA states that reimbursement for attorney travel time "varies greatly by client" in the Twin Cities legal market. (Decl. of Andrew Morrison at 2, Mar. 6, 2012, Docket No. 371.)The Court notes that, even if Supervalu is correct that idle travel is not "typically" billed to a client, it might be billed to a client under certain circumstances. Further, irrespective of the prevailing travel-billing norm in Minneapolis, hours that are "excessive" are not recoverable. *Hensley,* 461 U.S. at 434.

**\*14** The Court has carefully reviewed the 262 pages that detail OOIDA's billing records. Of the entries before July 1, 2008, the Court has found thirty-seven entries of an attorney billing for doing nothing more than traveling. The Court declines to find that the hours spent traveling for this case are excessive, as explained below. However, the Court finds that the rates charged for this time are unreasonably high, particularly given the number of hours billed for traveling, the rates charged, and the fact that other work was not completed during this time. Accordingly, the Court finds that a reduction of the amount billed for travel alone is reasonable under the facts of this case. The following are the dates, descriptions, and total dollar amount charged for an attorney billing $495 or $435 per hour for traveling:

| Date | Amount | Description |
|---|---|---|
| 2/8/2006: | $3,217.50 | Travel to St. Paul for Fed.R.Civ.P. 26(f) conference, |
| 2/9/2006: | $2,227.50 | Travel to D.C. |
| 2/22/2006: | $1,831.50 | Travel to St. Paul, MN for scheduling conference |
| 2/23/2006: | $2,326.50 | Travel to D.C. |
| 4/26/2006: | $2,970.00 | Travel to Minneapolis |
| 4/27/2006: | $2,227.50 | Travel to D.C. |
| 7/19/2006: | $2,227.50 | Travel to Harrisburg, PA for deposition of Pete Swan |

EXHIBIT 4 - MOHRMAN DECLARATION

| 7/25/2006: | $2,722.50 | Travel to D.C. |
| 8/2/2006: | $2,722.50 | Travel to Minneapolis |
| 8/3/2006: | $495.00 | Travel to Minneapolis airport |
| 8/3/2006: | $2,227.50 | Travel to D.C. |
| 10/31/2006: | $2,326.50 | Travel to Minneapolis |
| 11/1/2006: | $2,970.00 | Travel to D.C. |
| 11/27/2006: | $3,217.50 | Travel to Minneapolis for hearing |
| 11/28/2006: | $2,475.00 | Travel to D.C. |
| 12/17/2006: | $3,217.50 | Travel to Minneapolis for hearing re motion for class certification |
| 12/18/2006: | $1,732.50 | Partial travel from hearing |
| 3/7/2007: | $2,475.00 | Travel to Minneapolis and to courthouse |
| 3/7/2007: | $1,980.00 | Travel to D.C. |
| 7/15/2007: | $2,425.50 | Travel to Minneapolis for scheduling conference |
| 7/16/2007: | $2,821.50 | Travel to D.C. |
| 9/5/2007: | $2,821.50 | Travel to Minneapolis for deposition of Tom Hagen |
| 9/6/2007: | $2,722.50 | Travel to D.C. from deposition in Minneapolis of Tom Hagen |
| 9/9/2007: | $1,584.00 | Travel to Minneapolis for settlement conference |
| 9/11/2007: | $2,227.50 | Travel to D.C. |
| 9/11/2007: | $1957.50 | Return to Washington from settlement conference in St. Paul [27] |
| 12/10/2007: | $2,326.50 | Travel to St. Paul for hearing re Supervalu's motion to compel |
| 12/11/2007: | $2,326.50 | Travel to D.C. |
| 12/19/2007: | $2,722.50 | Travel to Minneapolis |
| 12/20/2007: | $2,574.00 | Travel to D.C. |
| 1/6/2008: | $2,227.50 | Travel to Minneapolis for settlement conference and deposition |

