# WESTLAW

🚩 **Distinguished by** Great Lakes Gas Transmission Ltd. Partnership v. Essar Steel Minnesota, LLC, D.Minn., August 13, 2015

📁 **Ewald v. Royal Norwegian Embassy**
United States District Court, D. Minnesota.  |  April 13, 2015  |  Not Reported in F.Supp.3d  |  2015 WL 1746375  *(Approx. 21 pages)*

Only the Westlaw citation is currently available.

United States District Court, D. Minnesota.

Ellen S. EWALD, Plaintiff,

v.

ROYAL NORWEGIAN EMBASSY, Defendant.

Civil No. 11–CV–2116 (SRN/SER).
|
Signed April 13, 2015.

## Attorneys and Law Firms

Sheila A. Engelmeier, Thomas E. Marshall, and Susanne J. Fischer, Engelmeier & Umanah, P.A., Minneapolis, MN, for Plaintiff.

Daniel G. Wilczek, Joel P. Schroeder, and Sean Sommermeyer, Faegre Baker Daniels LLP, Minneapolis, MN, for Defendant.

## ORDER ON ATTORNEY'S FEES AND COSTS

SUSAN RICHARD NELSON, District Judge.

*1 This matter is before the Court on the Petition for Attorney's Fees and Costs (the "Fee Petition") by Plaintiff Ellen Ewald [Doc. No. 336]. A hearing was held on the matter on February 24, 2015. Based on the file, memoranda, and arguments of counsel, Plaintiff's Motion for Fees and Costs [Doc. No. 336] is granted in part, and denied in part, as provided herein.

## I. BACKGROUND

This case arises out of a dispute concerning Plaintiff Ellen S. Ewald's employment with Defendant Royal Norwegian Embassy (the "Embassy") at the Honorary Norwegian Consulate in Minneapolis, Minnesota. Plaintiff filed a complaint in Hennepin County District Court on July 1, 2011 asserting employment-related claims against the Embassy and Gary Gandrud, the former Honorary Consul in Minneapolis. (Compl.[Doc. No. 1–1].) Defendants removed the matter to this Court pursuant to 28 U.S.C. § 1330 because of Norway's status as a foreign sovereign. (Notice of Removal [Doc. No. 1].) Shortly thereafter, Gandrud moved for his dismissal on grounds of immunity, which this Court granted. (Order of 1/26/12 [Doc. No. 18].) The Embassy subsequently moved for dismissal on Rule 12(b)(6) grounds, which this Court denied. (Order of 10/9/12 [Doc. No. 55].)

This case involved extensive litigation with the production of over 90,000 pages of documents, complicated by electronic searchability and language translation issues. (Marshall Aff. ¶ 19 [Doc. No. 338].) In addition, the parties engaged in vigorous motion practice, including Plaintiff's Motion to Amend the Complaint [Doc. No. 43], both parties filing motions for

EXHIBIT 9 - MOHRMAN DECLARATION

**SELECTED** TOPICS

Costs

Taxation
  Filing Post Judgment Attorney Fees Motion

**Secondary Sources**

**APPENDIX II - FEDERAL REGULATIONS**

Guide to Good Clinical Prac. Appendix II

...(a) The regulations in this part set forth the criteria under which the agency considers electronic records, electronic signatures, and handwritten signatures executed to electronic records to be trust...

**P1900 INTRODUCTION**

Mandated Health Benefits - COBRA Guide ¶1900

...Tab 1900 provides a comprehensive list of the court decisions in which COBRA figured prominently, and the general legal principles involved in these cases. The tab includes the following sections: 1. A...

**APPENDIX III - JUDICIAL OPINIONS**

FDA Enforcement Man. Appendix III

...No. 74-215 Supreme Court of the United States 421 U.S. 658; 95 S. Ct. 1903 2d 489 Argued March 18-19, 1975 June 9, 1975 Mr. Chief Justice Burger delivered the opinion of the court. We granted certiorar...

See More Secondary Sources

**Briefs**

**Thomas Joe MILLER-EL, Petitioner, v. Janie COCKRELL, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.**

2002 WL 32102969
Thomas Joe MILLER-EL, Petitioner, v. Janie COCKRELL, Director, Texas Department of Criminal Justice, Institutional Division, Respondent.
Supreme Court of the United States
May 28, 2002

...It is often said that most cases are won or lost on Voir Direl agree. It is the first opportunity you have to impress the panel with your sincerity, integrity and ability. I believe in the importance o...

**Michael Wayne WILLIAMS, Petitioner, v. John B. TAYLOR, Warden, Sussex I State Prison, Waverly, Virginia, Respondent.**

1999 WL 33612757
Michael Wayne WILLIAMS, Petitioner, v. John B. TAYLOR, Warden, Sussex I State Prison, Waverly, Virginia, Respondent.
Supreme Court of the United States
Dec. 23, 1999

...FN" Counsel of Record In the Circuit Court of the said County, the Grand Jurors of the Commonwealth of Virginia, and for the body of the County of Cumberland, duly summoned to attend said Court for ...

**Joint Appendix**

2017 WL 1967818
Erick Daniel DAVILA, Petitioner, v. Lorie DAVIS, Director, Correctional Institutions Division, Respondent.
Supreme Court of the United States
Feb. 27, 2017

sanctions (*see* Pl .'s Oral Mot. for Sanctions Pursuant to Fed.R.Civ.P. 37(b) [Doc. No. 34]; Def.'s Mot. for Sanctions Pursuant to Fed.R.Civ.P. 26(b)(5)(B) [Doc. No. 167] ), Pl.'s Mot. for Sanctions Due to Spoliation [Doc. No. 184] ), and both parties filing motions to compel. (Def.'s Mot. to Compel Mental Health Information [Doc. No. 87]; Pl.'s Mot. to Compel [Doc. No. 106].) Plaintiff's efforts to seek sanctions involved claims that the Embassy lacked proper authority at a settlement conference [1] (Pl.'s Oral Mot. for Sanctions [Doc. No. 34] ), and had destroyed or failed to preserve evidence, including a cell phone, laptop computer, and certain documents (Pl.'s Mem. in Supp. Mot. for Sanctions Due to Spoliation [Doc. No. 186] ). Defendant's motion alleged that Plaintiff had disclosed an inadvertently-produced document. (Def.'s Mem. in Supp. Mot. for Sanctions [Doc. No. 170].) Moreover, both parties appealed many of the magistrate judge's rulings on these and other motions to the undersigned district court judge (*see e.g.,* Def.'s Appeal of Magistrate J. Decision Re: Sanctions [Doc. No. 62]; Pl.'s Obj. to Order on Pl.'s Mot. to Amend [Doc. No. 79]; Pl.'s Objection to Discovery Ruling [Doc. No. 139] ), resulting in relief or partial relief to the moving party. (Order of 3/7/14 [Doc. No. 202]; Mem. Op. & Order of 11/20/13 [Doc. No. 161]; Order of 6/12/13 [Doc. No. 103].)

**\*2** In addition to the Embassy's earlier motion for dismissal, the Embassy later moved for summary judgment on the eight grounds of relief asserted in Ewald's Amended Complaint. (Def.'s Mot. for Summ. J. [Doc. No. 130].) While several of Ewald's claims were dismissed, the Court found that disputed issues of material fact precluded summary judgment on certain claims. The Court dismissed Ewald's claims for promissory estoppel, reprisal, retaliatory harassment, whistleblowing, and violation of the Norwegian Working Environment Act ("WEA"). (Order of 3/6/14 [Doc. No. 201].) However, the Court found that Ewald's claim for fraudulent inducement to enter employment, in violation of Minn.Stat. § 181.64, could proceed to trial as to representations regarding compensation, and that her claim under the Minnesota Human Rights Act ("MHRA"), Minn.Stat. § 363A.08, Subd. 2, could proceed as to allegations of unequal pay for equal work. (*Id.* at 18–19, 25 fn.6.) The Court also denied summary judgment as to Ewald's unequal pay claim under the Equal Pay Act (the "EPA"), 29 U.S.C. § 206(d)(1). (*Id.* at 19–25.)

The Court held an eleven-day bench trial on Ewald's claims of unequal pay under the EPA and MHRA and for violation of Minn.Stat. § 181.64. In the Court's Findings of Fact and Conclusions of Law, the Court found that Ewald had successfully demonstrated a violation of the EPA and the MHRA as to unequal pay, but had not demonstrated a violation of Minn.Stat. § 181.64. (Am. Findings of Fact & Concl. of Law at 183 [Doc. No. 333].) The Court awarded Plaintiff $170,594 for lost wages, which contained an enhancement of doubled compensatory damages pursuant to Minn.Stat. § 363A.29, Subd. 4, and $100,000 for emotional distress damages. (*Id.*)[2] In addition, the Court observed that where an employer has been found to have violated the EPA, the statute provides for reasonable attorney's fees and costs. (*Id.* at 171.) The Court directed Plaintiff to submit an affidavit and memorandum in support of reasonable attorney's fees and granted Defendant an opportunity to respond. (*Id.*) Likewise, the Court noted that courts have permitted awards of prejudgment interest on EPA claims, and that under Minnesota law, Minn.Stat. § 549.09, interest may be awarded on judgments or awards for the recovery of money. (*Id.* at 181.) Accordingly, the Court directed Plaintiff to calculate prejudgment interest and Defendant to respond. (*Id.*)

Plaintiff has submitted numerous affidavits and documentation in support of her Fee Petition, in particular, the Affidavit of Sheila Engelmeier [Doc. No. 348], the Supplemental Affidavit of Sheila Engelmeier [Doc. No. 381], and the Second Supplemental Affidavit of Sheila Engelmeier [Doc. No. 388], and attached exhibits. Sheila Engelmeier, Plaintiff's lead counsel from the law firm of Engelmeier & Umanah, P.A. ("E & U"), attests that during the course of E & U's representation of Ewald, Engelmeier regularly reduced bills prior to submitting invoices to Ewald to account for work that was duplicative or not efficiently handled. (Engelmeier Aff. ¶ 14

...FN\* Counsel of Record Davila vs. Stephens, Director TDCJ-CID Assigned to: Judge Reed C O'Connor Cause: 28:2254 Petition for Writ of Habeas Corpus (State) Court of Appeals Docket #: 15-70013 ERICK DANIE...

See More Briefs

**Trial Court Documents**

**In re Downey Regional Medical Center-Hosp., Inc.**

2009 WL 8188846
In re DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL, INC., Debtor and Debtor-in Possession.
United States Bankruptcy Court, C.D. California.
Sep. 14, 2009

...Chapter 11 Hearing: Date: September 16, 2010 Time: 11:00 a.m. Crtrm.: Courtroom 1475 This matter came before this Court for a final hearing on September 16, 2010 (the "Final Hearing"); for entry of thi...

**In re Downey Regional Medical Center-Hosp., Inc.**

2009 WL 8188846
In re DOWNEY REGIONAL MEDICAL CENTER-HOSPITAL, INC., Debtor and Debtor-in Possession.
United States Bankruptcy Court, C.D. California.
Sep. 14, 2009

...Chapter 11 Hearing: Date: October 13, 2009 Time: 2:00 p.m. Crtrm.: Courtroom 1475 This matter came before this Court for a final hearing on October 13, 2009 (the "Final Hearing"); a preliminary hearing...

**In re Seven Falls, LLC**

2010 WL 6972691
In re: SEVEN FALLS, LLC et al., Debtor.
United States Bankruptcy Court, W.D. North Carolina.
July 06, 2010

...Chapter 11 This matter comes before the Court on Synovus Bank's ("Synovus") Motion to Dismiss (the "Motion to Dismiss") [Docket Entry 199] and the Debtors' Motion for Authorization to Obtain Post-Petit...