EXHIBIT 4 MOHRMAN DECLARATION

CASE 0:19-cv-00358-WMW-HB   Doc. 49-4   Filed 05/18/20   Page 16 of 22

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

| 1/8/2008: | $2,871.00 | Travel to Washington, D.C. |
| 5/26/2008: | $2,871.00 | Travel to Providence, R.I. |
| 5/27/2008: | $2,871.00 | Travel to Washington, D.C. |
| 5/29/2008: | $2,475.00 | Travel to Chicago for deposition of Michael Pakter |
| 6/3/2008: | $1,485.00 | Travel to Harrisburg |
| 6/4/2008: | $1,485.00 | Travel to Washington, D.C. |
| 6/9/2008: | $2,821.50 | Travel to Minneapolis |

FN27. Cullen, Jr. billed this entry at his rate of $435 per hour. The other thirty-six entries in this section were billed at $495 per hour.

(OOIDA's Time R.)

These thirty-eight entries equal $91,206.00. Because OOIDA claimed an excessive billing rate of $495 or $435 per hour for this time, the Court will reduce these entries by fifty percent before the Court applies the further seventy-five percent reduction that will be applied to all of OOIDA's hours. By reducing the billing rate to fifty percent, the rates change to $247.50 and $217.50. *See* *McDonald,* 860 F.2d at 1463 (upholding a fifty percent reduction in hourly billing for travel time). The fees billed for time spent traveling, then, are reduced to $45,603.00 ($91,206.00 divided in half).

**\*15** In five additional entries totaling $14,977.50, OOIDA's attorneys have billed their travel time along with other tasks.[28] Because of this block billing, the Court cannot determine the amount of travel time in each entry. Incomplete or imprecise billing records prevent the Court from exercising meaningful review and are grounds for reducing a fee award. *Hensley,* 461 U.S. at 433; *see* *H.J. Inc. v. Flygt Corp.,* 925 F.2d 257, 260 (8th Cir.1991). As such, the Court will discount these entries at the same rate as that of the purely travel time discussed above. *See* *Miller v. Woodharbor Molding & Millworks, Inc.,* 174 F.3d 948, 950 (8th Cir.1999) (holding that a district court could institute a percentage reduction for inadequate documentation of attorneys' fees).

| [28] | 7/23/2006: | $4,455.00 | Travel to Dayton for deposition of Carl Schaefer. Confer with Carl Schaefer re issues, facts, and witness skills |
| | 7/24/2006: | $2,475.00 | Travel to Kansas City for depositions of Jim Johnston and Joseph Rajkovacz. Confer with both re facts, issues and witness skills |
| | 9/9/2007: | $1,957.50 | Travel to St. Paul for Supervalu settlement conference. Confer with Randy–Herrick Stare, Jim Johnston, Joe Rajkovacz, and Carl Schaefer on same |
| | 12/19/2007: | $3,697.50 | Travel to Minneapolis and review materials for Barbara Farrell's deposition. Attend same and assist Randall Herrick–Stare on same |
| | 12/20/2007: | $2,392.50 | Travel home from Barbara Farrell deposition in Minneapolis. Confer with Randall Herrick–Stare and Paul Cullen, Sr. on results of deposition, planning for settlement conference, and next litigation strategy |

EXHIBIT 4 - MOHRMAN DECLARATION

CASE 0:19-cv-00358-WMW-HB    Doc. 49-4    Filed 05/18/20    Page 17 of 22

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

(OOIDA's Time R.) The Court will reduce $14,977.50 by half, for a total of $7,488.75.

Supervalu argues further that travel would have been unnecessary in this action if the independent truck owner-operators had relied completely on local counsel in this matter. But The Cullen Law Firm has represented OOIDA for the last fifteen years in dozens of cases. (Second Herrick–Stare Aff. ¶ 17.) The firm's specialization in "motor carrier law" makes it the understandable choice of counsel for this matter. (Reply Mem. in Supp. of OOIDA's Mot. for Award of Attorney Fees and Expenses at 18, Jan. 27.2012, Docket No. 360.)The Cullen Law Firm has also shown that it possesses the "specialized knowledge and expertise" to bring a case such as this one. *Howard Johnson Int'l., Inc. v. Inn Dev., Inc.,* Civ. 07–1024, 2008 WL 2563463, at *1 (D. S.D. June 23, 2008). Accordingly, given the subject matter and the plaintiff, The Cullen Law Firm has satisfied its burden to show that it is a reasonable choice of counsel. *See Avalon Cinema Corp. v. Thompson,* 689 F.2d 137, 140–41 (8th Cir.1982) (stating that the party seeking the fees for out-of-town counsel has the burden to show that out-of-town counsel is necessary).