See More Trial Court Documents

EXHIBIT 9 - MOHRMAN DECLARATION

[Doc. No. 348].) Engelmeier also provided these courtesy discounts to encourage prompt payment and to foster good will, removing attorney time totaling $51,274.83 from Ewald's bills. (*Id.* ¶ 16.) Over and above the $51,274.83 courtesy discounts, Engelmeier contemporaneously reduced E & U's billings to Ewald, in the ordinary billing process, by over $50,000 to ensure fairness to their client. (*Id.* ¶ 17.) As one example, Engelmeier notes that she removed more than $30,000 in billings that would have otherwise been billed to Ewald due to the transition of lead paralegals in the case, when the previous paralegal left E & U for a public sector position. (*Id.* ¶ 18.) After these discounts of over $100,000, E & U billed Ewald for $1,746,803. (Ex. B to Engelmeier Aff. [Doc. No. 348–3]; Engelmeier Aff. ¶ 13, n. 3 [Doc. No. 348].) Ewald paid $851,027.48 of this amount (Engelmeier Aff. ¶ 21[Doc. No. 348] ), leaving an unpaid balance of $895,775.52. (*Id.*) However, Engelmeier notes that this amount includes $11,992.45 in costs incurred by the client. (*See* Ex. C to Engelmeier Aff. [Doc. No. 348–4].) Accordingly, starting with the total billed amount of $1,746,803 ($851,027.48 paid fees + $895,775.52 unpaid fees), removing the $11,992.45 in costs from the total results in a base amount of $1,734,810.55 in attorney's fees for work performed from September 2010 through December 31, 2014. (Engelmeier Aff. ¶ 13, n. 3 [Doc. No. 348].)

*\*3* In addition to contemporaneously reviewing and adjusting client bills during the pendency of this matter, Plaintiff's counsel attests that E & U twice-reviewed the time records submitted in support of this Fee Petition to ensure that the entries were appropriately recorded and to note any necessary adjustments. (*Id* . ¶ 20.) Although the billing invoices and time entries submitted to the Court document a base amount of $1,734,810.55 in attorney's fees through December 31, 2014, Plaintiff's counsel asks that the Court reduce this amount to account for non-legal work and work on unsuccessful claims. (*Id.* ¶ 20.) First, Engelmeier suggests that the Court deduct $9,631.75 for time spent on media or other non-legal issues. (*Id.*) In addition, Plaintiff's counsel requests a $100,000 deduction to account for unsuccessful claims, and $2202 to account for certain paralegal work (separate from the contemporaneous discounting noted above). (*Id.*) Thus, in addition to the $100,000 in fees that counsel removed or discounted prior to billing Plaintiff, Plaintiff's counsel proposes removing $111,833.75 from its billed fees of $1,734,810.55 for purposes of the Fee Petition. (*Id.*) This results in a base amount of $1,622,976.80 in requested attorney's fees through December 31, 2014. (*Id.* ¶ 14.)

Plaintiff also seeks a 1.5–times enhancement on the unpaid contingent portion of her attorney's fees, which, after her own reduction for unsuccessful claims and other miscellaneous issues, results in a requested enhancement of $385,974.66. (*Id.*) In addition, Plaintiff seeks an award of $220,138.22 for costs incurred through December 31, 2014. (*Id.*) Finally, Plaintiff seeks $150,742.25 in Petition-related attorney's fees [3] and $1,887.15 in Fee Petition-related costs. [4] In short, Plaintiff's requested award is calculated as follows:

**$1,734,810.55** (total fees billed for time through 12/31, Ex. B to Engelmeier Aff.)

− *111,833.75* (requested offset for unsuccessful claims & misc.)

**$1,622,976.80** (adjusted total fees billed for time through 12/31)

1.5x enhancement only on unpaid contingent fees of $771,949.32, reduced for unsuccessful claims and miscellaneous issues to $385,974 .66.

**$1,622,976.80** (adjusted total fees billed for time through 12/31/14)

**+ 385,974.66** (reduced enhancement)

**+ 150,742.25** (Fee Petition-related attorney's fees)

**+ 220,138.22** (costs through 12/31/14)

EXHIBIT 9 - MOHRMAN DECLARATION

**+ 1,887.15** (Fee Petition-related costs)

**$2,381,719.08**

The Embassy objects to Plaintiff's Fee Petition on several grounds, discussed in greater detail
herein, and instead proposes that Plaintiff's counsel only receive reimbursement for
$622,124.98 in fees for work performed through 12/31/14. (*See* Ex. A to Schroeder Aff. [Doc.
No. 370–1].) Using Plaintiff's attorney's fees adjusted total of $1,622,976.80 through 12/31/14
as the starting point, Defendant deducts $151,813.97 for work it considers unrelated to
Plaintiff's unequal pay claim and deducts $304,678.50 for work it deems excessive, redundant,
or otherwise unnecessary. (*Id.*) It then reduces that number by one-third for work performed on
claims considered unrelated, then further reduces that result by 20% to account for Ewald's
limited success. (*Id.*) Defendant further contends that Plaintiff is not entitled to any
enhancement of fees. (*Id.*) Finally, as to Plaintiff's costs through 12/31, Defendant reduces
Plaintiff's requested amount by $104,332.26, resulting in Defendant's proposed costs of
$115,805.96. Defendant's attorney's fees and costs calculations do not include fees or costs for
work related to the Fee Petition.[5] Defendant's calculation is detailed as follows:

*Fees:*

**$1,622,976.80** (Plaintiff's adjusted total fees billed for time through 12/31/14)

**− 151,813.97** (work unrelated to unequal pay claim, Exs. A & B to Schroeder Aff. [Doc. Nos.
370–1 & 370–2] )

**− 304,678.50** (excessive, redundant, or unnecessary work, Exs. A & B to Schroeder Aff.
[Doc. Nos. 370–1 & 370–2] )

**$1,166,484.33** (subtotal of base fees)

**$1,166,484.33** (reduce by 1/3 (or $388,838.11) for unrelated claims)

**− 388,838.11**

**$777,656.22**

**$777,656.22** (reduce by 20% (or $155,531.24) for limited success)

**− 155,531.24**

**$622,124.98** **(Defendant's proposed total for fees through 12/31/14)**

*Costs:*

**$220,138.22** (Plaintiff's requested costs through 12/31/14)

**− 104,332.26** (reduce costs by $104,332.26 for unnecessary work)

**$115,805.96** **(Defendant's proposed total for costs through 12/31/14)**

**$622,124.98** (Defendant's proposed total for fees through 12/31/14)

**+ 115,805.96** (Defendant's proposed total for costs through 12/31/14)

**$737,930.94** **(Defendant's proposed total for fees and costs)**

*\*4* As to prejudgment interest on Plaintiff's damages under the EPA and MHRA, Plaintiff seeks
the 10% interest rate applicable to damage awards over $50,000 pursuant to Minn.Stat. §
549.09, Subds. 1(c)(1) and (e). Plaintiff requests prejudgment interest of $44,780.93 on her
back pay award (Pl.'s Mem. Supp. Fee Pet. at 37–38 [Doc. No. 336]; Marshall Aff. ¶ 27 [Doc.
No. 338] ), and $69,486.38 on her emotional distress damages and enhanced damages award,
for a total prejudgment interest award of $114,267.31. (*Id.*) Defendant, however, contends that
the federal postjudgment interest statute, 28 U.S.C. § 1961, should apply, resulting in a much
lower rate of interest. (Def.'s Opp'n Mem. at 31–32 [Doc. No. 369].) Under Defendant's
calculations, the Embassy contends that Plaintiff is entitled to $1,152.29 in prejudgment
interest on only the back pay award, with no prejudgment interest on Plaintiff's emotional
distress or enhanced damages. (*Id.* at 33–36.)

**II. DISCUSSION**

EXHIBIT 9 - MOHRMAN DECLARATION

## A. Attorney's Fees

The EPA provides for the mandatory award of attorney's fees and costs to a prevailing party, 29 U.S.C. § 216(b), while the MHRA authorizes the court in its discretion to award reasonable attorney's fees and costs to a prevailing party, Minn.Stat. § 363A.29, subd. 4(a), § 363A.33, subd. 7. For purposes of a fee award, a plaintiff may be considered a "prevailing party" if the plaintiff "succeed[s] on any significant issue in litigation which achieves some of the benefit the [plaintiff] sought in bringing suit ." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Having found that Ewald succeeded on her claim of unequal pay under the EPA and the MHRA, she is a prevailing party. In determining fee awards under the EPA, courts have applied the factors used for determining fee awards to prevailing plaintiffs in civil rights actions. Herndon v.. Wm. A. Straub, Inc., 17 F.Supp.2d 1056, 1065 (E.D.Mo.1998) (citing Ridgway v. United Hospitals–Miller Div., 563 F.2d 923, 927 (8th Cir.1997); Halferty v. Pulse Drug Co., Inc., 821 F.2d 261, 271–72 (5th Cir.1987), rev'd on other grounds on rehearing, 826 F.2d 2 (5th Cir.1987); Kreager v. Soloman & Flanagan, P.A., 775 F.2d 1541, 1544 (11th Cir.1985)).

The starting point for the determination of the amount of a reasonable attorney's fee involves calculating the "lodestar," which provides an initial estimate of the value of the attorney's service. Hensley, 461 U.S. at 433. The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate. Id. In determining the reasonable hourly rate, "district courts may rely on their own experience and knowledge of prevailing market rates." Hanig v. Lee, 415 F.3d 822, 825 (8th Cir.2005). The party seeking a fee award is responsible for providing evidence of hours worked and the rate claimed. Wheeler v. Mo. Highway & Transp. Comm'n, 348 F.3d 744, 754 (8th Cir.2003). The Supreme Court has cautioned that a determination of attorney's fees should not spawn "a second major litigation." Fox v. Vice, 131 S.Ct. 2205, 2216 (2011) (quoting Hensley, 461 U.S. at 437). Moreover, while the fee applicant must document its fees in order to demonstrate its entitlement to an award,

> *5 trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

Id.

After the Court determines the lodestar, it may adjust the figure upward or downward, after taking into account various considerations, including the most important factor—the results obtained. Hensley, 461 U.S. at 434. The following are some of the factors that courts may consider:

> (1) the time and labor involved; (2) the novelty and difficulty of the question (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 430 n. 3 (citing the "Johnson factors" set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974)). As this Court has noted, however, "many of these factors are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." Gopher Oil, Inc. v. Union Oil Co. of Cal., 757 F.Supp. 998, 1011 n. 16 (D.Minn .1991)

EXHIBIT 9 - MOHRMAN DECLARATION

(citation omitted). Based on the strong presumption that the lodestar amount represents a reasonable fee, a court may increase that amount only in "rare and exceptional cases." *Thompson v. Walgreen Co.,* 621 F.Supp.2d 710, 713 (citing *Pa. v. Del. Valley Citizens' Counsel for Clean Air,* 478 U.S. 546, 565 (1986)).

### 1. Hourly Rate

Plaintiff's counsel submitted affidavits setting forth their education, experience, and hourly rates. (Aff. of S. Engelmeier ¶¶ 1–9, 28 [Doc. No. 348]; Aff. of T. Marshall ¶¶ 1–15 [Doc. No. 338].) The submitted billing rates of Plaintiff's counsel in this action are as follows:

| Name | Hourly Rate |
|------|-------------|
| Sheila Engelmeier, Attorney with 29 years of experience | |
| 2010 | $390 |
| 2011 | $400 |
| 2012–14 | $410 |
| Susanne Fischer, Attorney with 15 years of experience | |
| 2010 | $315 |
| 2011 | $325 |
| 2012–14 | $335 |
| Tom Marshall, Attorney with over 30 years of experience | |
| 2011 | $380 |
| 2012–14 | $390 |
| Michael Gerould, Attorney with 8 years of experience | |
| 2011 | $75 |
| 2012 | $50 |
| 2013 | $50–100 |
| 2014 | $5–100[6] |
| Charlie Firth, Attorney with 15 years experience | |
| 2011 | $325 |
| 2012 | $335 |
| 2013 | $345 |
| Lisa Finstad, Paralegal with 5 years of experience | |
| 2012 | $90 |
| 2013 | $90 |
| 2014 | $90 |
| Karen Sanders, Paralegal with 20 years of experience | |
| 2014 | $90 |
| April Paul, Paralegal with 30 years of experience | |
| 2011 | $160 |
| 2012–14 | $215 |

F N6. The billing rate of $5 per hour for Mr. Gerould was in error, but Plaintiff's counsel did not adjust for the error, and instead absorbed it. (Engelmeier Aff. ¶ 20, n. 6 [Doc. No. 348].)