### E. Local Counsel

The Court must determine if the attorneys' fees of local counsel, the firm Koll Morrison Charpentier & Hagstrom, are recoverable. Andrew Morrison serves as local counsel in this case and billed many entries of less than one hour for "receiving and reviewing" documents that The Cullen Law Firm authored and submitted to this Court. The Court finds that the billing entries that Morrison submitted are reasonable. Morrison's billing, including time entries of less than half an hour for reviewing documents, are compensable because they include small time entries for reasonable and necessary tasks involved with local counsel's representation of OOIDA. *See Gonzalez v. Barnhart,* Civ. No. 01–499, 2002 WL 1839242, at *3 (D.Minn. Aug. 9, 2002) (awarding fees for time spent reviewing documents and performing "routine activities"); *see also Richemont Int'l, S.A. v. Clarkson,* Civ. No. 07–1641, 2008 WL 4186254, at *2 (D.Minn. Sept. 5, 2008) (awarding fees for local counsel). Therefore, the Court will award OOIDA $27,156.50 in fees for local counsel, minus the reduction for lack of success.

### F. Secretarial Tasks

**\*16** The Court must decide whether tasks performed by paralegals are compensable. The Court first must determine if the specific tasks in question are compensable. Second, the Court must determine if the tasks are compensable at the rate OOIDA submitted.

In question are tasks that Supervalu argues are secretarial in nature. Supervalu argues that, because some tasks here are secretarial in nature, they are not compensable. However, tasks such as "forwarding, copying, delivering, and indexing documents" can be compensable where the tasks are performed in a reasonable amount of time and at a reasonable billing rate. *I–Systems.,* 2005 WL 1430323, at *14.[29] Furthermore, paralegal work at market rates is compensable. *Weitz Co. v. MH Washington,* 631 F.3d 510, 535 (8th Cir.2011). As explained below, the Court finds that the entries here are reasonable because they are complex tasks appropriately performed by paralegals for a reasonable amount of time.

[29]    The Court will not go so far as to state that certain kinds of tasks may never be performed by paralegals or attorneys. To do so would ignore the realities of litigation and the varying resources of legal offices. The Court must instead consider the amount of time that lawyers and paralegals spent on certain tasks and determine the reasonableness of the rates they charged for such tasks.

First, in the "Docket Management" category of OOIDA's records, there are 115 entries. Each entry contains a task performed by a paralegal; ninety-three of the entries deal with managing and organizing pleadings. In complex litigation, it is reasonable that the specialized training of a paralegal is utilized to manage and organize these materials. Further, eighty-three of the 115 entries are for times of a half hour or less. The Court finds that the short amount of time spent managing and organizing pleadings at the lower billing rate of a paralegal does not warrant a reduction in the fees for managing a complex class action such as this one.

Next, under "Summation/Case Management," OOIDA seeks compensation for the time spent printing and organizing files.[30] As with the "Docket Management"

EXHIBIT 4 - MOHRMAN DECLARATION

CASE 0:19-cv-00358-WMW-HB    Doc. 49-4    Filed 05/18/20    Page 18 of 22

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

category, the "Summation/Case Management" category can generally be summarized as a paralegal organizing a complex database. These entries are billed by a paralegal with a much lower rate than an attorney. Cf. *I–Systems., 2005 WL 1430323 at * 14* (withholding attorneys' fees when clerical tasks were performed by an attorney). Therefore, OOIDA is able to recover fees for the hours billed in these categories.