*6 (*Id.,* Ex. B to Engelmeier Aff. [Doc. No. 348–3].) In addition, Plaintiff's counsel submitted supporting affidavits from colleagues in the Twin Cities attesting to the reasonableness of their hourly rates. (Aff. of E. Magnuson [Doc. No. 339]; Aff. of N. May [Doc. No. 340]; Aff. of A. Rubenstein [Doc. No. 341]; Decl. of S. Stokes [Doc. No. 342]; Aff. of S. Smith [Doc. No. 343]; Aff. of L. Lienemann [Doc. No. 344]; Aff. of J. Thome [Doc. No. 345]; Decl. of F. Baillon [Doc. No. 346]; Decl. of S. Coler [Doc. No. 347]; Decl. of M. Neumann [Doc. No. 349]; Decl. of L. Stratton [Doc. No. 350]; Aff. of M. Ciresi [Doc. No. 351].)

EXHIBIT 9 - MOHRMAN DECLARATION

Defendant does not challenge the reasonableness of the regular hourly rate of Plaintiff's counsel. (Def.'s Opp'n Mem. at 8 [Doc. No. 369].) Given the training, experience and skill level of Plaintiff's counsel, the Court finds that the hourly rates charged by these attorneys and paralegals are reasonable and are consistent with the prevailing market rates for legal professionals of comparable skill levels in the Twin Cities. *See Blum v. Stenson,* 465 U.S. 886, 895 n. 11 (1984) (reasonable hourly rate is prevailing market rate in relevant legal community for similar services by lawyers of comparable skills, experience and reputation).

### 2. Reasonable Hours Expended

As to the second factor in determining the lodestar—the reasonableness of the hours expended—Defendant challenges certain billing entries of Plaintiff's counsel, claiming that these billings should be non-compensable because they reflect work performed on Plaintiff's unsuccessful claims or work that the Embassy considers excessive, redundant or otherwise unnecessary. (Def.'s Opp'n Mem. at 8 [Doc. No. 369].) Defendant identifies the following time expenditures as unrelated to Plaintiff's successful unequal pay claims: (1) including Gary Gandrud as a party; (2) including the Norwegian WEA claim; (3) analyzing immigration-related work performed by Faegre & Benson to determine a potential conflict of interest; (4) expending time on potential witness Urd Milbury; and (5) incurring fees for gathering and documenting Plaintiff's moving expenses. (*Id.* at 9–11.) In addition, Defendant seeks to exclude time spent on the following tasks that it characterizes as "excessive, redundant or otherwise unnecessary:" (1) work on various motions, including a motion related to settlement conference sanctions, Plaintiff's motion to compel, and a subsequent motion for sanctions (*id.* at 12–17); (2) work related to Ewald's Norwegian FOIA requests (*id.* at 18); (3) duplicative work (*id.* at 18–19); and (4) non-legal work, including media-related work. (*Id* . at 19.)

Where a plaintiff obtains partial success but her claims involve a common core of facts or are based on related legal theories, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley,* 461 U.S. at 435. "Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. The Court therefore must analyze Ewald's Fee Petition, determining: (1) the claims on which she prevailed; and (2) an appropriate amount of reasonable attorney's fees, in light of the extent of her success on those claims. *Burks v. Siemens Energy & Automation, Inc.,* 215 F .3d 880, 882 (8th Cir.2000). The court may reduce the award, considering "whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Simpson v. Merchants & Planters Bank,* 441 F.3d 572, 580th (8th Cir.2006) (citation omitted). While no precise rule or formula applies to this determination, *Arneson v. Callahan,* 128 F.3d 1243, 1249 (8th Cir.1997) (citation omitted), the Eighth Circuit Court of Appeals provides the following guidance:

> *\*7* If any issues on which the plaintiff lost are unrelated to those on which he [or she] won, the unrelated issues must be treated as if they were separate cases and no fees can be awarded.... If, however, the claims on which the plaintiff lost are related to those on which he [or she] won, the court may award a reasonable fee.... The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole.... If the plaintiff has won excellent results, he [or she] is entitled to a fully compensatory fee award, which will normally include time spent on related matters on which he [or she] did not win.... If the plaintiff's success is limited, he is entitled only to an amount of fees that is reasonable in relation to the results obtained.

*Wal–Mart Stores, Inc. v. Barton,* 223 F.3d 770, 773 (8th Cir.2000) (quoting *Jenkins v. Mo.,* 127 F.3d 709, 716 (8th Cir.1997)).

EXHIBIT 9 - MOHRMAN DECLARATION

The Court finds that Ewald obtained excellent results on her unequal pay claim, brought under both the EPA and the MHRA. This claim unquestionably formed the core of her lawsuit. All of Ewald's other claims involved the same common core of facts as her unequal pay claim and were related to the unequal pay claim, particularly her claims of reprisal, retaliatory harassment, whistleblowing, and violation of the WEA. Moreover, Ewald obtained a substantial judgment against the Embassy of $270,594 (Am. Findings of Fact & Concl. of Law ¶¶ 64, 83, 91 [Doc. No. 333] ). *See Heaton v. Weitz Co.,* 534 F.3d 882, 892 (8th Cir.2008) (approving district court's attorney's fee award that found judgment of $137,070.44 in compensatory damages, and $25,000 in punitive damages, to be a "substantial judgment" against the employer); *Barton,* 223 F.3d at 772–73 (finding a $25,000 judgment in a Title VII sexual harassment action on one of the plaintiff's six original claims to be a "substantial judgment" and a "significant success.") The Minnesota Supreme Court has also noted that "success" may be measured not simply by monetary recovery, but based on the significance of the litigation, observing, "Some federal circuits measure success not only by looking at the difference between the judgment recovered and the recovery sought, but also by looking at the significance of the legal issues on which the plaintiff prevailed and the public purpose served by the litigation." *Milner v. Farmer's Ins. Exch.,* 748 N.W.2d 608, 623 (Minn.2008) (citations omitted). Here, Ewald's success on her unequal pay claim "not only serve[d] to vindicate important personal rights as envisioned by the statute, but also [to] further the public's interest in providing a fair playing field in the work world." *Barton,* 223 F.3d at 773 (citations omitted) (approving district court's fee award for plaintiff's sole successful claim of sexual harassment).

The Court has carefully reviewed Plaintiff's billing submissions, Defendant's objections, and the parties' memoranda and exhibits concerning the Fee Petition. Given that Plaintiff's counsel proposes a $111,833.75 reduction for unsuccessful claims (Engelmeier Aff. ¶ 14 [Doc. No. 348] ), the Court has reviewed Defendant's fee objections (Ex. B to Schroeder Aff. [Doc. No. 370–2] ) to determine whether Plaintiff's proposed reduction adequately accounts for unsuccessful claims and unnecessary or duplicative work, or whether Defendant's proposed reductions produce a more accurate amount reflecting reasonably expended hours. The Court attaches to this Order a separate confidential exhibit listing billing entries subject to exclusion. (*See* Exhibit A to Order.)

### a. Gary Gandrud as a Party

*8 As noted, Plaintiff initially filed this suit against both Gandrud and the Embassy. This Court dismissed Gandrud as a Defendant on grounds of immunity approximately six months later. (Order of 1/26/12 [Doc. No. 18].) The Embassy argues that $38,874.47 related to the inclusion of Gandrud as a party must be excluded from an award of fees. (Def.'s Opp'n Mem. at 9 [Doc. No. 369].)

Gandrud was a crucial fact witness in this case. He served as the Embassy's primary liaison concerning pay for the expert officers, knew of the disparate salaries, and relayed the employment offers to Ewald and the comparator employee, Anders Davidson. Many of the claims dismissed against Gandrud were closely related to Plaintiff's successful equal pay claims. Moreover, Plaintiff's counsel contends that defense counsel eventually accepted service of the Complaint for the Embassy only after the Court expressed reluctance to dismiss Gandrud, absent another defendant. (Pl.'s Reply Mem. at 5, n. 5 [Doc. No. 377].) Ultimately, however, Ewald was unsuccessful in retaining Gandrud as a party to this litigation. Thus, billing entries that relate to individual claims against Gandrud, including counsel's work in opposition to Gandrud's motion to dismiss himself as a named defendant, are not properly recoverable fees. Acknowledging that such Gandrud-related work is not reimbursable, Ewald's counsel includes such work in a suggested $111,833.75 deduction for unsuccessful claims. (Engelmeier Aff. ¶ 14 [Doc. No. 348].) The Court has reviewed Defendant's objections to the Fee Petition

EXHIBIT 9 - MOHRMAN DECLARATION

concerning individual claims against Gandrud, and agrees that many of these billing entries are not recoverable. (Ex. B to Schroeder Aff. [Doc. No. 370–2].)

However, Defendant deducts entire entries that contain block billing where only one or two elements of the description are objectionable. As this Court has explained, "block billing is the lumping together of daily time entries consisting of two or more task descriptions" and the Eighth Circuit has no requirement against the use of block billing. *King v. Turner,* 05–CV–388 (JRT/FLN), 2007 WL 1219308, at *3 (D. Minn. April 24, 2007). For example, Defendant seeks to deduct in its entirety a $650 entry for February 25, 2011 that contains a mixture of legal work, only some of which concerns the question of Gandrud's immunity from suit. (Ex. B to Schroeder Aff. at 1 [Doc. No. 370–2].) The rest of the entry deals with damages analysis, work on a settlement demand, and client advice. (*Id.*)

Attorneys at E & U regularly record their time in six-minute increments, or blocks, designating the attorney billing the time, the time billed, and a brief description of the work performed. (Marshall Aff. ¶ 20 [Doc. No. 338].) Where block-billed entries specifically describe tasks accomplished, a blanket reduction for block billing is not necessary. *King,* 2007 WL 1219308, at *3. Here, E & U's entries are sufficiently descriptive. Thus, where block billing reflects work on both related and unrelated claims, the Court has carefully reviewed these entries and apportioned a percentage reduction for unrelated or unnecessary work, when applicable. For example, for the entry noted above, the Court finds that the $650 fee should be reduced by 1/3, resulting in a reduction of $216. (Ex. A to Order.) The Court's review of E & U's billing entries shows that Plaintiff's suggested deduction of $111,833.75 for unsuccessful claims, including the claim against Gandrud, more than adequately accounts for Plaintiff's lack of success in retaining Gandrud as an individual defendant in this case. (*See id.*)

### b. Norwegian WEA Claim

**\*9** As discussed in the Court's summary judgment ruling, the WEA affords equality of treatment at work to employees within the law's purview. (Order of 3/6/14 at 34–35 [Doc. No. 201].) Defendant argues that because Plaintiff's claim under the WEA was ultimately dismissed on summary judgment, $64,290.50 in attorney's fees related to that claim should be deducted from the lodestar amount. (Def.'s Opp'n Mem. at 9 [Doc. No. 369].) Plaintiff argues, however, that her unsuccessful claim under the WEA stems from the same common core of facts as her successful claims under the EPA and MHRA. (Pl.'s Mem. Supp. Fee Pet. at 21–24 [Doc. No. 336].) Moreover, Ewald notes that when she sought to amend the Complaint to add a claim under the WEA, among the Embassy's arguments, it contended that a claim under the WEA was unnecessarily duplicative of Ewald's other claims. (Pl.'s Reply Mem. at 5 [Doc. No. 377] ) (citing Def.'s Mem. in Opp'n Pl.'s Mot. to Amend at 4 [Doc. No. 48].)