[30]    "**Summation/Case Management** Brickell Paralegal .5 $70.00. Assist Jane with printing list of files from Progressive Logistics; prepare same for Jane. 7/13/2006."(OOIDA's Time R. at 223.)

"**Summation/Case Management** Brickell Paralegal .25 $35.00. Print latest and greatest Progressive Logistics monthly check/cash transactions report and summary for Kelli Vail; edit footnote on summary report. 8/14/2006."(OOIDA's Time R. at 226.)

In other entries, OOIDA seeks compensation for clerical tasks. Under "Daubert Motions," OOIDA has requested reimbursement for a paralegal to spend one half hour to "prepare and organize" travel arrangements for an attorney. (OOIDA's Time R. at 26.) HerrickStare contends that this entry was for packing "litigation bags." (Reply Mem. in Supp. at 23.) The Court does not decide whether this specific entry is compensable because the entry occurred after July 1, 2008.

**G. Billing Errors**

Finally, the Court will withhold from OOIDA fees that have been erroneously billed and acknowledged as such by OOIDA. OOIDA admits to two errors in its billing records. OOIDA submitted an erroneous record of 14.1 hours for Herrick–Stare on March 21, 2006. (OOIDA's Time R. at 60.) OOIDA acknowledges that the correct amount of time should have been .3 hours, not 14.1 hours. (Reply Mem. in Supp. at 21.) The difference in the fee calculation for that day is $6,831.00. OOIDA also acknowledged another billing error, a redundant time entry of 3.8 hours for Cullen, Jr. for November 9, 2007. (OOIDA's Time R. at 48–49.) OOIDA's award will not include this erroneously billed $1,653.00. Supervalu contends that there are likely more errors that exist in OOIDA's records.[31] Supervalu, however, has pointed to no further errors and the Court has found none.

[31]    Supervalu cites two examples of allegedly redundant billing, but the Court does not find the billing to be redundant. First, Supervalu argues that two time entries of Paul Cullen, Sr., with the same description on the same day must be redundant. (See Supervalu's Mem. in Opp'n at 40; OOIDA's Time R. at 3.) Next, Supervalu argues that similar entries from Paul Cullen, Jr., on consecutive days must be redundant. (See Supervalu's Mem. in Opp'n at 40–41; OOIDA's Time R. at 22.) But the Court finds Supervalu's arguments to be without merit. For the first time entry at issue, the Court has cross-checked the billing records of Cullen, Sr., with those of Herrick–Stare and determined that the two attorneys did in fact meet on that day for the amount of time listed in Cullen, Sr.'s two billing entries. For the second time entry at issue, the Court finds that the descriptions are not identical and that the amount of time spent on the motion over two consecutive days is not unreasonable.

**H. Conclusion on Attorneys' Fees**

**\*17**  After reviewing all of the billing records that OOIDA submitted, the Court awards the following attorneys' fees.[32] The attorneys' fees listed below are the compensable fees for hours billed before July 1, 2008 and before application of the seventy-five percent reduction. The categories listed below are those OOIDA utilized in its billing records.

[32]    The Court finds the entries not specifically discussed above to be reasonable.

| Category | Amount | |
|---|---|---|
| Class Certification: | $134,038.25 | |
| Correspondence: | $4,557.75 | |
| Counterclaim: | $5,734.50 | |
| Daubert Motion: | $–0– | |
| Depositions: | $83,007.58 | |
| Discovery, Defendants': | $70,508.50 | [33] |
| Discovery, Plaintiffs': | $56,443.35 | [34] |
| Docket Management: | $7,732.94 | |
| Expert Testimony: | $54,080.77 | |
| Fact Investigation: | $37,357.50 | |
| Legal Research: | $46,056.88 | |
| Letter on "Reasonableness" Issue: | $32,527.00 | |
| Motion for Summary Judgment, Defendant's: | $31,029.50 | |
| Motion for Summary Judgment, Plaintiffs': | $25,563.00 | |