Plaintiff's WEA claim interrelated with her successful unequal pay claim and stemmed from the same core of facts. (*See e.g.,* Order of 8 [Doc. No. 129] (noting that addition of WEA claim added few, if any, additional facts.) Moreover, the law discourages parsing out and denying fees for related, but unsuccessful claims. *See Hensley,* 461 U.S. at 461. However, while many elements of prosecuting a claim under the WEA may have overlapped with the EPA and the MHRA, the addition of the foreign law claim involved different, additional legal analysis. Specifically, it required the parties to consider whether such a foreign law claim could be alleged and asserted by an individual plaintiff here. Ultimately, the claim was unsuccessful. While the WEA claim was related to Plaintiff's successful unequal pay claim, and arguably subject to reimbursement, the primary work involved with the WEA claim involved foreign law issues that were not part of Plaintiff's successful unequal pay claim. Accordingly, work spent on the WEA claim is not subject to reimbursement. [7] As noted, Plaintiff suggests a reduction of $111,833.75 to cover work on unsuccessful claims. Based on the Court's review of Plaintiff's billing submissions, counsel's work on the WEA claim is adequately covered by Plaintiff's proposed reduction. (*See* Ex. A to Order.)

EXHIBIT 9 - MOHRMAN DECLARATION

#### c. Immigration Issues

Defendant seeks to deduct $23,929.50 from Plaintiff's lodestar for work related to immigration issues. (Def.'s Opp'n Mem. at 10 [Doc. No. 369].) Specifically, Plaintiff's counsel explored whether the Embassy's counsel, then called Faegre & Benson, had a conflict of interest in this litigation, due to earlier immigration-related work that the firm had performed on behalf of both Ewald and her spouse. (Id.) Defendant concedes that while analyzing its firm's immigration invoices may have had some relation to Ewald's unsuccessful fraudulent misrepresentation claim under Minn.Stat. § 181.64, it was not relevant to Plaintiff's claim of unequal pay. (Id. at 10.) The Court agrees. While Faegre & Benson's representation of Ewald and Mikalsen on immigration matters was a source of concern to Ewald and necessitated valid legal work, that work was unrelated to Plaintiff's claims of unequal pay. Accordingly, any such immigration-related work is non-reimbursable in this proceeding. Again, the Court has reviewed Plaintiff's billing submissions and finds that time spent on such work is adequately included in Plaintiff's suggested reduction of $111,833.75. (See Ex. A to Order.)

#### d. Urd Milbury

*10 Urd Milbury, an employee of the Embassy in Washington, DC, was a potential trial witness, whose testimony was excluded pursuant to a motion in limine brought by Defendant. (See Order of 4/15/14 at 8–10 [Doc. No. 276].) Accordingly, Defendant requests that Plaintiff's lodestar be reduced by $22,977 to account for E & U's work concerning Milbury. (Def.'s Opp'n Mem. at 11 [Doc. No. 369].) In excluding Milbury's trial testimony, the Court noted that Plaintiff offered no evidence to demonstrate that Milbury was a comparator employee, nor did Milbury possess personal knowledge about Ewald's work at the Embassy, the circumstances of her hiring, funding, or working environment. (Order of 4/15/14 at 9 [Doc. No. 276].) The Court thus finds that work related to Milbury is not properly reimbursable in an award of attorney's fees. Further, however, the Court finds that work related to Milbury falls within Plaintiff's suggested $111,833.75 reduction in fees. (See Ex. A to Order.)

#### e. Moving Expenses

The Embassy seeks to exclude $1,742 in fees incurred to gather and analyze Plaintiff's moving expenses. (Def.'s Opp'n Mem. at 11 [Doc. No. 369].) These fees relate to Plaintiff's unsuccessful fraudulent inducement in employment claim under Minn.Stat. § 181.64. Because Plaintiff did not obtain relief on this claim, nor did she recover damages for moving expenses, these fees are not reimbursable. They are within Plaintiff's suggested $111,833.75 reduction in fees, however. (See Ex. A to Order.)

#### f. Motion Practice

Defendant seeks a series of reductions based on work performed on various pretrial motions: (1) a reduction of $17,941.50 for work related to Plaintiff's motion for settlement conference sanctions; (2) a reduction of $190,783.50 for work performed on motions concerning electronic discovery and cell phones; and (3) a reduction of $52,416.50 for a subsequent sanctions motion brought by Ewald relating to the Embassy's failure to preserve Gandrud's cell phone, Plaintiff's first work laptop, and certain documents from Innovation Norway. (Def.'s Opp'n Mem. at 13–18 [Doc. No. 369].) Defendant characterizes several of these discovery disputes as "manufactured" and not subject to reimbursement. (Def.'s Opp'n Mem. at 13 [Doc. No. 369].)

It may be appropriate, in some instances, "to deny fees for work on unsuccessful motions that did not otherwise advance the case and ... would not have been necessary if the party had pursued successful avenues." Jones v. Fleetwood Motor Homes, 127 F.Supp.2d 958, 973 (N.D.Ill.2000). In Miller v. Dugan, 764 F.3d 826, 832 (8th Cir.2014), the Eighth Circuit affirmed the denial of an award of attorney's fees for work on an "ill-advised and unnecessary" motion to compel attendance at depositions that the district court had denied, noting that the parties had not yet agreed when to hold the defendants' depositions. The Eighth Circuit found that counsel's work on this motion was properly excluded as "excessive, redundant, or otherwise

EXHIBIT 9 - MOHRMAN DECLARATION

unnecessary." *Id.* (citing *Hensley,* 461 U.S. at 434). The motion practice that Defendant challenges here, however, cannot be characterized as similarly unnecessary or unreasonable. In other words, this work would likely have had to be done, even if the unsuccessful claims had not been pursued, because the motion practice related to the successful equal pay claims at the heart of Plaintiff's case. Moreover, Defendant's proposed reductions for this "unnecessary" work also broadly include work that directly supported Plaintiff's successful unequal pay claim and is clearly reimbursable. [8] In addition, Plaintiff filed her Motion to Compel after encountering difficulties with Defendant's document production, which contained empty to/from fields and missing Norwegian language characters. (Engelmeier Aff. ¶ 29 [Doc. No. 348].) After that motion, the Embassy provided new files allowing document searchability and was ordered to provide a privilege log, explain any redactions, produce cell phones, search for text messages, and remove any improper redactions. (Pl.'s Reply Mem. at 6 [Doc. No. 377]; Order of 11/20/13 at 21 [Doc. No. 161].) The motions therefore served to advance the case and arose "at least as an indirect result of" Ewald's successful claims. *See Riverview v. Muir Duran v. JADT Dev. Grp., LLC,* 776 N.W.2d 172, 179 (Minn.Ct.App.2009) (refusing to reduce fee award for unsuccessful TRO which arose "at least as an indirect result of" plaintiff's successful claims). Moreover, particularly given the context of this case, with heated motion practice initiated by both parties, Plaintiff's motions were reasonable to the action. *See Musicland Grp., Inc. v. Ceridian Corp.,* 508 N.W.2d 524, 536 (Minn.Ct.App.1991) (finding that a fee award for work on an unsuccessful settlement effort was proper because fees could be considered reasonable to the action). Accordingly, the Court declines to reduce Ewald's fee award because she did not prevail on every aspect of pretrial motion practice.

### g. Norwegian FOIA Requests

*\*11* Seeking to reduce Plaintiff's lodestar by $21,776.50 for Plaintiff's efforts to obtain documents through Norway's equivalent of FOIA, the Embassy argues that because Plaintiff had requested these same documents through discovery, any billing related to the FOIA efforts is unreasonable. (Def.'s Opp'n Mem. at 18 [Doc. No. 369].) The Court disagrees, finding that the information in question was relevant to Ewald's successful claims concerning unequal pay, and under the circumstances of this case, Defendant's conduct caused Plaintiff to utilize FOIA requests in order to obtain information. As Engelmeier attests, Defendant did not issue a litigation hold to stakeholder Innovation Norway and refused to produce Innovation Norway's documents, on the grounds that it was not a part of the Embassy, nor a decisionmaker concerning Ewald's pay. (Engelmeier Aff. ¶ 30(i) [Doc. No. 348].) Yet the Embassy called only one stakeholder to testify at trial—Innovation Norway. (*Id.*) Moreover, after E & U obtained the services of Norwegian counsel, the Wikborg Rein ("Wikborg") firm, to obtain information via Norway's FOIA law, Norway claimed that it had no duty to provide Innovation Norway's documents, stating that it fell within an exception to Norway's FOIA law, as Innovation Norway was one of the core decisionmakers for the Embassy and/or Norway's Ministry of Foreign Affairs. (*Id.;* Haugen Decl. ¶ 5 [Doc. No. 352].) As to Ewald's Norwegian FOIA requests as a whole, Norway opposed the production of documents under Norwegian law, and when pressed, only produced some of the documents that had already been produced in this litigation. (*Id.*) Attorney's fees concerning Ewald's Norwegian FOIA requests are related to her successful claims, are reasonable and shall be reimbursed.

### h. Duplicative Work

Defendant requests a reduction of $10,782 for work it considers duplicative. (Def.'s Opp'n Mem. at 18–19 [Doc. No. 369].) In particular, the Embassy argues that it was unnecessary for multiple attorneys to attend depositions, when one attorney would have sufficed. (*Id.*) (citation omitted). The Court has thoroughly reviewed Plaintiff's submissions and finds no basis for reduction due to duplication of effort. Given the scope of this litigation, the voluminous document production, depositions, pretrial motion practice, and the length of trial, the Court

EXHIBIT 9 - MOHRMAN DECLARATION

finds that counsel's internal reductions adequately account for any duplication of effort. No additional reductions are necessary.

### i. Non-legal Work

The Embassy argues that the lodestar should be reduced by $10,978 .50 for nonlegal work performed by counsel—particularly work related to the media. As this Court has observed, public relations/media work is not compensable and should be deducted from the lodestar. *Thompson,* 621 F.Supp.2d at 717. Plaintiff agrees and has included such work in her suggested reduction of $111,833.75 in fees . [9] The Court finds that this reduction adequately accounts for any non-legal work in Plaintiff's billing submissions and no further reduction is necessary. (*See* Ex. A to Order.)

### j. Defendant's Proposed 1/3 Reduction

*12 Defendant proposes that as part of the Court's lodestar calculation—and in addition to the specific reductions that Defendant has already proposed—the Court should reduce the lodestar by 1/3, resulting in a proposed lodestar of $777,656.22. (Def.'s Opp'n Mem. at 22–23 [Doc. No. 369].) Relying on *King v. McCord,* 707 F.2d 466, 467 (11th Cir.1983), the Embassy argues that "[i]n the context of deciding fee petitions ... the intentional/unintentional distinction [between the elements required to establish employment law claims such as discrimination versus claims under the EPA] renders equal pay claims unrelated to discrimination or reprisal claims." (*Id.* at 22.) The Court disagrees that any such distinction requires an additional reduction here. The same common core of facts supported all of Plaintiff's claims. Moreover, even some of her unsuccessful claims—for which Plaintiff has proposed a reduction of $111,833.75—were intertwined with her successful claims. No further reduction to the lodestar is necessary.