EXHIBIT 4 - MOHRMAN DECLARATION

CASE 0:19-cv-00358-WMW-HB    Doc. 49-4    Filed 05/18/20    Page 19 of 22

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

| | |
|---|---|
| Motion to Compel, Defendant': | $48,032.00 |
| Motion to Compel, Plaintiffs': | $6,001.50 |
| Planning: | $16,072.50 |
| Pleadings: | $9,030.00 |
| Pre–Filing Activities: | $74,405.25 |
| Pre–Trial Motions: | $–0– |
| Rule 16: | $6,711.00 |
| Rule 26 Activities: | $42,542.00 |
| Settlement, Post–Complaint: | $70,761.87 |
| Settlement, Pre–Complaint: | $5,645.50 |
| Strike 11th Affirmative Defense: | $23,539.50 |
| Strike 8th Affirmative Defense: | $4,800.00 |
| Summation/Case Management: | $63,331.50 |
| Trial Preparation: | $1,176.50 |
| Total: | $960,686.64 |
| | $960,986.64 |
| | *x .25* |
| | = $240,171.66 |
| Minus | $2,128.50 (reduction for palletized loads) |
| Plus [$27,156.50 x .25] | $6,789.13 (local counsel) |
| [ ($45,603.00 + $7,488.75) x .25] | *$13,292.94* (hours billed during travel) = $258,105.22 for attorneys' fees. |

FN33. The Court has excluded from this category the hours that Cullen, Jr. erroneously billed on November 9, 2007.

FN34. The Court has excluded from this category the hours that Herrick–Stare erroneously billed on March 21, 2006.

## VI. COSTS

The Court must also address if OOIDA is entitled to recover costs. OOIDA seeks to recover costs under 49 U.S.C. § 14704(e), Federal Rule of Civil Procedure 54(d), and 28 U.S.C. § 1920. 49 U.S.C. § 14704(e), the Truth–in–Leasing Regulations of the Motor Carrier Act, requires a court to award "costs of the action." Federal Rule of Civil Procedure 54(d) states that "costs —other than attorney's fees—should be allowed to the prevailing party." "A prevailing party is presumptively entitled to recover all of its costs." *168th & Dodge, LP v. Rave Reviews Cinemas, LLC,* 501 F.3d 945, 958 (8th Cir.2007) (quotation omitted).

Normally, a court may not exceed the limitations on taxable costs enumerated in § 1920 absent contractual or explicit statutory authority to the contrary. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445 (1987) (concluding that § 1920 defines the term "costs" as it is used in Rule 54(d)).28 U.S.C. § 1920 provides in relevant part:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

**\*18** (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

In addition to the costs allowed by § 1920, a district court has the discretion to award costs as part of attorneys' fees that are considered "reasonable out-of-pocket expenses" that are "normally charged to a fee paying client," if a federal statute authorizes the specific expense. *Sturgill,* 512 F.3d at 1036;*see Richemont,* 2008 WL 4186254, at *2 (awarding reasonable expenses because the Lanham Act had been interpreted to allow reimbursement of expenses as part of attorneys' fees).

Here, the Court finds no statutory authorization for costs beyond those outlined in § 1920, and OOIDA cites no authority to the contrary. *See Owner–Operator Indep. Drivers Ass'n, Inc. v. Ledar Transp.,* Civ. No. 00–0258, 2009 WL 2170086, at *2 (W.D.Mo. July 20, 2009) (finding no statutory authority in 49 U.S.C. § 14704(e) that allows costs to be recovered beyond the costs specifically enumerated in § 1920). Therefore,

EXHIBIT 4 - MOHRMAN DECLARATION

CASE 0:19-cv-00358-WMW-HB    Doc. 49-4    Filed 05/18/20    Page 20 of 22

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

the Court will award only costs authorized by 28 U.S.C. § 1920.