Accordingly, having reviewed Plaintiff's billing records and considered Defendant's objections, the Court has reduced Plaintiff's compensable attorney time, as noted in this Order and as reflected in Exhibit A to the Order. Notably, the Court's reductions total $103,175.70—an amount that is actually less than Plaintiff's own proposed reductions of $111,833.75. Nevertheless, in fairness to the Embassy's objections, the Court accepts Plaintiff's higher reduction of $111,833.75. The Court thus determines that the lodestar is $1,773,719.05. The lodestar includes Plaintiff's proposed reduction of $111,833.75 in the adjusted total for time billed through December 31, 2014, and is calculated as follows:

**$1,622,976.80** (adjusted total fees billed for time through 12/31/14)

**+ 150,742.25** (Petition-related attorney's fees)

**$1,773,719.05**

### 3. Enhancement or Reduction of Lodestar

Having calculated the lodestar amount of $1,773,719.05, the Court must next determine whether an upward or downward adjustment is warranted. As noted, Plaintiff seeks to enhance the lodestar in the amount of $385,974.666. (Engelmeier Aff. ¶ 14 [Doc. No. 348]; Pl.'s Mem. Supp. Fee Pet. at 30 [Doc. No. 336].) Given the strong presumption that the lodestar amount is a reasonable fee, a court may increase that amount only in "rare and exceptional cases." *Del. Valley,* 478 U.S. at 565. For instance, if the lodestar "does not adequately take into account a factor that may properly be considered in determining a reasonable fee," enhancement may be warranted. *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 553–54 (2010). Specifically addressing whether superior attorney performance is not adequately factored into a court's determination of the lodestar, the Supreme Court has noted that it may be appropriate to enhance a fee where: (1) the method used in determining the hourly rate in the lodestar calculation does not adequately measure the attorney's true market value; (2) the attorney's performance includes an extraordinary outlay of expenses in exceptionally protracted litigation;

EXHIBIT 9 - MOHRMAN DECLARATION

or (3) the attorney's performance involves exceptional delay in the payment of fees. *Id* . at 555–56.

**\*13** As the Supreme Court has noted, many of the *Johnson* factors are subsumed in the lodestar determination, such that the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of the representation," and the "results obtained" from the litigation are reflected in the lodestar amount, and "cannot serve as independent bases for increasing the basic fee award." *Del. Valley,* 478 U.S. at 565 (citing *Blum,* 465 U.S. at 898–900). The Court has considered such factors when reviewing Plaintiff's billing records. Notwithstanding the diligent work of Plaintiff's counsel and the extraordinary amount of effort involved, the Court does not believe that this is the rare case warranting an upward adjustment. While the work of Plaintiff's counsel involved a significant outlay of expenses in protracted litigation, with a period of delay in payment, *see Perdue,* 559 U.S. at 555–56, the Court notes that Plaintiff was able to pay $851,027.48 towards her fees and costs. (Engelmeier Aff. ¶ 21 [Doc. No. 348].) For all of these reasons, the Court finds that the lodestar adequately compensates Plaintiff's counsel. Accordingly, the Court declines to enhance Plaintiff's attorney's fees.

Defendant contends that if the Court contemplates any adjustment to the lodestar or "deems it appropriate to consider an award other than 100% of the lodestar," it should apply a 20% reduction to reflect Plaintiff's limited success, pointing to the differential between the amount of damages Plaintiff requested versus the amount that the Court awarded. (Def.'s Opp'n Mem. at 26 [Doc. No. 369].)

Once the lodestar is calculated, there is "a strong presumption" that it is reasonable. *Perdue,* 559 U.S. at 554; *In re Kula,* 213 B.R. 729, 738 (B.A.P. 8th Cir.1997). Because the lodestar, as calculated here, reflects a variety of factors, including the results obtained, *In re Kula,* 213 B.R. at 738, there is no need to further reduce Plaintiff's award of attorney's fees. Given the overlapping facts that supported all of Ewald's claims, the overwhelming majority of her attorneys' time spent in investigation, pleading, discovery, and trial is time that would have been necessarily expended to prosecute her successful unequal pay claim. Plaintiff's proposed reductions, which this Court approves in the lodestar calculation, more than adequately reflect Plaintiff's degree of success, as discussed herein.

Moreover, as to whether a fee award must bear some relation to Ewald's damages award, the Supreme Court has rejected any requirement of proportionality between the amount of damages and the amount of fee awards in civil rights actions. *City of Riverside v.. Rivera,* 477 U.S. 561, 574. (1986). Rather, any such differential is one of many factors that a court may consider in awarding attorney's fees. *Id.; see also Butler v. Dowd,* 979 F.2d 661, 676 (8th Cir.1992). Similarly, courts have found it unnecessary to reduce fee awards proportionate to the results obtained in cases brought under the Fair Labor Standards Act ("FLSA"), of which the EPA is a part, "as fee awards in FLSA cases are often greater than the amount recovered by the plaintiff." *Hall v. Siemens VDO Auto. Elecs. Corp.,* No. 5:06–CV–1208–SLB, 2014 WL 1329553, at \* 9–11 (N .D.Ala. Mar. 31, 2014) (citing *James v. Wash Depot Holdings,* 489 F.Supp.2d 1341, 1347 (S.D.Fla.2007) (noting that in order to afford legal access to litigants with small FLSA claims, proportionality should not be considered in awarding attorney's fees); *see also* Robert L. Rossi, *Attorneys' Fees* § 10:45 (3d ed.2012) (stating that, for actions brought under the FLSA, "courts should not place undue emphasis on the amount of the plaintiff's recovery in awarding attorneys' fees.") (citations omitted).

**\*14** A plaintiff may obtain significant success, even when prevailing on one of several claims. *Barton,* 223 F.3d at 771–72 (affirming fee award of $116,217.82 on a $25,000 award for harassment, even where plaintiff's claims of retaliation, constructive discharge, and pendent tort claims failed); *Heaton,* 534 F.3d at 892 (refusing to further reduce fee award for

EXHIBIT 9 - MOHRMAN DECLARATION

unsuccessful claims stemming from common core of facts). In *Gumbhir v. Curators of the Univ. of Mo.,* 157 F.3d 1141, 1146–47 (8th Cir.1998), the Eighth Circuit acknowledged that "although pro rata fee reductions based upon the relationship between damages requested and damages awarded are often inappropriate," the court nevertheless made such a reduction, finding it relevant to the reasonableness of the award based on the degree of success obtained. In Gumbhir, only three of the plaintiff's nine claims survived summary judgment, and the retaliation claim on which the plaintiff solely prevailed "was not his major claim." *Id.* at 1146; *see also Flowers v. Thunder,* No. 12–CV–1881 (MJD/SER), 2014 WL 5362264, at \*4–5 (D.Minn. Oct. 21, 2014) (reducing plaintiff's requested fee award by one-third in a § 1983 case where plaintiff tried only three claims at trial, succeeding only on the least serious allegation). The Eighth Circuit has specifically declined to extend the ruling in *Gumbhir* to a general endorsement of, or requirement for, proportional fee reductions. *Simpson,* 441 F.3d at 581. This is because "tying the attorney's fees to the amount awarded would discourage litigants with small amounts of damages from pursuing a civil rights claim in court." *Id.* (citing *Jackson v. Crews,* 873 F.2d 1105, 1110 (8th Cir.1989)). Furthermore, the Eighth Circuit noted that *Gumbhir* represented "one extreme instance" and that even the *Gumbhir* opinion "emphasize[d] that a pro rata reduction would not normally be appropriate." *Id.*

The Court therefore rejects the Embassy's contention that Plaintiff's success is "limited" because she did not succeed on all of her claims or because she failed to receive all of the damages that she requested. *Id.; Giuliani v. Stuart Corp.,* 512 N .W.2d 589, 596 (Minn.Ct.App.1994) (affirming an award of attorney fees greater than the amount of damages recovered despite plaintiff's success on only one of three claims). As the Minnesota Court of Appeals has explained, "In light of the complexity of [MHRA] cases, often involving modest damages, it is not surprising nor particularly material that the attorney fees in this case exceed the amount of damages awarded." *Giuliani,* 512 N.W.2d at 596–97. In addition, unlike the plaintiffs in *Gumbhir* and *Flowers,* Ewald obtained significant success on the unequal pay claim at the heart of her case. Moreover, her successful unequal pay claim closely related to most of her unsuccessful claims such that much of the time expended on the successful claim would not have been substantially less if it were the only claim alleged. Furthermore, Ewald herself has proposed substantial reductions to her attorney's fees.

**\*15** Following the Court's bench trial ruling, Ewald attempted to subpoena the billing records of defense counsel in order to compare the reasonableness of her fees against the fees paid by the Embassy in defending this action. (*See* Letter of 1/5/15 from T. Marshall to D. Wilczek) (provided to Court during oral argument on Plaintiff's Fee Petition.) At the hearing on Plaintiff's Fee Petition, the Court also engaged in discussion with defense counsel regarding the relevance of such records. Sometimes defense counsel's fees may be relevant to a determination of the reasonableness of plaintiff's counsel's fees, *see Am Travelers Life Ins. Co. v. AIG Life Ins. Co.,* 354 F.3d 755, 759–61 (8th Cir.2004) (upholding award of $66,839.76 in attorney's fees and costs in indemnification suit where, among other factors, defendant's attorneys charged only $38,554.29); *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1220 (8th Cir.1981) (affirming the award of $149,175 in attorney's fees and $13,000 in costs to plaintiff's counsel in an ERISA case, and noting, in passing, that defense counsel spent close to one million dollars in attorney's fees), but frequently, the comparison is irrelevant. *See Burks,* 215 F.3d at 884 (describing the relationship as an "apples-to-oranges comparison," and noting that it requires courts to undertake an additional analysis of whether defendant's counsel billed a reasonable amount).

Having adjudicated the eleven-day bench trial in this matter, issued rulings on numerous motions, including a motion to dismiss, summary judgment, and multiple appeals of decisions of the magistrate judge, and having ruled in a 180–page Findings of Fact and Conclusions of Law, this Court can personally attest to the time-intensive nature of this case. The Court

EXHIBIT 9 - MOHRMAN DECLARATION

therefore finds it unnecessary to consult defense counsel's billing records in order to evaluate the reasonableness of Plaintiff's attorney's fees. As is apparent here, a heavily-litigated case is not typically a one-sided affair. Ewald and the Embassy litigated this case tooth and nail, which explains why Ewald's attorney's fees and costs are relatively high. As Judge Easterbrook of the Seventh Circuit recently observed when evaluating a fee petition award in a heavily-litigated FMLA case, "[D]efendants contest only the aggregate outlay [of fees], yet the high total is the expected result of the way the defense was conducted." *Cuff v. Trans States Holdings, Inc.,* 768 F.3d 605, (7th Cir.2014). Although Judge Easterbrook agreed that the ratio between the requested fee amount ($325,000) and the awarded damages (less than $50,000) seemed high, he stated

> But then Cuff's lawyers surely did not expect at the outset of this case to invest that much legal time in its pursuit. Sometimes events during the litigation change the calculus, and a lawyer must avoid the sunk-cost fallacy. If, after spending $25,000 in legal time, a lawyer is confronted with a defense that will cost $30,000 to defeat, counsel will not say: "It is irrational to spend $55,000 to get $50,000." The $25,000 is sunk; if the suit is abandoned the recovery will be zero, so the right question is whether it is reasonable to spend $30,000 more to get $50,000, and the answer is yes. Suppose the same thing happens over and over in a suit, with one unexpected development after another raising the costs without raising the expected recovery. It can be reasonable to meet each of these events by investing more, even though an analysis that looks only at the bottom line ($325,000 invested to get $50,000) makes the total seem unreasonable.