OOIDA claims costs totaling $195,325.00. (Aff. of Randall Herrick–Stare at 2.) Of this, The Cullen Law Firm claims $82,808.63 in expenses from airfare, copying, couriers, court fees, facsimiles, faxes, Federal Express, hotels, imaging, local travel, meals, miscellaneous other expenses, PACER service, postage, publication, subpoenas, telephone, transcription, transportation, and Westlaw. Koll Morrison Charpentier & Hagstrom claims expenses totaling $1,295.12, from copying costs, a filing fee, witness fees, mileage and parking, delivery services, postage, and the fee for Motion for Admission *Pro Hac Vice.*Section 1920 allows for only five of these costs: copying, transcription fees, court fees, the fee for admission of attorney *pro hac vice,* and expert fees. Therefore, the Court will discuss only those five categories and will not award the rest of the costs requested. [35]

[35]    OOIDA submitted $16,709.96 in Westlaw expenses, and the Court will discuss that category briefly here. (OOIDA Expenses at 3.) "The Eighth Circuit has squarely held that such expenses may not be added to an attorney's fee award."*Richemont,* 2008 WL 4186254 at *3 (citing *Standley v. Chilhowee R–IV Sch. Dist.,* 5 F.3d 319, 325 (8th Cir.1993)).
    OOIDA argues correctly that computer-based research costs can be reimbursed under terms of a negotiated settlement.*See In re UnitedHealth Grp. Inc. S'holder Derivative Action,* 631 F.3d 913, 918 (8th Cir.2011). But computer-based research is not recoverable under a feeshifting statute. *See Standley,* 5 F.3d at 325.Here, OOIDA's application for attorneys' fees and expenses is based on the amount owed to it pursuant to a fee-shifting statute, 49 U.S.C. § 14704(e), and not the terms of a negotiated settlement specifically outlining the fees to which OOIDA is entitled. Therefore, electronic legal research costs are not recoverable.

### A. Copying Costs

OOIDA seeks $6,425 for copying costs from The Cullen Law Firm and $445 in copying costs from Koll Morrison Charpentier & Hagstrom. (OOIDA

Expenses, at 2, Dec. 2, 2011, Docket No. 347–11; Invoices of Koll, Morrison, Charpentier & Hagstrom, at 2, Dec. 2, 2011, Docket No. 348–2.)A court may award copying fees if they were incurred for items "necessarily obtained" for use in a case. 28 U.S.C. § 1920(4); *see also Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d 748, 763 (8th Cir.2006) In the present case, The Cullen Law Firm provides no information regarding the photocopies for which it seeks costs. The firm has not provided the cost per copy, the number of copies, the date copies were made, or the purpose of any of the copies. Similarly, Koll Morrison Charpentier & Hagstrom lists only the month in which the copies were made but offers no other information. The Court, therefore, cannot determine whether the copies were necessary for this case or if the charges associated with them were reasonable and accordingly will disallow these costs. *See Felder ex rel. Felder v. King,* Civ. No. 07–4929, 2011 WL 2174538, at * 4 (D.Minn. May 31, 2011) (disallowing photocopying costs where "the bare receipts ... gave no basis to determine which, if any, of these photocopies were necessarily obtained for use in the case") (internal quotation marks omitted).

### B. Transcription Fees

 *19  OOIDA seeks $11,803.42 in transcription fees for depositions. A court may award transcription fees if a deposition was "necessarily obtained for use in a case" and was not "purely investigative." 28 U.S.C. § 1920(2); *Smith v. Tenet Healthsystem SL, Inc.,* 436 F.3d 879, 889 (8th Cir.2006). OOIDA submits thirteen transcriptions that occurred before July, 2008, for a total of $11,050.42. (OOIDA Expense Detail R. at 24, Docket No. 347–12.)The Court will award these fees because the depositions occurred before the July 1, 2008 cut-off date, the depositions appear necessary, and it was reasonable before that date to continue discovery.

### C. Court Fees

OOIDA requests court fees of $100 for The Cullen Law Firm (OOIDA Expenses at 2) and $275 from Koll Morrison Charpentier & Hagstrom (Invoices of Koll, Morrison, Charpentier & Hagstrom at 172). The Court will award these fees because they are allowed under § 1920.