*\*16 Id.* at 610. In addition, Judge Easterbrook noted that fee-shifting statutes "are designed to prevent the potentially high costs of litigation from stifling justified claims," finding that "hyperaggressive defendants who drive up the expense of litigation must pay the full costs, even if legal fees seem excessive in retrospect." *Id.; see also Kassim v. City of Schenectady,* 415 F .3d 246, 251 (2d Cir.2005) (explaining disproportion between the damages awarded and the requested attorney's fee, stating, "in litigating a matter, an attorney is in part reacting to forces beyond the attorney's control, particularly the conduct of opposing counsel and of the court. If the attorney is compelled to defend against frivolous motions and to make motions to compel compliance with routine discovery demands, or to respond to unreasonable demands of the court for briefing or for wasteful, time-consuming court appearances, the hours required to litigate even a simple matter can expand enormously."); *Hall,* 2014 WL 1329553, at \*10 (noting that while the attorney's fees were substantial, they were merely a function of the adversary nature of the case, and that, in addition to damages, "the price under the law of defendant's refusal to pay plaintiff an equitable salary, (a decision reached by the jury), is plaintiff's fees and costs necessarily and reasonably expended to prove she was a victim of discrimination."); *Coral Group, Inc. v. Shell Oil Co.,* No., 2013 WL 4067625, at \*5 (W.D.Mo. Aug. 12, 2013) (awarding defendants attorney's fees and costs totaling $3,103,110.34 in business litigation pursuant to fee-shifting agreement in parties' contract, and stating that "both sides litigated this case with a concede nothing, contest everything attitude which dramatically increased their litigation costs. But ... where one party ... litigates tenaciously, they cannot complain about the time spent by the other party.") (citations omitted).

The Court therefore declines to deduct a percentage of the lodestar amount. This case involved a common nucleus of facts, with all of Ewald's claims, particularly her claims of reprisal, retaliation, whistleblowing, and claims under the Norwegian WEA, closely intertwined with her successful unequal pay claim. Still, to the extent that she did not obtain success on all of her claims, Plaintiff's proposed reductions adequately account for her degree of success. The Court further rejects the Embassy's argument that Ewald's success was limited because she did not obtain all of the damages that she sought. *See Simpson,* 441 F.3d at 580–81.

EXHIBIT 9 - MOHRMAN DECLARATION

Ewald received damages totaling $270,594 and a reduction of the lodestar amount on this basis is unwarranted.

   4. *Johnson* Factors

In analyzing whether the lodestar submitted by Plaintiff's counsel is appropriately compensable, the Court considers the work of counsel in light of the *Johnson* factors and in light of Defendant's objections.[10] Although the Court has not directly noted each *Johnson* factor individually, the Court has discussed several of the factors throughout this Order. In particular, this case involved significant time and labor, and legal issues complicated at times by foreign language, high volume document production, challenging discovery issues, unnecessary difficulties with Defendant's acceptance of service of process, depositions of international witnesses, and voluminous motion practice. As one prominent local employment law practitioner attested, these factors combined "to make this one of the single most complicated individual employment cases I have seen in my nearly 20 years of practice in this area." (Smith Aff. ¶¶ 22–23 [Doc. No. 343].)

***17** It required a high level of skill to properly perform the legal work. Ms. Engelmeier was required to reduce her workload in order to work on this case, and the scheduling of the trial precluded her from accepting a significant speaking engagement, which she maintains would have helped market her firm. (Engelmeier Aff. ¶¶ 39, 42 [Doc. No. 348].) Plaintiff's counsel have submitted numerous affidavits from respected members of the local legal community attesting to the reasonableness of not just counsel's hourly rate, but to Plaintiff's requested amount of attorney's fees and costs. (May Aff. ¶ 19 [Doc. No. 340]; Stratton Decl. ¶ 18 [Doc. No. 350]; Smith Aff. ¶ 21 [Doc. No. 343].) Plaintiff's counsel, possessing ample experience, good reputation and strong ability, obtained a good result. *See Johnson,* 488 F.2d at 714. As to the undesirability of the litigation, several local employment law practitioners have noted that absent fee-shifting statutes, employees would find it very difficult to vindicate their rights due to several factors, including the discrepancy in resources between employees and employers, the time-intensive nature of employment law cases, and the employer's control over much of the information related to the employment relationship. (May Aff. ¶¶ 4–6 [Doc. No. 340]; Stratton Decl. ¶ 19 [Doc. No. 350]; Neumann Decl. ¶ 15 [Doc. No. 349]; Rubenstein Aff. ¶ 11 [Doc. No. 341]; Stokes Decl. ¶ 12 [Doc. No. 342]; Smith Aff. ¶ 27 [Doc. No. 343]; Lienemann Aff. ¶ 17 [Doc. No. 344]; Thome Aff. ¶ 11 [Doc. No. 345]; Baillon Decl. ¶ 10 [Doc. No. 346]; Coler Decl. ¶ 13 [Doc. No. 347].) The Court also notes that Plaintiff's counsel represented her for more than four years, developing a long professional relationship with Ewald.

The final *Johnson* factor involves consideration of fee awards in similar cases. *Hensley,* 461 U.S. at 430 n. 3. Defendant argues that a $2.3 million fee award as requested by Plaintiff would be unprecedented, citing a newspaper article published after the filing of Plaintiff's Fee Petition, in which a local legal practitioner stated that such an award would be among the largest fee awards for a single claimant in an employment case in Minnesota. (Def.'s Opp'n Mem. at 28 [Doc. No. 369]; The Star Tribune, *Norway Asked to Pay $2.3 Million in Legal Fees for Wage Bias Case* (Jan. 22, 2015), Ex. C to Schroeder Aff. [Doc. No. 370–3].) That same commentator also opined, however, that Plaintiff's counsel's hourly rate "is in the mainstream of the rates charged and may be on the low side." (The Star Tribune, *Norway Asked to Pay $2.3 Million in Legal Fees for Wage Bias Case* (Jan. 22, 2015), Ex. C to Schroeder Aff. [Doc. No. 370–3].) Moreover, another commentator in the same article addressed the overall fee request, commenting that it was "not outrageous," given the amount of billed time, and might be "a pretty good deal" for Norway. (*Id.*) The Court notes that other employment-related cases in Minnesota have resulted in high fee awards. *See, e.g., Zebeck v. Metris Cos., Inc.,* No. A07– 0756, 2008 WL 2168333, at *7 (Minn.Ct.App. May 27, 2008) (affirming attorney's fee award of $11,563,454—which would have been approximately $1,538,271 under a traditional lodestar analysis—in a case involving enforcement of CEO's severance agreement); *Ryther v. KARE*

EXHIBIT 9 - MOHRMAN DECLARATION

*11,* 864 F.Supp. 1525, 1535 (D.Minn.1994) (awarding a $276,314 in attorney's fees and $13,700.32 in costs in an age discrimination suit). Moreover, the Court declines to award Plaintiff the $2.3 million total in fees and costs that she requests.

**\*18** The Court has also considered these factors, alongside Defendant's objections, in its careful review of E & U's records in order to arrive at a reasonable amount of compensation. As this case involved a bench trial, numerous appeals of non-dispositive motions, and three dispositive motions, this Court is in a particularly well-informed position by which to judge the reasonableness of Plaintiff's attorney's fees. This was a contentious case. The Court offers this observation simply to explain why Plaintiff incurred such high costs and fees, and not to criticize the Embassy for conducting a vigorous defense. *See Torres v. Gristede's Operating Corp.,* 519 Fed. App'x 1, 4–5 (2d Cir.2013) (affirming a $3,415,450 fee award in class action, and noting that district court's observation that attorney's fees were reasonable, given the defendant's vigorous approach to the litigation, merely explained why fees were incurred and did not penalize defendant for exercising its constitutional rights). A prevailing Plaintiff under the MHRA and the EPA is entitled to attorney's fees and costs, in recognition that such litigation—which frequently benefits society at large—might otherwise be financially impracticable for many plaintiffs. Moreover, Plaintiff's counsel has documented that in addition to the self-imposed suggested reduction of $111,833.75 and other billing reductions, E & U took numerous steps to minimize attorney time and expenses on this matter, including the following: (1) not hiring an expert on damages issues such as comparable pay, mitigation, wage loss, or emotional distress; (2) using Ewald and her husband to perform hundreds of hours of work themselves that would otherwise have typically been performed by a paralegal, law clerk, investigator, or translator; (3) after initially hiring a professional translator who commanded a higher fee of $.33 per word, later hiring Colin Thomsen, a translator/law clerk, who charged Ewald rates between $10–25 per hour, for translation and law clerk services; (4) utilizing paralegals who charged at or below $90 per hour; (5) using the services of counsel for trial technology; (6) bringing discovery motions at once, near the end of discovery; (7) seeking to resolve the case via settlement; (8) conducting foreign depositions via video link; (9) not recording all attorney time spent on the case; and (10) freezing billing rates at 2012 rates. (*See* Engelmeier Aff. ¶ 28 [Doc. No. 348].)

The Court's own reductions, as noted throughout this Order, and reflected in Exhibit A to the Order, total *less* than Plaintiff's proposed reduction of $111,833.75. This confirms the Court's view that Plaintiff's counsel exercised prudent judgment in the Fee Petition request, despite the relatively high total of fees, and the Court adopts the Plaintiff's proposed reduction to fully reflect any unrelated or unnecessary work. Accordingly, for all of the reasons set forth above, the Court finds that the lodestar amount for reasonable attorney's fees in this matter, as adjusted to include Plaintiff's proposed reduction of $111,833.75, is $1,773,719.05 ($1,622,976.80 adjusted total fees through 12/31/14 + $150,742.25 in Fee Petition-related fees) and no enhancement or further reduction is warranted.

### B. Costs

**\*19** Plaintiff seeks a total of $222,025.37 in costs ($220,138.22 for costs through 12/31/14 + 1,887.15 in Fee Petition-related costs). (Engelmeier Aff. ¶ 14; Ex. C to Engelmeier Aff. [Doc. No. 348–5]; Thomsen 1/15 Invoice, Ex. L to Engelmeier Aff. [Doc. No. 348–8]; Thomsen 2/15 Invoice, Ex. B to Supp'l Engelmeier Aff. [Doc. No. 381–2]; Exs. A, B, & C to Second Supp'l Engelmeier Aff. [Doc. No. 388].) Defendant argues that $104,333.26 should be deducted from Plaintiff's request to account for unnecessary or unreasonable expenses. (Def.'s Opp'n Mem. at 28–30 [Doc. No. 369].) Specifically, the Embassy objects to the following three categories of expenses: (1) $72,514 in costs incurred by the Wikborg Norwegian law firm; (2) $31,767.50 in costs incurred by Carney Forensics, a computer forensics firm; and (3) $51.76 for a trial subpoena for a witness who did not testify at trial. (*Id.*)

EXHIBIT 9 - MOHRMAN DECLARATION

#### 1. Wikborg Firm

As to the costs related to the Wikborg firm, Plaintiff consulted with the firm for several reasons. First, Ewald's counsel consulted with Wikborg due to the Embassy's requirement that the Protective Order in the case contain references to Norway's Personal Data Act, based on Defendant's concerns about reviewing Ewald's work computer. (Ewald Decl. ¶ 5 [Doc. No. 337]; Haugen Decl. ¶ 4 [Doc. No. 352].) Defendant argues that Ewald could have simply consented to its request to review her work computer, obviating any need for consultation with Norwegian counsel. (Def.'s Opp'n Mem. at 29 [Doc. No. 369].) The Court finds that this expense was reasonably incurred and any work related to Norway's privacy laws and discovery is reimbursable.

Second, Plaintiff consulted with Wikborg in order to request information under Norway's FOIA. (Ewald Decl. ¶¶ 5–6 [Doc. No. 337]; Haugen Decl. ¶ 4 [Doc. No. 352].) As discussed earlier herein regarding reimbursement for attorney's fees for such requests, the Court likewise finds that expenses related to the FOIA requests are reimbursable. The discovery in question related to Plaintiff's common core of successful claims of unequal pay. Accordingly, costs incurred in obtaining such information were reasonably and necessarily incurred.