EXHIBIT 4 - MOHRMAN DECLARATION

**CASE 0:19-cv-00358-WMW-HB**     **Doc. 49-4**     **Filed 05/18/20**     **Page 21 of 22**

Owner Operator Independent Drivers Ass'n, Inc. v...., Not Reported in...

2012 WL 6760098

### D. *Pro Hac Vice* Fee

OOIDA requests a fee for Motion for Admission *Pro Hac Vice* of $25 as a cost to Koll Morrison Charpentier & Hagstrom. (Invoices of Koll, Morrison, Charpentier & Hagstrom at 144.) The Court will award this fee because it is allowed under § 1920. *See Craftsmen Limousine, Inc. v. Ford Motor Co.,* 579 F.3d 894, 898 (8th Cir.2009).

### E. Expert Fees

The Court must decide if OOIDA can recover costs for experts. "[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." *Crawford Fitting Co.,* 482 U.S. at 445; *see also Weitz,* 631 F.3d at 535. Under 28 U.S.C. § 1821(a)-(d), witnesses "in attendance ... before any person authorized to take his deposition ... shall be paid an attendance fee of $40 per day for each day's attendance" plus documented travel costs. Those travel costs are taxable as costs under 28 U.S.C. § 1920. *Id.* § 1821(c)(4). Because there is no other explicit statutory or contractual authorization for the taxation of expert fees, the Court finds that OOIDA can recover only the forty dollars per day authorized by 28 U.S.C. § 1821(a)(1). *See Porter v. McDonough,* Civ. 09–2536, 2011 WL 821181, at *2 (D.Minn. Mar. 2, 2011) (awarding forty dollars per day for expert witnesses).

OOIDA specifically seeks compensation for the time and expenses of its three experts: Craig Stanovich, Peter Swan, and Michael Pakter. (Stanovich Billing R., Dec. 2, 2012, Docket No. 347–7; Swan Billing R., Dec. 2, 2012, Docket No. 347–9; Pakter Billing R., Dec. 2, 2012, Docket No. 347–10.) The Court has reviewed the billing records of both the experts and OOIDA and finds that Stanovich testified at a deposition on May 27, 2008, Pakter testified at a deposition on May 30, 2008, and Swan testified at a deposition on June 4, 2008. (OOIDA's Time R. at 39; *Id.; Id.* at 40.) Because the experts are entitled to only forty dollars per day for a deposition, the Court will award OOIDA $120 for testimony at these depositions.

**\*20** OOIDA is also entitled to travel costs associated with these depositions. *See* 28 U.S.C. § 1821(c)(1)-(4). Stanovich incurred a travel cost of $55.56. (Stanovich Billing R. at 14–15.) This cost is awarded. The Court has located no other travel costs submitted for these experts and therefore will award none. [36]

> [36]    Local counsel Koll Morrison Charpentier & Hagstrom submitted an invoice dated May 4, 2009, that included costs for two witnesses: Farrell, $62.00; Hagen, $72.12. (Invoices of Koll, Morrison, Charpentier & Hagstrom at 43.) These costs are not recoverable because they were incurred after July 2008.

### F. Conclusion on Costs

The Court will award the following costs:

| | |
|---|---|
| Transcription Fees: | $11,050.42 |
| Court Fees: | $375.00 |
| *Pro Hac Vice:* | $25.00 |
| Expert Fees: | $120 + $55.56 |
| **Total:** | **$11,625.98** |

1. Plaintiffs' Motion for Award of Attorney Fees and Expenses [Docket No. 344] is **GRANTED in part** and **DENIED in part.**

2. Plaintiffs' request for attorney fees is **GRANTED** in the amount of $258,105.22.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

EXHIBIT 4 - MOHRMAN DECLARATION

3. Plaintiffs' requests for costs and expenses is **GRANTED** in the amount of $11,625.98.

It is **FURTHER ORDERED** that the parties are to show cause on or before twenty-five (25) days from the date of this Order why the Court should not unseal the Order and to specify any portion of the Order warranting redaction.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

End of Document

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT 4 MOHRMAN DECLARATION