Finally—and to a lesser degree—Plaintiff consulted with Wikborg regarding her claim under the WEA. (*Id.*) As noted, while Plaintiff's WEA claim was factually related to Ewald's successful unequal pay claim, it involved legal work distinct from that claim. Accordingly, costs incurred concerning that claim shall be deducted. The Court has reviewed Plaintiff's invoices from Wikborg (Ex. E to Engelmeier Aff [Doc. No. 348–6] ) and notes that two invoices reflect work related to Ewald's unsuccessful WEA claim: (1) Invoice 1364889, dated 10/31/13, for 48,925 Norwegian Kroner ("NOK") (*id.* at 23), or approximately $8,222.69 at the time [11] ; and (2) Invoice 1365821, dated 12/19/13, for 28,504 NOK (*id.* at 21), or approximately $4,627.27 at the time. [12] Not all of the work on these two invoices, which total $12,849.96, appears to be related to Plaintiff's WEA claim, however. The Court finds that a deduction of $12,000 sufficiently accounts for any costs related to Wikborg's work on the WEA claim. All other costs incurred by Wikborg are compensable.

#### 2. Carney Forensics

*20 This case involved difficult discovery issues concerning the integrity of the Embassy's production. A portion of Plaintiff's submission for reimbursement of costs includes $31,767.50 for work performed by Carney Forensics. (Ex. D–4f to Engelmeier Aff. [Doc. No. 378–2].) Plaintiff has adequately documented the need for the assistance of Carney Forensics due to issues involving ESI, technical issues with discovery, and the attempted recovery of certain information from relevant phones. (Ewald Aff. ¶ 8 [Doc. No. 337]; Pl.'s Mem. Supp. Fee Pet. at 34 [Doc. No. 336].) Costs incurred by consulting with Carney Forensics were reasonably incurred and shall be reimbursed.

#### 3. Trial Subpoena

Defendant's request for a reduction of $51.76 for a trial subpoena on Ivar Sorenson, who did not testify at trial, is granted.

In sum, the Court has carefully reviewed Plaintiff's submission of costs (Ex. C to Ewald Affidavit [Doc. No. 348–4] ), and reduces Plaintiff's total cost request of $222,025.37 by $12,051.76 ($12,000 in WEA-related costs + $51.76 for the unnecessary trial subpoena). Plaintiff is thus entitled to reasonably-incurred costs in the amount of $209,973.61.

#### C. Prejudgment Interest

Courts have permitted awards of prejudgment interest on EPA claims, *Klask v. N.W. Airlines, Inc.,* No. 4–86–352(DSD), 1991 WL 346371, at *2 (D.Minn. Aug. 12, 1991), as well as MHRA claims, pursuant to Minn.Stat. § 549.09—Minnesota's statute that provides for interest on

EXHIBIT 9 - MOHRMAN DECLARATION

verdicts, awards, and judgments. *Crummy v. Enter. Minn.,* No. A11–703, 2012 WL 360391, at *10–11 (Minn.Ct.App.2012). This Court has observed that " '[p]rejudgment interest serves to compensate for the loss of the use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.' " *Klask,* 1991 WL 346371, at *1 (quoting *W. Va. v. United States,* 479 U.S. 305 (1987)). In this Court's Findings of Fact and Conclusions of Law, the Court directed Plaintiff to calculate prejudgment interest on her damages and likewise directed Defendant to respond. (Am. Findings of Fact & Concl. of Law at 181 [Doc. No. 333].) The parties disagree on three issues concerning prejudgment interest: (1) the rate of interest to be applied to back pay damages; (2) whether prejudgment interest is available on the enhanced portion of Plaintiff's back pay damages; and (3) whether prejudgment interest is available on Plaintiff's emotional distress damages.

1. Rate of Interest

In the Findings of Fact and Conclusions of Law, this Court awarded Ewald compensatory back pay damages of $85,297 for her unequal pay claim under both the EPA and the MHRA. (*Id.* at 165.) Applying Minn.Stat. § 363A.29, Subd. 4, the Court enhanced those damages by $100,000, resulting in back pay compensatory damages of $170,594. (*Id.* at 179–80.) The Court also awarded $100,000 in emotional distress damages, noting that while it was unclear whether the EPA provides for emotional distress damages, the MHRA expressly provides such relief. (*Id.* at 175) (citing Minn.Stat. § 363A.29, Subd. 4).

*21 Although the MHRA does not specifically provide for an award of prejudgment interest, as noted, Minnesota courts have applied Minn.Stat. § 549.09 to compensatory damage awards under the MHRA. *Crummy,* 2012 WL 360391, at *10–11 (citing *Cooper v. Mower Cnty. Soc. Servs.,* 434 N.W.2d 494, 501 (Minn.Ct.App.1989)). Minnesota's interest statute provides that a 10% rate of interest, per year, is to be applied to all damage awards over $50,000, unless the party against whom judgment is entered is the State of Minnesota or one of its political subdivisions. Minn.Stat. § 549.09, Subds. 1(b)-(c)(2). While there is no federal prejudgment interest statute, this Court has turned to the federal postjudgment interest statute, 28 U.S.C. § 1961(a), as guidance in awarding prejudgment interest on a back pay award. *Klask,* 1991 WL 346371, at *2; *see also Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1330 (8th Cir.1995) (noting that 28 U.S.C. § 1961 provides "the proper measure for determining rates of both prejudgment and postjudgment interest" (citing *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1218 (8th Cir.1981)). Under the federal postjudgment interest statute, interest is calculated "at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

Plaintiff argues that because Minnesota state law provided the basis for her enhanced damages and emotional distress damages, and provided a shared basis (along with the EPA) for her back pay damages, the award of prejudgment interest is governed by state law. (Pl.'s Mem. Supp. Fee Pet. at 37 [Doc. No. 336].) Applying the 10% interest rate under Minn.Stat. § 549.09, Ewald calculates $44,780.93 in prejudgment interest on her back pay award. (Marshall Aff. ¶ 27 [Doc. No. 338].) The Embassy argues, however, that because the Court awarded back pay under the EPA and the MHRA, federal statutory authority should determine the rate of interest. (Def.'s Opp'n Mem. at 31–33 [Doc. No. 369].) Using the federal postjudgment interest statute, Defendant contends that the applicable interest rate is 0.26%, entitling Ewald to $1,152.29 in prejudgment interest on her back pay award. (*Id.* at 33) (citing Ex. D to Schroeder Aff. [Doc. No. 370–4].) Plaintiff argues, however, that even if the federal rate applied, this Court in *Klask* awarded prejudgment interest at the rate in effect at the time the discrimination occurred, not at the time of judgment. (Pl.'s Reply Mem. at 9, n. 10 [Doc. No. 377].) Under this approach, Plaintiff argues that the applicable rate would be 2.05%. (*Id.*)

EXHIBIT 9 - MOHRMAN DECLARATION

In *Mansker,* the Eighth Circuit stated that "[t]he question of whether interest is to be allowed, and also the rate of computation, is a question of federal law where the cause of action arises from a federal statute." 54 F.3d at 1330. But *Mansker* was an ERISA case that did not involve recovery under both state and federal statutes. Likewise, while this Court in *Klask* applied the federal postjudgment statute in a modified fashion, *Klask* did not involve state law claims. These rulings are consistent with the general view that "prejudgment interest is a substantive remedy governed by state law when state-law claims are brought in federal court, while post-judgment interest, even on state-law claims, is governed by federal law...." *Tobin v. Liberty Mut. Ins. Co.,* 553 F.3d 121, 146 (1st Cir.2009) (citing *Blockel v. J.C. Penney Co.,* 337 F.3d 17, 29 (1st Cir.2003); *Cummings v. Standard Register Co.,* 265 F.3d 56, 68 (1st Cir.2001); *Conway v. Electro Switch Corp.,* 825 F.2d 593, 602 (1st Cir.1987)). However, as Defendant observes, there appears to be no Eighth Circuit authority concerning the determination of prejudgment interest for overlapping claims arising under both federal and state law.

**\*22** In support of its argument that the federal rate applies, Defendant observes that the Court applied federal case law to its analysis of Plaintiff's unequal pay claim in the Findings of Fact and Conclusions of Law. (Def.'s Opp'n Mem. at 31 [Doc. No. 369].) In doing so, however, the Court noted that the standards and defenses of the EPA also apply to claims alleging unequal pay for equal work under the MHRA. (Am. Findings of Fact & Concl. of Law at 130 [Doc. No. 333] ) (citations omitted). Thus, the Court applied federal precedent with the express understanding that it was equally applicable to Plaintiff's claim of unequal pay under the MHRA. And, most importantly, the Court ruled that Plaintiff's unequal pay claim succeeded under both the EPA and the MHRA. (*Id.* at 158.)

In determining whether the state or federal statute applies, other federal courts have applied state law to calculate prejudgment interest on overlapping federal and state law claims. *See, e.g., In re ClassicStar Mare Lease Litig.,* 727 F.3d 473, 497 (6th Cir.2013) (affirming the application of a higher state statutory interest rate where Defendant was found liable for violations of RICO and state common fraud under same facts); *Tobin,* 553 F.3d at 146–47 (finding that where state and federal claims on which liability was based were substantively identical, plaintiff could seek either the federal or state prejudgment interest rate, electing whichever provided the more favorable outcome). *But see Thomas v. iStar Fin., Inc.,* 652 F.3d 141, 150 (2d Cir.2010) (applying federal interest rate to judgments based on combined state and federal claims). The Court further notes that here, Minn.Stat. § 549.09 specifically contemplates prejudgment interest, as indicated above, while there is no federal prejudgment interest statute. Moreover, two of the purposes of awarding prejudgment interest are to help compensate the plaintiff and to deter any unfair benefit caused by the "inherent delay of litigation." *EEOC v. Rath Packing Co.,* 787 F.2d 318, 333 (8th Cir.1986); *see also Entergy Ark., Inc. v. Neb.,* 358 F.3d 528, 558 (8th Cir.2004) ("[T]he goal of prejudgment interest is full compensation...."). These purposes are best achieved by applying the state statute.

Accordingly, the Court adopts Plaintiff's proposed prejudgment interest calculation. Under Minn.Stat. § 549.09, Subd. 1(b), prejudgment interest on Plaintiff's back pay damages shall be awarded from the time these damages were incurred, [13] resulting in an award of $44,780.93, calculated as follows:

(Marshall Aff. ¶ 27 [Doc. No. 338].)

### 2. Interest on Enhanced Damages and Emotional Distress Damages

**\*23** Defendant does not dispute that Minn.Stat. § 549.09 would govern an award of prejudgment interest on the $85,297 enhancement of Plaintiff's back pay damages and the award of $100,000 in emotional distress damages, acknowledging that the Court awarded both categories of damages pursuant to state law. (Def.'s Opp'n Mem. at 33 [Doc. No. 369].) However, the Embassy contends that Plaintiff is not entitled to any prejudgment interest on

EXHIBIT 9 - MOHRMAN DECLARATION

these damages, arguing that they are noncompensatory and therefore excluded from prejudgment interest pursuant to Minn.Stat. § 549.09. (*Id.* at 33–35.)

Under Minn.Stat. § 549.09, prejudgment interest "shall not be awarded on ... punitive damages, fines, or other damages that are noncompensatory in nature." Minn.Stat. § 549.09, Subd. 1(b) (3). As to the enhanced award on Ewald's back pay, it is true, as Defendant notes, that the application of the multiplier for enhanced damages under the MHRA need not be tied to compensatory purposes. (Def.'s Opp'n Mem. at 34 [Doc. No. 369] (citing *Mathieu v. Gopher News Co.,* 273 F.3d 769 (8th Cir.2001)). However, that concerns the determination of the amount of enhancement, and not whether the enhancement itself is a form of compensatory damages. Instead, the language of the MHRA authorizing enhanced damages expressly refers to the enhancement as compensatory. Minn.Stat. § 363A.29, Subd. 4. It provides that where the employer "has engaged in an unfair discriminatory practice, the administrative law judge shall order the respondent to pay an aggrieved party, who has suffered discrimination, compensatory damages in an amount up to three times the actual damages sustained." *Id.* As the enhanced portion of Ewald's back pay award is compensatory, prejudgment interest may be applied to this award pursuant to Minn.Stat. § 549.09.[14] Defendant's citation to *Muehlstedt v. Lino Lakes,* 473 N.W.2d 892, 896 n. 2 (Minn.Ct.App.1991), for the proposition that prejudgment interest in unavailable on trebled damages, is inapposite. *Muehlstedt* involved a different, specific statute allowing for trebled damages for the unlawful taking of trees or timber, Minn.Stat. § 561.04. It is not surprising that in the case of stolen property, courts would find the damages award on the first third of trebled damages to be compensatory and the additional two-thirds punitive and non-compensatory.

As to prejudgment interest on Ewald's emotional distress damages, the decision to award interest on these damages is left to the trial court's discretion. *Crummy,* 2012 WL 360391, at *11. Prior to the amendment of § 549.09 in 1984, prejudgment interest was only permitted on damages that were readily ascertainable, but after the amendment, prejudgment interest could be awarded regardless of a defendant's ability to ascertain the exact amount of liability. *Id.* (citing *Lienhard v. State,* 431 N.W.2d 861, 865 (Minn.1988)). Defendant argues, however, that this Court should decline to award prejudgment interest on Ewald's emotional distress damages, arguing that they were merely "garden variety" damages, supported by "subjective evidence." (Def.'s Opp'n Mem. at 35–36 [Doc. No. 369].) The Court disagrees. As noted in the Findings of Fact and Conclusions of Law, damages for mental anguish may be established solely through subjective testimony. (Am. Findings of Fact & Concl. of Law at 173 [Doc. No. 333] ) (citing *Gillison v. Dep't of Natural Resources,* 492 N.W.2d 835, 842 (Minn.Ct.App.1991)). Moreover, the Court's decision to award damages for Ewald's emotional distress was based not only on Ewald's own testimony, but the testimony of her spouse and others in the Norwegian–American community, as well as the Court's observations of Ewald during trial. (*Id.* at 172–75.) Because prejudgment interest aims to achieve full compensation, the Court finds it appropriate to award Ewald prejudgment interest on her well-supported emotional distress damages.

*\*24* With respect to both the enhanced award on back pay and the emotional distress damages, computation of the prejudgment interest period runs "from the time of commencement of the action or a demand for arbitration...." Minn.Stat. § 549.09, Subd. 1(b). As the Minnesota Court of Appeals has observed:

> Since such "interest" cannot be calculated until the amount on which interest is allowed has been fixed by verdict, it is apparent that pre-verdict interest is not conventional interest on a sum of money. Rather, it is an element of damages awarded to provide full compensation by converting time-of-demand (either by written settlement offer or commencement of action) damages into time-of-verdict damages.

EXHIBIT 9 - MOHRMAN DECLARATION

*Cox v. Crown CoCo, Inc.,* 544 N.W.2d 490, 500 (Minn.Ct.App.1996). On March 29, 2011, several months prior to filing this lawsuit, Ewald provided a full demand to the Embassy, identifying her claims, the legal bases for her claims, and her anticipated damages. (Marshall Aff. ¶ 22 [Doc. No. 338].) The Court adopts Plaintiff's proposed date of March 29, 2011 as the starting point for the calculation of prejudgment interest on Ewald's emotional distress and enhanced damages. Prejudgment interest on these damages ($100,000 in emotional distress damages + $85,297 in enhanced damages) is calculated as follows:

| DATES | INTEREST |
|---|---|
| April 2011–April 2012 | $18,529.70 |
| April 2012–April 2013 | $18,529.70 |
| April 2013–April 2014 | $18,529.70 |
| April 2014–January 2015 | *$13,897.28* |
| **TOTAL** | **$69,486.38** |

(*Id.* ¶ 27.)

The Court therefore awards Ewald prejudgment interest in the amount of $114,267.31 ($44,780.93 on the backpay award + $69,486.38 on the emotional distress and enhanced damages).

THEREFORE, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Petition for Attorney's Fees and Costs by Plaintiff Ellen Ewald [Doc. No. 336] is **GRANTED IN PART** and **DENIED IN PART;**

2. Plaintiff is entitled to attorney's fees and costs from Defendant in the amount of $1,983,692.66 ($1,773,719.05 in attorney's fees + $209,973.61 in costs); and

3. Plaintiff is entitled to prejudgment interest from Defendant in the amount of $114,267.31.

## All Citations

Not Reported in F.Supp.3d, 2015 WL 1746375

| Footnotes |
|---|

1    In addition to discovery and motion practice, during the course of the litigation, the parties attended a Court-ordered settlement conference and a private mediation. (Marshall Aff. ¶ 19 [Doc. No. 338].)

2    The Court also imposed a $1,000 civil penalty on the Embassy, pursuant Minn.Stat. § 363A.29, Subd. 4, payable to the State of Minnesota. (*Id.* at 180.)

3    The initial Engelmeier Affidavit includes a then-billed Fee Petition-related estimate of $98,475. (Engelmeier Aff. ¶ 14 [Doc. No. 348].) Plaintiff was permitted to file supplemental documentation of additional fees and expenses, subsequent to the January 20, 2015 filing of the Fee Petition. (Orders of 2/23/15 [Doc. No. 380] & 3/4/15 [Doc. No. 387].) Exhibit A to the Engelmeier Aff. [Doc. No. 381–1 at 1, 14] shows Petition-related fees of $137,958 through 2/20/15, and Exhibit A to the Second Supplemental Engelmeier Affidavit shows Fee Petition-related fees from 2/22/15–2/24/15, discounted to $12,784.25. Thus, the total of Fee Petition-related attorney's fees ($137,958 + $12,784.25) is $150,742.25.

4    Plaintiff has provided invoices for translation/research work performed by Colin Thomsen related to the Fee Petition totaling $1391 (Thomsen 1/15 Invoice, Ex. L to Engelmeier Aff. [Doc. No. 348–8]; Thomsen 2/15 Invoice, Ex. B to Supp'l Engelmeier Aff. [Doc. No. 381–2].) In addition, Plaintiff has submitted additional

EXHIBIT 9 - MOHRMAN DECLARATION

documentation supporting expenses incurred in the amount of $496.15 for parking fees for counsel to attend the hearing on this matter, courier invoices, and an invoice from Thomsen for subsequent work not included in the previous February Invoice. (Exs. A, B, & C to Second Supp'l Engelmeier Aff. [Doc. No. 388]. The total of Fee Petition-related costs ($1391 + $496.15) is $1887.15.

5       Defense counsel disputed this at the hearing on Plaintiff's Fee Petition, pointing to Exhibit A to the Schroeder Affidavit [Doc. No. 370–1], as showing that Defendant did consider Fee Petition-related work in its calculations. That document, however, only lists costs and fees incurred for the Fee Petition under the column labeled "Plaintiff's Requested Award." Under the column labeled "Defendant's Proposed Award," no consideration of Fee Petition-related costs or fees appears to be included in the calculations.

7       As discussed earlier, however, where block-billed time includes a mixture of non-reimbursable WEA work and reimbursable work, the Court deducts a percentage to reflect the non-reimbursable portion. For example, while Defendant proposes that an entry for November 14, 2012 totaling $1,172.50 for 3.5 hours be deducted in its entirety due to the presence of some WEA work and because the work was "unnecessary," the Court deducts 1/8 of the total amount, or $146.56. While the entry includes a small fraction of work on the WEA claim, it also includes fully compensable work. Notably, the entry details time expended on discovery issues involving Norwegian law as well as specific work on Ewald's successful unequal pay claim. (Ex. B to Schroeder Aff. at 19 [Doc. No. 370–2].) The Court rejects Defendant's characterization of this work as "unnecessary."

8       For example, the Embassy proposes that 6.20 hours of attorney time billed on November 25, 2013, totaling $2,077, be deducted in its entirety as "unnecessary" and related to Plaintiff's discovery motion, even though it expressly refers to legal research on Plaintiff's EPA claim. (Ex. B to Schroeder Aff. at 56 [Doc. No. 370–2].) In addition, the entry describes work on drafting a chart and timeline and communicating with opposing counsel. (*Id.*) The Court finds that all of the work in this entry is reimbursable.

9       While the Court agrees that this media-related work is non-compensable, again, the Court does not adopt Defendant's approach of wholesale reducing block-billed entries that contain minor references to the media. For instance, Defendant suggests that an entry for February 28, 2014, for 3.8 hours of attorney time, totaling $1,558, be written off in its entirety. (Ex. B to Schroeder Aff. at 69 [Doc. No. 370–2].) The entry specifically describes legal research, trial preparation, work on pretrial submissions, discussions with trial witnesses, client communications, discussions with opposing counsel regarding discovery, and contains two references to media-related work. (*Id.*) The Court instead reduces this billing entry by 1/5 (or $311.60) to reflect time spent on media-related work, as the rest of the entry contains reimbursable work. (*See* Ex. A to Order.)

10      As noted earlier, the *Johnson* factors include:

        (1) the time and labor involved; (2) the novelty and difficulty of the question (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of

EXHIBIT 9 - MOHRMAN DECLARATION

the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley,* 461 U.S. at 430, n. 3.

11    *See* XE Current & Historical Rate Tables, http://www.xe.com/ currencytables/? from=NOK & date=2013–10–31 (last visited April 13, 2015) (providing a conversion rate of 5.95).

12    *See* XE Current & Historical Rate Tables, http://www.xe.com/ currencytables/? from=NOK & date=2013–12–19 (last visited April 13, 2015) (providing a conversion rate of 6.16).

13    Under Minn.Stat. § 549.09, interest is due "from when ... special damages were incurred." This Court has noted that "special damages" are those to which an exact dollar amount can be assigned, such as lost wages. *Vought v. Ellis,* No. 10–4388 (JRT/SER), 2012 WL 4090061, at *1 (D.Minn. Sept. 17, 2012). While the Court applies the state interest statute here, it notes that courts have similarly applied the federal postjudgment interest rate to back pay awards from the date on which the claims accrued. (Am. Findings of Fact & Concl. of Law at 181) (citing *McClanahan v. Mathews,* 440 F.2d 320, 326 (6th Cir.1971)).

| DATES | INTEREST |
|---|---|
| October 2008–October 2009 | $2,764.50 |
| October 2009–October 2010 | $5,765.20 |
| October 2010–October 2011 | $8,529.70 |
| October 2011–October 2012 | $8,529.70 |
| October 2012–October 2013 | $8,529.70 |
| October 2013–October 2014 | $8,529.70 |
| October 2014–January 2015 | *$2,132.43* |
| **TOTAL** | **$44,780.93** |

14    The Court rejects Defendant's argument that, by referring to the Embassy's conduct in the Findings of Fact and Conclusions of Law, the Court "implicitly recognized that the enhanced award it made under the MHRA was 'noncompensatory.' " (Def.'s Opp'n Mem. at 35 [Doc. No. 369].) The Court awarded enhanced back pay as a form of compensatory damages. References to the Embassy's conduct merely provided context for the enhanced award, which, under Minn.Stat. § 363A.29, Subd. 4, could be granted only where the defendant had engaged in an unfair discriminatory practice. Moreover, the Court observed that the enhanced award was compensatory and required no additional findings to that effect. (Am. Findings of Fact & Concl. of Law at 177) (citing *Phelps v. Commonwealth Land Title Ins. Co.,* 537 N.W.2d 271, 275 (Minn.1995) (stating, "after an initial finding of damages, a trial court need not make an additional finding that uncompensated damages exist prior to multiplying damages").

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.



EXHIBIT 9 - MOHRMAN DECLARATION